# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE APPLICATION OF
PENNLIVE, YORK DAILY
RECORD, AND YORK DISPATCH
TO UNSEAL COURT RECORDS

Misc. Action No. _____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNSEAL COURT RECORDS

PAULA KNUDSEN BURKE
[PA 87607]
pknudsen@rcfp.org
KATIE TOWNSEND*
ktownsend@rcfp.org
GRAYSON CLARY*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

*Pro hac vice applications pending

Counsel for Applicants PennLive, York Daily Record, and York Dispatch

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT .......................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ...................................................................................................... 6

   I.   The press and public have a presumptive right of access to judicial records
       related to the seizure of Congressman Perry's cell phone. ........................... 6

      a.   The public has a common law right of access to the Warrant Materials. 7

      b.   The public also has a First Amendment right of access to the Warrant
           Materials. .......................................................................................... 9

   II.  The public's presumptive rights of access can be overcome only by a
       compelling showing that the Government cannot make on these facts........ 12

CONCLUSION .................................................................................................. 15

CERTIFICATE OF CONCURRENCE OR NONCONCURRENCE.................... 17

CERTIFICATE OF WORD COUNT ................................................................. 18

CERTIFICATE OF SERVICE ........................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Balt. Sun Co. v. Goetz*,
    886 F.2d 60 (4th Cir. 1989)................................................................ 8, 9

*Doe v. Public Citizen*,
    749 F.3d 246 (4th Cir. 2014) ......................................................... 11, 12

*Hartford Courant Co. v. Pellegrino*,
    380 F.3d 83 (2d Cir. 2004) ...................................................... 10, 11, 12

*In re L.A. Times Commc'ns LLC*,
    28 F.4th 292 (D.C. Cir. 2022) ..................................................... 2, 8, 13

*In re N.Y. Times Co.*,
    585 F. Supp. 2d 83 (D.D.C. 2008)................................................. 13, 14

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    924 F.3d 662 (3d Cir. 2019) ...................................................... 7, 12, 14

*In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*,
    913 F.2d 89 (3d Cir. 1990) ................................................................. 13

*In re Cendant Corp.*,
    260 F.3d 183 (3d Cir. 2001) ................................................... 1, 2, 8, 12

*In re EyeCare Physicians of Am.*,
    100 F.3d 514 (7th Cir. 1996) .............................................................. 14

*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*,
    964 F.3d 1121 (D.C. Cir. 2020)............................................................. 9

*In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*,
    300 F. Supp. 3d 61 (D.D.C. 2018),
    *rev'd on other grounds*, 964 F.3d 1121 (D.C. Cir. 2020)............................ 9, 10

*In re Newsday, Inc.*,
    895 F.2d 74 (2d Cir. 1990) .................................................................. 8

*In re Search of 1993 Jeep Grand Cherokee*,
    958 F. Supp. 205 (D. Del. 1996) ......................................................... 8

*In re Search Warrant for Secretarial Area Outside Off. of Gunn*,
   855 F.2d 569 (8th Cir. 1988) ........................................................ 2, 10

*In re Search Warrant*,
   No. 16-MAG-7063, 2016 WL 7339113 (S.D.N.Y. Dec. 19, 2016) ................... 11

*In re State-Record Co.*,
   917 F.2d 124 (4th Cir. 1990) ........................................................ 11

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
   998 F.2d 157 (3d Cir. 1993) ......................................................... 2

*Littlejohn v. Bic Corp.*,
   851 F.2d 673 (3d Cir. 1988) ......................................................... 7

*Miller v. Indiana Hosp.*,
   16 F.3d 549 (3d Cir. 1994) ...................................................... 12, 14

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ................................................................. 7

*Press-Enter. Co. v. Superior Court*,
   478 U.S. 1 (1986) ................................................................... 9

*Press-Enter. Co. v. Superior Court*,
   464 U.S. 501 (1984) ................................................................ 12

*Publicker Indus., Inc. v. Cohen*,
   733 F.2d 1059 (3d Cir. 1984) ........................................................ 2

