UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE APPLICATION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNSEAL COURT RECORDS** | Misc. Action No. 1:22-mc-00756<br>Hon. Susan E. Schwab |

**OPPOSITION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNITED STATES' MOTION TO SEAL ITS RESPONSE**

PAULA KNUDSEN BURKE
[PA 87607]
pknudsen@rcfp.org
KATIE TOWNSEND*
ktownsend@rcfp.org
GRAYSON CLARY**
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

* *Pro hac vice application pending*
** *Admitted pro hac vice*

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*

**SUMMARY OF ARGUMENT**

PennLive, York Daily Record, and York Dispatch ("Applicants") respectfully submit this opposition to the motion of the United States ("the Government") to seal its response to their application for an order unsealing certain court records related to a warrant that authorized the seizure of Congressman Scott Perry's cell phone on August 9, 2022. *See* ECF No. 1 ("the Application").

The Government's desire to litigate this matter in secret cannot be squared with the public's common law and First Amendment rights of access to judicial records, and it flies in the face of the principle that only "the most extraordinary circumstances" can justify "court reliance upon *ex parte* evidence to decide the merits of a dispute." *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986); *see also In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 95 (3d Cir. 1990) (finding a denial of due process where a news organization was denied any "information concerning the government interests" allegedly at stake in its motion to unseal). Indeed, only a few months ago, the U.S. Court of Appeals for the D.C. Circuit ordered a district court to reconsider— among other errors—its decision to deny an application to unseal warrant materials related to a sitting member of Congress without providing the applicant any access to the Government's opposition. *See In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292, 298–99 (D.C. Cir. 2022). This Court should similarly reject the

1

Government's effort to deny Applicants a fair adjudication of their claims and the public any opportunity to understand the basis for this Court's ultimate decision.

For the reasons herein, the Court should deny the Government's motion to seal and require that an unsealed or redacted version of the Government's response be filed on the public docket. Further, because Applicants cannot meaningfully reply to arguments they cannot see, Applicants also request that the Court grant them leave to reply to the contentions made by the Government in its sealed response within fourteen (14) days from the date on which an unsealed or redacted version is placed on the public docket. *Cf.* L.R. 7.7 (providing that replies be filed 14 days after filing of the brief in opposition).

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 29, 2022, Applicants filed an application for an order unsealing court records related to a warrant obtained pursuant to Federal Rule of Criminal Procedure 41that authorized the seizure of Congressman Scott Perry's cell phone on August 9, 2022. *See* ECF No. 1. In that application, Applicants canvassed the extensive information already in the public domain about the warrant and the investigation to which it relates, including Congressman Perry's own disclosures, *see* Emergency Motion for Return of Seized Property ("Emergency Motion") at 1, *Perry v. United States,* No. 1:22-mc-00079 (D.D.C. Aug. 18, 2022) (ECF No. 1), extensive media reporting, *see, e.g.,* David Wenner,

*Scott Perry Losing Support Over Jan. 6 Allegations, Poll by Democratic Opponent Says*, PennLive (Aug. 16, 2022), https://perma.cc/565P-JT6G, and information about Congressman Perry's conduct made public by the House committee investigating the January 6 attack on the United States Capitol, *see, e.g.*, Nicholas Wu & Kyle Cheney, *Why Scott Perry Stands Out in the FBI's Investigations of Trump Allies*, Politico (Aug. 10, 2022), https://perma.cc/74TN-72JV.

This Court ordered the Government to respond to the Application by October 20, 2022, after granting an extension of time. *See* ECF No. 6. On October 20, 2022, the Government moved to file its response entirely under seal. *See* ECF No. 8. Applicants' reply is currently due on November 3, 2022. *See* L.R. 7.7.

## ARGUMENT

I. **The public has a presumptive common law and First Amendment right of access to the Government's response, and the Government cannot demonstrate that countervailing interests justify wholesale sealing here.**

The Government's opposition to a motion to unseal judicial records is, itself, presumptively accessible to the public under both the common law and the First Amendment. As the Application explains, the Third Circuit has long recognized a strong common law presumption of public access to "judicial records," which attaches where "a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). The Government's response—

submitted to influence this Court's decision on the merits of the Application—is a classic example. *See Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991) (unsealing "information offered by a party in the litigation in support of a motion it hoped would be dispositive"); *In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 296 (holding that the common law presumption of access attaches to the opposition to a motion to unseal in particular).