*Reed v. Bernard*,
   976 F.3d 302 (3d Cir. 2020),
   *opinion vacated*, No. 20-1632, 2021 WL 1897359 (3d Cir. 2021) ................. 6, 7

*Romero v. Drummond Co.*,
   480 F.3d 1234 (11th Cir. 2007) ..................................................... 15

*Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*,
   565 F. App'x 477 (6th Cir. 2012) ................................................... 11

*United States v. All Funds on Deposit at Wells Fargo Bank*,
   643 F. Supp. 2d 577 (S.D.N.Y. 2009) ................................................ 11

*United States v. Antar,*
    38 F.3d 1348 (3d Cir. 1994) ........................................................ 10

*United States v. Bus. of Custer Battlefield Museum & Store,*
    658 F.3d 1188 (9th Cir. 2011) ................................................ 12, 14

*United States v. Criden,*
    648 F.2d 814 (3d Cir. 1981) ........................................................ 13

*United States v. Criden,*
    675 F.2d 550 (3d Cir. 1982) ................................................ 7, 9, 12

*United States v. Gonzalez,*
    927 F. Supp. 768 (D. Del. 1996) .................................................. 14

*United States v. Holy Land Found. for Relief & Dev.,*
    624 F.3d 685 (5th Cir. 2010) ........................................................ 13

*United States v. Mendoza,*
    698 F.3d 1303 (10th Cir. 2012) .................................................... 11

*United States v. Rayburn House Off. Bldg.,*
    497 F.3d 654 (D.C. Cir. 2007) ....................................................... 5

*United States v. Sealed Search Warrants,*
    868 F.3d 385 (5th Cir. 2017) .......................................................... 8

*United States v. Smith,*
    123 F.3d 140 (3d Cir. 1997) ........................................................... 7

*United States v. Smith,*
    787 F.2d 111 (3d Cir. 1986) .................................................... 10, 13

*United States v. Thomas,*
    905 F.3d 276 (3d Cir. 2018) ........................................................... 7

*Va. Dep't of State Police v. Wash. Post,*
    386 F.3d 567 (4th Cir. 2004) ........................................................ 15

**Other Authorities**

*'Outraged': Scott Perry Tells Fox News that FBI agents Seized His Phone*,
York Dispatch (Aug. 9, 2022),
https://perma.cc/L5RH-PFSY ............................................................ 13

Alan Feuer et al., *Seizure of Congressman's Phone Is Latest Sign of
Escalating Election Inquiry*, N.Y. Times (Aug. 10, 2022),
https://perma.cc/YDT9-FFLS.............................................................. 3

Biography, United States Congressman Scott Perry,
https://perma.cc/M3B4-MWKF ........................................................... 3

Chris Young, *Less-redacted Search Warrant Records Shed New Light on
Investigation into Sen. Richard Burr*, Reporters Comm. for Freedom of
the Press (Sept. 9, 2022),
https://perma.cc/QT4L-FAE4................................................................ 5

David Wenner, *Scott Perry Losing Support Over Jan. 6 Allegations, Poll by
Democratic Opponent Says*, PennLive (Aug. 16, 2022),
https://perma.cc/565P-JT6G ............................................................ 4, 6

Emergency Motion for Return of Seized Property,
*Perry v. United States*, No. 1:22-mc-00079 (D.D.C. Aug. 18, 2022)
(==ECF No. 1==) ....................................................................... 1, 3, 4, 5

Kaity Assaf, *U.S. Rep. Scott Perry Sues DOJ After It Seized His Cell
Phone*, York Daily Record (Aug. 24, 2022),
https://perma.cc/UQ2U-P8T4........................................................... 1, 3

Krishnadev Calamur & Ryan Lucas, *The Justice Department Watchdog
Will Review a Trump-Era Probe of Democratic Lawmakers*, NPR
(June 11, 2021),
https://perma.cc/L8J8-Q2C8 ............................................................... 5

Matt Enright, *Scott Perry Says He Hasn't Heard From FBI Since Phone
Seizure*, York Dispatch (Aug. 23, 2022),
https://perma.cc/25BJ-G8T2 ............................................................... 6