The First Amendment also guarantees presumptive access to the Government's response. *See United States v. Index Newspapers LLC*, 776 F.3d 1072, 1096 (9th Cir. 2014) (First Amendment right attaches to records filed in connection with a motion to unseal). Not only have "[m]otions to unseal judicial proceedings and orders ruling on those motions . . . historically been accessible to the public," but "[l]ogic also dictates that the record of these types of proceedings should be open to the public because the very issue at hand is whether the public should be excluded or included in various types of judicial proceedings." *Index Newspapers*, 766 F.3d at 1096; *In re Copley Press*, 518 F.3d 1022, 1026 (9th Cir. 2008) (recognizing First Amendment right of access to "the government's motion" seeking to seal judicial records "and the memoranda filed in support of it").

Were it otherwise, members of the press and public would be deprived of their constitutionally mandatory "opportunity to be heard at a meaningful time and in a meaningful manner" on the issue of sealing. *United States v. Raffoul*, 826 F.2d

4

218, 222 (3d Cir. 1987). And, indeed, without any access to the Government's response here, Applicants have no chance to "rebut the reasons" offered in support of secrecy or "elict[] on the record from the only party . . . familiar with the contents of the records" factual matter "essential to the resolution" of their Application. *In re Cap. Cities*, 913 F.2d at 95.

The Government cannot demonstrate that either the common law or First Amendment presumption of access is overcome with respect to the entirety of its response. *See Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (emphasizing that parties carry a "heavy burden" to seal "any part"—let alone every part—of a judicial record). And while Applicants are placed "at a severe disadvantage" by the Government's unwillingness to offer a single public word "concerning the government interests that would enter into the . . . analysis," *In re Cap. Cities*, 913 F.2d 89 at 95, common sense (and the information that is already public) demonstrate that the secrecy the Government seeks here is overbroad.

For one, it is a routine expectation of transparency litigation that the Government be prepared "to justify its actions without compromising its original withholdings by disclosing too much information." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). As a result, the Government routinely files public briefs—subject to redactions if necessary—in cases that touch on the nation's most sensitive secrets, an approach that gives due weight to the public's

5

"strong interest in monitoring . . . the positions that its elected officials and government agencies take in litigation." *Doe v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014).[1] Indeed, the Government recently filed an exceptionally public response to a motion to unseal warrant materials related to an ongoing investigation of a former public official—former President Donald Trump—in the U.S. District Court for the Southern District of Florida. *See* United States' Omnibus Response to Motions to Unseal, *In re Sealed Search Warrant*, No. 22-mj-8332 (S.D. Fla. Aug. 15, 2022) (ECF No. 59) ("Mar-a-Lago Response").

The suggestion that the Government cannot say a single word in public in this case is unserious. For one, similarly strong public interests weigh heavily in favor of transparency here. As the Government itself explained in the Mar-a-Lago matter, the public has a "clear and powerful interest" in understanding law enforcement actions that "concern[] public officials or public concerns." United States' Motion to Unseal Limited Warrant Materials at 4, *In re Sealed Search Warrant*, No. 22-mj 8332 (S.D. Fla. Aug. 11, 2022) (ECF No. 18) (quoting *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007)) ("Mar-a-

---

[1] To cite an especially relevant example, the Government filed a public—if redacted—appellate brief in its unsuccessful effort to neither confirm nor deny the existence of warrant materials related to its insider-trading investigation of Senator Richard Burr, *see* Redacted Appellee Brief, *In re Los Angeles Times Commc'ns LLC*, No. 21-5128 (D.C. Cir. Nov. 18, 2021), a brief that was then further unsealed after the unsealing of the warrant materials, *see* Public Redacted Appellee Brief, *In re Los Angeles Times Commc'ns LLC*, No. 21-1528 (D.C. Cir. Sept. 19, 2022).

Lago Motion"). And here, just as in that case, any interests that might justify secrecy have been substantially undercut by the information "already publicly available." *United States v. Criden*, 648 F.2d 814, 822 (3d Cir. 1981).

Against this backdrop, no countervailing interest the Government might claim could require sealing the entirety of its response. Public access to the Government's characterization of the *kinds* of interests it claims are at stake in unsealing the records at issue would not jeopardize those interests. *See* Mar-a-Lago Response at 8. And the wholesale sealing of the Government's response gives no weight to the basic logic of the right of access: "[E]very citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer,* 137 Mass. 392, 394 (1884) (Holmes, J.). Here, the public cannot hope to understand this Court's decision on the Application without any sense of the interests the Government has cited in support of secrecy, and therefore without insight into "which parts of those materials persuaded the court and which failed to do so (and why)." *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017) (Garland, J.). The point is even starker with respect to the Government's positions on pure questions of law—on whether, for instance, the First Amendment presumption of access attaches to the warrant materials Applicants seek access to. There is no legitimate interest in

concealing the Government's view on that issue. *See* Mar-a-Lago Response at 4 n.3 (denying in a public filing that the First Amendment presumption attaches).