Michelle Onibokun & Chuck Rosenberg, *The Justice Department's Policy
Against Election Interference Is Open to Abuse*, Lawfare (Sept. 11, 2020),
https://perma.cc/W8VBYM5J ............................................................. 6

Nicholas Wu & Kyle Cheney, *Why Scott Perry Stands Out in the FBI's Investigations of Trump Allies*, Politico (Aug. 10, 2022), https://perma.cc/74TN-72JV ................................................................. 4

Paul Steinhauser, *Trump Ally Rep. Scott Perry Says the FBI Seized His Cellphone One Day After Mar-a-Lago Raid*, Fox News (Aug. 9, 2022), https://perma.cc/YQ2E-VUA8 ................................................................. 3

Perry Stein, *FBI Takes Rep. Scott Perry's Phone as Part of Fake-Elector Investigation*, Wash. Post (Aug. 9, 2022), https://perma.cc/9R86-25FV ................................................................. 3

Standing Order 2021-2, *In re: Instructions for the Filing, Service, and Management of Highly Sensitive Documents*, U.S. Dist. Ct. for M.D. Pa. (Jan. 15, 2021), https://www.pamd.uscourts.gov/sites/pamd/files/general-ordes/2021-02.pdf.................................................................................................. 8, 9

Tierney Sneed & Katelyn Polantz, *Jeffrey Clark Told DC Bar that DOJ Search of his Home Linked to False Statements, Conspiracy, Obstruction Investigation*, CNN (Sept. 14, 2022), https://perma.cc/HE96-N343 ................................................................. 5

United States' Motion to Unseal Limited Warrant Materials, *In re Sealed Search Warrant*, No. 22-mj-8332 (S.D. Fla. Aug. 11, 2022) (ECF No. 18) ................................................................. 15

## PRELIMINARY STATEMENT

PennLive, York Daily Record, and York Dispatch ("Applicants")

respectfully move this Court for an order unsealing certain judicial records related

to a warrant obtained pursuant to Federal Rule of Criminal Procedure 41 that

authorized the seizure of U.S. Representative Scott Perry's cell phone on August 9,

2022.  *See* Kaity Assaf, *U.S. Rep. Scott Perry Sues DOJ After It Seized His Cell

Phone*, York Daily Record (Aug. 24, 2022), https://perma.cc/UQ2U-P8T4;

Emergency Motion for Return of Seized Property ("Emergency Motion") at 1,

*Perry v. United States*, No. 1:22-mc-00079 (D.D.C. Aug. 18, 2022) (ECF No. 1).

Specifically, Applicants seek an order unsealing the executed warrant, the warrant

application, any supporting affidavits, the return, the docket sheet, any subsequent

warrants issued, and any other related judicial records (the "Warrant Materials").

The Third Circuit has long recognized the common law presumption of

public access to "judicial records," which attaches where "a document has been

filed with the court, or otherwise somehow incorporated or integrated into a district

court's adjudicatory proceedings."  *In re Cendant Corp.*, 260 F.3d 183, 192 (3d

Cir. 2001).  As other circuits have explained, there can be no question that warrant

applications and related materials—filed with the court "to influence a judicial

decision to find probable cause"—are "judicial records" presumptively open to

public inspection under the common law.  *In re L.A. Times Commc'ns LLC*, 28

F.4th 292, 297 (D.C. Cir. 2022). Sealing any portion can be justified, if at all, only on a showing "that disclosure will work a clearly defined and serious injury to the party seeking closure." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993). And no such showing could be made on the facts of this case, where the public interest in transparency is at its apex and any secrecy interests have been eroded by the information already made public—including by Congressman Perry.

The First Amendment also protects the public's qualified right to inspect warrant materials after a warrant has been executed, *see In re Search Warrant for Secretarial Area Outside Off. of Gunn* ("*In re Gunn*"), 855 F.2d 569, 573 (8th Cir. 1988), and that constitutional guarantee "requires a much higher showing than the common law right" to be overcome, *In re Cendant Corp.*, 260 F.3d at 198 n.13. For the reasons herein, application of either analysis requires that the Warrant Materials be made public, subject—at most—to any tailored redactions for which the United States ("the Government") can show a compelling justification.