Finally, it bears underlining that, as noted above, the D.C. Circuit recently rejected an identical gambit in another matter involving access to warrant materials related to a sitting member of Congress. *See In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 298. There, in response to an application to unseal warrant materials related to the Government's investigation of Sen. Richard Burr, the Government persuaded a district court not only to maintain those warrant materials under seal but also to seal the Government's opposition to unsealing in its entirety, on the theory that the Government had not yet acknowledged the investigation— even though, as here, the investigation was the subject of extensive reporting and Sen. Burr had commented publicly on it. *See id.* at 295–96. The D.C. Circuit remanded, explaining that the district court erred in "plac[ing] almost no weight on the extensive media reporting relating to the Justice Department investigation, including the Senator's own acknowledgement of the investigation." *Id.* at 298.

Under Third Circuit precedent, the right-of-access analysis requires not only a rigorous "document-by-document review," *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 676, 677 (3d Cir. 2019), but also close scrutiny of the sealing of "any part" of any individual document, *Miller*, 16 F.3d at 55. To authorize blanket sealing based on nothing more than the Government's

unwillingness to confirm that records exist would violate the core principle that the access inquiry must weigh all of "the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). Here, the fact is that the public already knows a great deal about the seizure of Congressman Perry's cellphone and the investigation to which these court records relate: They read about it in their newspapers, heard Congressman Perry confirm the seizure on television and in federal court, and saw the details of his conduct broadcast in televised House committee hearings. This Court should reject the Government's effort to defend secrecy that does not exist.

**II. The wholesale sealing of the Government's response would deny Applicants the opportunity to answer it that both the First Amendment and due process demand.**

Independent of the public's right of access to the Government's response, wholesale sealing of it would deny Applicants the opportunity to respond that both the First Amendment and due process require. *See Raffoul*, 826 F.2d at 225 (requirements of due process attach to adjudication of claims for access to judicial proceedings and records). "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring). As a result, only "the most extraordinary circumstances" can justify "court reliance upon *ex parte* evidence to decide the merits of a dispute." *Abourezk v. Reagan*, 785 F.2d 1043,

1061 (D.C. Cir. 1986). The same is true in the unsealing context in particular. *See In re Cap. Cities*, 913 F.2d 89 at 95 (finding that denial of opportunity to "directly rebut the reasons" offered for secrecy unfairly prejudiced an unsealing applicant).

"[D]ue process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments offered by the other." *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004). For instance, as the Third Circuit has explained and common sense makes clear, an applicant given notice that the Government claims particular information is not yet in the public domain may be able to reply with "press reports" proving that it is—information that would be "essential to the issue before the district court." *In re Cap. Cities*, 913 F.2d at 95. The Government's contrary approach risks fundamentally distorting the litigation by placing before the Court arguments that have not confronted "the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656 (1984). Indeed, on the Government's preferred model, neither Applicants nor the public would ever know if this Court's ultimate decision was influenced by contentions that Applicants could have persuasively answered in a reply.

At base, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the

10

court's decision sealed from public view." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) (so explaining in finding a common law presumption of access to warrant materials, even where an investigation is ongoing) (second alteration in original) (citations omitted). That consideration applies with full force to the Government's response, just as it does to the underlying warrant materials that Applicants seek to unseal in this case.

## CONCLUSION

For the foregoing reasons, Applicants respectfully urge the Court to deny the Government's motion to seal its response and require that the response, or a redacted version of it, be filed on the public docket. Applicants also request that the Court grant Applicants leave to reply to the arguments made by the Government in its sealed response within fourteen (14) days from the date on which the unsealed or redacted version of is placed on the Court's public docket.

Dated: October 24, 2022          Respectfully submitted,

                                    *s/ Paula Knudsen Burke*

Paula Knudsen Burke
[PA 87607]
pknudsen@rcfp.org
Katie Townsend*
ktownsend@rcfp.org
Grayson Clary**
gclary@rcfp.org
REPORTERS COMMITTEE FOR
　FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*  *Pro hac vice application pending*
** *Admitted pro hac vice*

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*

# CERTIFICATE OF SERVICE

I, Paula Knudsen Burke, hereby certify that on the 24th day of October, 2022, a copy of the foregoing was filed electronically using this Court's CM/ECF system.

Dated: October 24, 2022                Respectfully submitted,

*s/ Paula Knudsen Burke*
Paula Knudsen Burke
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*