## FACTUAL BACKGROUND

Congressman Scott Perry has been a Member of Congress since 2013 and currently represents Pennsylvania's 10th congressional district. *See Biography, United States Congressman Scott Perry*, https://perma.cc/M3B4-MWKF. On August 9, 2022 the Federal Bureau of Investigation ("FBI") executed a warrant to

seize Congressman Perry's cell phone while he was on vacation with his family in New Jersey.  *See* Assaf, *supra*.  Congressman Perry promptly shared news of the seizure with the press in a statement given to Fox News.  *See* Paul Steinhauser, *Trump Ally Rep. Scott Perry Says the FBI Seized His Cellphone One Day After Mar-a-Lago Raid*, Fox News (Aug. 9, 2022), https://perma.cc/YQ2E-VUA8. According to a motion that Congressman Perry filed on August 18 seeking the return of data cloned from his phone, the warrant was issued by United States Magistrate Judge Susan E. Schwab of the United States District Court for the Middle District of Pennsylvania on August 2.  *See* Emergency Motion at 1.

As multiple news outlets reported, Congressman Perry's phone was seized "in connection with an escalating federal investigation into efforts by several close allies of former President Donald J. Trump to overturn the 2020 election."  Alan Feuer et al., *Seizure of Congressman's Phone Is Latest Sign of Escalating Election Inquiry*, N.Y. Times (Aug. 10, 2022), https://perma.cc/YDT9-FFLS; *see also* Perry Stein, *FBI Takes Rep. Scott Perry's Phone as Part of Fake-Elector Investigation*, Wash. Post (Aug. 9, 2022), https://perma.cc/9R86-25FV.  Congressman Perry's motion confirms the seizure was related to activities of the Justice Department's Office of the Inspector General ("DOJ-OIG"), which "is taking the lead on the election subversion investigation."  Nicholas Wu & Kyle Cheney, *Why Scott Perry Stands Out in the FBI's Investigations of Trump Allies*, Politico (Aug. 10, 2022),

https://perma.cc/74TN-72JV; *see also* Emergency Motion at 2 (noting that the warrant authorized taking the phone "to the DOJ-OIG forensic laboratory").

Extensive information about Congressman Perry's involvement in the events under investigation has already been made public as a result of media reporting and the work of congressional investigators. For instance, "[a]ccording to evidence released by the House committee investigating the Jan. 6 attack on the U.S. Capitol, Perry reportedly played a key role in an effort to install an attorney general who backed Trump's false claims of election fraud, and who would further plans to install Trump-supporting electors in states including Pennsylvania, won by President Joe Biden." David Wenner, *Scott Perry Losing Support Over Jan. 6 Allegations, Poll by Democratic Opponent Says*, PennLive (Aug. 16, 2022), https://perma.cc/565P-JT6G. The evidence made public by the House committee included witness testimony, White House visitor records, and text message exchanges documenting Congressman Perry's role in introducing that Attorney General candidate—then-Acting Assistant Attorney General Jeffrey Clark—to former President Trump. *See* Wu & Cheney, *supra*. Clark's phone has also been seized in connection with the inspector general's probe, which, per a filing by Clark in another matter, "is investigating felony violations of false statements, conspiracy and obstruction." Tierney Sneed & Katelyn Polantz, *Jeffrey Clark Told*

*DC Bar that DOJ Search of his Home Linked to False Statements, Conspiracy, Obstruction Investigation*, CNN (Sept. 14, 2022), https://perma.cc/HE96-N343.

The seizure of Congressman Perry's phone is a subject of enormous, legitimate public interest. For one, a search of the property of a sitting Member of Congress is a matter of paramount public concern because it raises unique separation-of-power concerns. *See, e.g.*, Krishnadev Calamur & Ryan Lucas, *The Justice Department Watchdog Will Review a Trump-Era Probe of Democratic Lawmakers*, NPR (June 11, 2021), https://perma.cc/L8J8-Q2C8. Indeed, for past searches involving Members of Congress, the Justice Department has sometimes included "special procedures" in its warrant applications to minimize infringement on legislative interests. *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 656 (D.C. Cir. 2007); *see also* Chris Young, *Less-redacted Search Warrant Records Shed New Light on Investigation into Sen. Richard Burr*, Reporters Comm. for Freedom of the Press (Sept. 9, 2022), https://perma.cc/QT4L-FAE4 (noting the recent unsealing of the procedures included in a warrant application in the Government's now investigation of Senator Richard Burr). And Congressman Perry has raised just such separation-of-power concerns in his motion seeking the return of data that was cloned from his phone. *See* Emergency Motion at 4–6.

The search is also of clear public interest because of its proximity to a contested election. The adequacy of Justice Department regulations restricting the

taking of overt investigative steps that may interfere with the orderly democratic process is a subject of recurring public debate. *See* Michelle Onibokun & Chuck Rosenberg, *The Justice Department's Policy Against Election Interference Is Open to Abuse*, Lawfare (Sept. 11, 2020), https://perma.cc/W8VBYM5J. Congressman Perry, for his part, has maintained that the seizure is a politically motivated attempt to influence the results of his upcoming election. In an interview, the Congressman told reporters: "What happened here isn't about January of 2021. This is about Nov. 8, 2022." Matt Enright, *Scott Perry Says He Hasn't Heard From FBI Since Phone Seizure*, York Dispatch (Aug. 23, 2022), https://perma.cc/25BJ-G8T2. Since the seizure, a poll conducted by his opponent showed a decline in support for Congressman Perry. Wenner, *supra*.

On information and belief, the Warrant Materials are currently under seal.

## ARGUMENT

I. **The press and public have a presumptive right of access to judicial records related to the seizure of Congressman Perry's cell phone.**

The Third Circuit has recognized two overlapping presumptions of public access to court records: a "First Amendment right of access to the courtroom [that] includes a right to access to documents resulting from those court proceedings," *Reed v. Bernard*, 976 F.3d 302, 306 (3d Cir. 2020), *opinion vacated as moot*, No. 20-1632, 2021 WL 1897359 (3d Cir. 2021), as well as a "common law right 'to inspect and copy public records and documents, including judicial records and

documents,'" *United States v. Thomas*, 905 F.3d 276, 284 (3d Cir. 2018) (quoting *United States v. Smith*, 123 F.3d 140, 155 (3d Cir. 1997)).  Both the common law and First Amendment presumptions attach to the Warrant Materials at issue here.

A.    The public has a common law right of access to the Warrant Materials.

Under the common law, the public has a qualified right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  This right assures that the public has a "more complete understanding of the judicial system," *United States v. Criden*, 675 F.2d 550, 556 (3d Cir. 1982), and "promotes public confidence in [it] by enhancing testimonial trustworthiness and the quality of justice dispensed by the court," *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988).  Where the right attaches, public access is presumed; the analysis whether to seal or unseal a record thus "begins with a thumb on the scale in favor of openness," which a party seeking secrecy in a particular case can overcome only by showing that "disclosure will work a clearly defined and serious injury."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 676, 678 (3d Cir. 2019) (citation omitted).

Whether the common law presumption of access attaches to a document "turns on whether that item is considered to be a 'judicial record,'" which depends in turn "on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory

proceedings." *In re Cendant Corp.*, 260 F.3d at 192.  Though the Third Circuit has

not had occasion to address the issue, warrant applications and related materials

plainly fit that description, as other federal courts of appeals have concluded,

because they are filed with the court in order "to influence a judicial decision to

find probable cause." *In re L.A. Times Commc'ns*, 28 F.4th at 296–97; *accord*

*United States v. Sealed Search Warrants*, 868 F.3d 385, 390 (5th Cir. 2017); *In re*

*Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990); *Balt. Sun Co. v. Goetz*, 886 F.2d 60,

65–66 (4th Cir. 1989).  Other district courts in the Third Circuit have reached the

same intuitive result.  *See In re Search of 1993 Jeep Grand Cherokee*, 958 F. Supp.

205, 209 (D. Del. 1996) ("The common law qualified right of access has been

found to apply to search warrant affidavits following execution of the warrant.").

The common law presumption also applies, independently, to docket sheets.

As Applicants understand it, in this Court, judicial records related to warrants are

not filed on the public docket.  *See* Standing Order 05-6, *In re: Electronic Case*

*Filing Policies & Procedures*, U.S. Dist. Ct. for M.D. Pa. (Nov. 18, 2009),

https://perma.cc/WSE9-YGFT (explaining that search and seizure warrants are

"excluded from the Electronic filing system"); *see also* Standing Order 2021-6, *In*

*re: Amendment to the Instructions for the Filing, Service, and Management of*

*Highly Sensitive Documents*, U.S. Dist. Ct. for M.D. Pa. (Jan. 15, 2021),

https://perma.cc/6D5P-QVEY (explaining that "[a]pplications for Search Warrants,

and related documents, in cases involving HIS" are maintained in a "secure paper filing system and/or standalone computer system that is not connected to any network"). But the Third Circuit has made clear that "case dockets maintained by the clerk of the district court are public records." *Criden*, 675 F.2d at 559; *accord In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders* ("*In re Leopold*"), 964 F.3d 1121, 1129 (D.C. Cir. 2020) (Garland, J.) (so holding in the specific context of investigative materials analogous to warrants). As a result, the qualified common law right of public access applies to the docket sheets here.

      B.    <u>The public also has a First Amendment right of access to the Warrant Materials.</u>

The First Amendment likewise guarantees presumptive public access to the Warrant Materials. To determine whether the First Amendment supports a presumption of access to a particular class of judicial records, courts look to two complementary considerations: "experience and logic." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9 (1986). Here, both favor presumptive access to the Warrant Materials, including any docket sheets.

With respect to the experience of access, "[f]requently—probably most frequently—warrant papers including supporting affidavits are open for inspection by the press and public in the clerk's office after the warrant has been executed." *Balt. Sun Co.*, 886 F.2d at 64. That practice is longstanding. *See In re Leopold*, 300 F. Supp. 3d 61, 88 (D.D.C. 2018) (noting an "unbroken, uncontradicted history

9

of openness" with respect to "post-execution search warrant materials" (citation omitted)), *rev'd on other grounds*, 964 F.3d 1121 (D.C. Cir. 2020).

Moreover, the Third Circuit has recognized that the common law right of access, discussed above, "played a crucial role in the development of First Amendment jurisprudence" on access to judicial records. *United States v. Antar*, 38 F.3d 1348, 1361 (3d Cir. 1994). As a result, the fact that warrant materials are presumptively accessible under the common law reinforces the conclusion that the judgment of experience favors access for purposes of the First Amendment. *See id.; accord Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004).

Logic supports a constitutional presumption of access, too, because press and public access to warrant materials post-execution advances the core values that underlie the right, including by promoting "informed discussion of governmental affairs by providing the public with the more complete understanding of the judicial system," promoting "the public perception of fairness," and "serving as a check on corrupt practices by exposing the judicial process to public scrutiny." *United States v. Smith*, 787 F.2d 111, 114 (3d Cir. 1986). As other courts have observed, those interests support access to warrant materials, in particular, because transparency "operate[s] as a curb on prosecutorial or judicial misconduct." *In re Gunn*, 855 F.2d at 573. Search warrant applications and supporting affidavits "are critical to judicial determinations of whether the Fourth Amendment's probable

cause standards are met," *In re Search Warrant*, No. 16-MAG-7063, 2016 WL 7339113, at *2 (S.D.N.Y. Dec. 19, 2016), and as a result "public access to them facilitates public monitoring of the various government agencies and branches" involved in authorizing and executing a search, *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 583–84 (S.D.N.Y. 2009).

The First Amendment presumption also attaches, independently, to the docket sheets, as a number of courts have concluded.  *See Pellegrino*, 380 F.3d at 91 (holding that "the media and the public possess a qualified First Amendment right to inspect docket sheets"); *Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (holding that "the public and press's First Amendment qualified right of access to civil proceedings extends to docket sheets"); *In re State-Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam) (reversing overbroad sealing of docket sheets in criminal cases as incompatible with the First Amendment); *Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) ("The First Amendment access right extends to court dockets . . . .").

As to experience, there is a "centuries-long history of public access to dockets."  *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012); *see also Pellegrino*, 380 F.3d at 94 (tracing the tradition of open "docket books" to "the first years of the Republic").  And logic plainly favors access to docket sheets because, among other vital roles they play in the judicial process, public dockets

facilitate the public's exercise of its right to inspect court documents and attend proceedings. *See Public Citizen*, 749 F.3d at 268; *Pellegrino*, 380 F.3d at 93; *cf. Criden*, 675 F.2d at 559 (requiring public docketing of sealing motions to ensure the public a meaningful opportunity to be heard on access to judicial proceedings). The First Amendment presumption therefore attaches to the docket sheets here.

## II.   The public's presumptive rights of access can be overcome only by a compelling showing that the Government cannot make on these facts.

Where a party seeks to overcome the common law right, a "strong presumption [of access]" is the starting point of the analysis. *In re Avandia*, 924 F.3d at 672. Parties must carry a "heavy burden" to seal "any part" of a judicial record by showing that "disclosure will work a clearly defined and serious injury," *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (citation omitted)—an injury that cannot be avoided "by redacting sensitive information rather than refusing to unseal the materials entirely," *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011). The First Amendment, for its part, "requires a much higher showing than the common law right." *In re Cendant Corp.*, 260 F.3d at 198 n.13. Secrecy can be justified, if at all, only on the basis of factual "findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984). The Government cannot show that any such interests—to the extent any in fact exist—justify sealing every line of every document here.

For one, interests that might justify secrecy in another matter have been substantially undercut by the information "already publicly available" here. *United States v. Criden*, 648 F.2d 814, 822 (3d Cir. 1981). When a person has already been publicly connected to an investigation—whether on their own initiative, by media reporting, or otherwise—their privacy interests are "substantially diminished." *In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 95 (3d Cir. 1990) (quoting *Smith*, 787 F.2d at 116). Here, Congressman Perry has made statements to the news media about the incident on numerous occasions, *see, e.g.*, *'Outraged': Scott Perry Tells Fox News that FBI agents Seized His Phone*, York Dispatch (Aug. 9, 2022), https://perma.cc/L5RH-PFSY, and has "himself filed a lawsuit" that "placed some details regarding the search[] in the public eye," *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 91 (D.D.C. 2008). "[E]xtensive media reporting" has further eroded any residual need for secrecy. *In re L.A. Times Commc'ns*, 28 F.4th at 298. Indeed, if anything, with the Warrant Materials sealed, Congressman Perry is "hamstrung" rather than helped "in [his] ability to mitigate the damage done by [his] public identification" with the Government's high-profile investigation. *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010).

Applicants recognize that the Government may assert interests related to its ongoing investigation that survive the public disclosures that have already taken

place.  But, to the extent any such countervailing concerns are sufficiently

compelling, this Court "can accommodate [them] by redacting sensitive

information rather than refusing to unseal the materials entirely." *Custer

Battlefield*, 658 F.3d at 1195 n.5; *see also Miller*, 16 F.3d at 551 ("A party who

seeks to seal an *entire* record faces an even heavier burden." (emphasis in

original)).  The Third Circuit charges district courts with "conducting a document-

by-document review" when making these judgments, *In re Avandia*, 924 F.3d at

677, and any residual interests at stake here cannot require wholesale sealing.

Courts have recognized that protecting the identities of confidential

informants, for example, is an interest that may warrant tailored redactions.  *See In

re EyeCare Physicians of Am.*, 100 F.3d 514, 518 n.5 (7th Cir. 1996).  But "that

interest can be accomplished by simply redacting the identity and personal

identifiers of the informants."  *In re N.Y. Times Co.*, 585 F. Supp. 2d at 91.  By the

same token, the fact that the Warrant Materials relate to an ongoing investigation is

not dispositive.  *See United States v. Gonzalez*, 927 F. Supp. 768, 778–79 (D. Del.

1996) (rejecting as "seriously lacking" the argument that an ongoing investigation

would be undermined "if the public and the press become involved in their own

independent evaluations of what occurred at the FBI").  Instead, to justify

redacting any particular portion of the records, the Government must show with

specificity "*how* the integrity of the investigation reasonably could be affected by

the release" of any specific piece of information in the Warrant Materials. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004) (emphasis added). Again, no such rationale could justify continued, total sealing here.

At base, as the Government itself recently explained in moving to unseal search warrant materials related to the ongoing investigation of a former public official—former President Donald Trump—in the U.S. District Court for the Southern District of Florida, the public has a "clear and powerful interest" in understanding law enforcement actions that "concern[] public officials or public concerns." United States' Motion to Unseal Limited Warrant Materials at 4, *In re Sealed Search Warrant*, No. 22-mj-8332 (S.D. Fla. Aug. 11, 2022) (ECF No. 18) (quoting *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007)). The same principle holds in this case. The Warrant Materials should be unsealed in their entirety or, at minimum, unsealed with any tailored redactions for which the Government can show a compelling justification.

## CONCLUSION

For the foregoing reasons, Applicants respectfully request that the Court enter an order directing the Clerk of the Court to unseal the Warrant Materials.

Dated:  September 29, 2022       Respectfully submitted,

*s/ Paula Knudsen Burke*
 Paula Knudsen Burke [PA 87607]
 pknudsen@rcfp.org
 Katie Townsend*
 ktownsend@rcfp.org
 Grayson Clary*
 gclary@rcfp.org
 REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
 1156 15th St. NW, Suite 1020
 Washington, D.C. 20005
 Phone: (202) 795-9300
 Facsimile: (202) 795-9310

*Pro hac vice applications pending*

*Counsel for Applicants PennLive, York
Daily Record, and York Dispatch*

16

## CERTIFICATE OF CONCURRENCE OR NONCONCURRENCE

Pursuant to Local Rule 7.1, I, Paula Knudsen Burke, hereby certify that I sought concurrence from counsel for the United States to determine their position on the foregoing.  On Sept. 28, 2022, Grayson Clary contacted the U.S. Attorney's Office for the Middle District of Pennsylvania by email but has not received a response.  The same day, I contacted Daryl Bloom, Deputy Chief of the Criminal Division (Harrisburg) for the U.S. Attorney's Office by phone and email but have not received a response.  A public affairs officer for the U.S. Attorney's Office directed us to Timothy A. Dupree as the responsible attorney; I contacted Mr. Dupree by email at 12:02pm on September 29 but have not received a response.

Because we have not received a response to our outreach, Applicants cannot provide the Court with the position of the United States on the requested relief.

Dated:  September 29, 2022                     Respectfully submitted,

                                              *s/ Paula Knudsen Burke*
                                              Paula Knudsen Burke [PA 87607]
                                              pknudsen@rcfp.org
                                              REPORTERS COMMITTEE FOR
                                               FREEDOM OF THE PRESS
                                              1156 15th St. NW, Suite 1020
                                              Washington, D.C. 20005
                                              Phone: (202) 795-9300
                                              Facsimile: (202) 795-9310

                                              *Counsel for Applicants PennLive, York*
                                              *Daily Record, and York Dispatch*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I, Paula Knudsen Burke, hereby certify

that the foregoing contains 4,980 words, excluding this certificate, as calculated by

the word-count feature of Microsoft Word.

Dated:  September 29, 2022              Respectfully submitted,

*s/ Paula Knudsen Burke*
Paula Knudsen Burke [PA 87607]
pknudsen@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: (202) 795-9300
Facsimile: (202) 795-9310

*Counsel for Applicants PennLive, York*
*Daily Record, and York Dispatch*

## CERTIFICATE OF SERVICE

I, Paula Knudsen Burke, hereby certify that on the 29th day of September,

2022, a copy of the foregoing was filed electronically using this Court's CM/ECF

system, and sent via U.S. Mail to:

United States Attorney's Office for the Middle District of Pennsylvania
Harrisburg Federal Building and Courthouse
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108-1754

Dated:  September 29, 2022

*s/ Paula Knudsen Burke*
Paula Knudsen Burke [PA 87607]
pknudsen@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: (202) 795-9300
Facsimile: (202) 795-9310

*Counsel for Applicants PennLive, York
Daily Record, and York Dispatch*

19