## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE APPLICATION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNSEAL COURT RECORDS** | Misc. Action No. 1:22-mc-00756<br>Hon. Susan E. Schwab |

### NOTICE OF SUPPLEMENTAL AUTHORITY

Applicants PennLive, York Daily Record, and York Dispatch ("Applicants") write to provide the Court with the newly unsealed order and opinion described in Applicants' previous notice.  *See* Notice of Supplemental Authority at 1–2 (ECF No. 21); Order & Opinion, *In re Associated Press*, No. 5:22-mc-0011 (S.D. Tex. Nov. 28, 2022).  The decision was made public after the Government declined to file objections to the order that its briefing in that matter, which the Government previously cited as precedent for sealing its briefing here, be unsealed.  For the reasons given in Applicants' filings and Magistrate Judge Edison's well-reasoned opinion on the same issue, Applicants' respectfully urge the Court to order that the Government's briefing in this matter be unsealed, subject only—if necessary—to any limited redactions for which the Government can prove a compelling need.

Dated: December 14, 2022            Respectfully submitted,

                                                            *s/ Katie Townsend*

1

Katie Townsend*
[CA 254321]
ktownsend@rcfp.org
Paula Knudsen Burke
pknudsen@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Admitted pro hac vice*

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*

2

## CERTIFICATE OF SERVICE

I, Katie Townsend, hereby certify that on the 14th day of December, 2022, a copy of the foregoing was filed electronically using this Court's CM/ECF system.

Dated: December 14, 2022			Respectfully submitted,

<p style="margin-left:3em">
<u>*s/ Katie Townsend*</u>  
Katie Townsend  
REPORTERS COMMITTEE FOR  
  FREEDOM OF THE PRESS

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*
</p>

# ATTACHMENT

Case 5:22-mc-00111 Document 13 Filed on 11/28/22 in TXSD Page 5 of 14

Case 5:22-mc-00175 Document 13 Filed on 11/28/22 in TXSD Page 5 of 10

United States District Court
Southern District of Texas
**ENTERED**
November 28, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

|   |   |   |
|---|---|---|
| IN RE ASSOCIATED PRESS, *et al.* | § § § § § § | NO. 5:22-mc-00111 |

## ORDER AND OPINION

Pending before me is Applicants' Motion to Unseal Sealed Response of the United States ("Motion to Unseal Response"). *See* Dkt. 8. Having reviewed the briefing submitted by the parties and the applicable case law, and for the reasons explained below, I conclude that various filing made by the Government should be redacted and placed on the public docket.

## BACKGROUND

Applicants The Associated Press, Gannett Co., Inc., Gray Media Group, Inc., Hearst Corporation, and the Texas Tribune (collectively, "Applicants") initiated this proceeding to unseal "certain court records related to search warrants obtained pursuant to Federal Rule of Criminal Procedure 41 and executed at the Laredo home and campaign office of U.S. Representative Henry Cuellar on or about January 19, 2022." Dkt. 1 at 1.

The fact that federal agents conducted searches at Rep. Cuellar's home and campaign office on January 19, 2022 is certainly no secret. The searches were widely reported by the news media, who watched from afar as FBI agents carried out the searches. One press report noted that more than "two dozen agents filed in and out of the [Cuellar] residence," removing "large bags, plastic bins, and a computer" and loading those into federal vehicles. Valerie Gonzalez, *FBI Probe Targets Rep. Cuellar's Home, Campaign HQ in Laredo*, MONITOR (Jan. 19, 2022), https://myrgv.com/local-news/2022/01/19/fbi-activity-underway-near-rep-cuellars-home-in-laredo/. That same media outlet reported that "[a]gents were also present at [Rep. Cuellar's] downtown campaign office in Laredo." *Id.* Photos

plastered on various newspapers and websites showed individuals wearing FBI-emblazoned clothing at Rep. Cuellar's home. *See, e.g.*, Jorge A. Vela, *FBI Searches Home, Offices of Rep. Henry Cuellar*, LMTONLINE.COM/LAREDO MORNING TIMES (Jan. 20, 2022), https://www.lmtonline.com/news/article/FBI-searches-home-offices-of-Rep-Henry-Cuellar-16790354.php. Importantly, the FBI expressly acknowledged that it searched Rep. Cuellar's property as part of an ongoing investigation. "The FBI was present [on January 19, 2022] in the vicinity of Windridge Drive and Estate Drive [near Rep. Cuellar's home] in Laredo conducting court-authorized law enforcement activity. The FBI cannot provide further comment on an ongoing investigation," said Rosanne Hughes, a public affairs officer out of the FBI's San Antonio Division. *FBI Confirm Search near Texas Home of Rep. Henry Cuellar*, CNBC (Jan. 20, 2022, 8:36 AM), https://www.cnbc.com/2022/01/20/fbi-confirm-search-near-texas-home-of-rep-henry-cuellar.html. Although the FBI spokesperson said the FBI was conducting "court-authorized law enforcement activity," she did not say what the FBI was investigating.

A few days after federal agents searched his home and campaign office, Rep. Cuellar publicly acknowledged a federal investigation: "There is an ongoing investigation that will show that there was no wrongdoing on my part," Cuellar said. Patrick Svitek, *After FBI Raid, U.S. Rep. Henry Cuellar Says Investigation Will Prove "No Wrongdoing on My Part*,*"* TEX. TRIB. (Jan. 25, 2022, 4:00 PM), https://www.texastribune.org/2022/01/25/henry-cuellar-texas-fbi/. In April 2022, a few months after the searches took place, Rep. Cuellar's attorney, Joshua Berman, told CBS News: "The Justice Department has informed me that Congressman Cuellar is not a target of the investigation . . . . He continues to cooperate fully in the investigation." Aaron Navarro, *Texas Rep. Henry Cuellar Is Not the Target of FBI Investigation, His Attorney Says*, CBS NEWS (Apr. 13, 2022, 9:21 PM), https://www.cbsnews.com/news/henry-cuellar-texas-representative-not-fbi-investigation-target/.

At the same time Applicants filed this action to unseal certain court records related to the searches of Rep. Cuellar's home and campaign office, Applicants provided the Court with a Memorandum of Points and Authorities in Support of Application. *See* Dkt. 1-1. To allow for full consideration of the issues surrounding the request to unseal warrant materials, I ordered the Government to provide a brief setting forth its stance on whether certain court records should be unsealed. *See* Dkt. 5. I also gave Applicants the opportunity, once the Government outlined its position, to file a reply brief in support of its request to unseal court records. *See id.*

As I requested, the Government filed a Response in Opposition to Motion to Unseal Court Records ("Dkt. 7"). *See* Dkt. 7. That pleading, however, was filed under seal. To be clear, each and every word in Dkt. 7 was filed under seal. As a result, the Applicants have no earthly idea why the Government opposes its effort to unseal certain court records. Not surprisingly, Applicants promptly filed a Motion to Unseal Response. *See* Dkt. 8. In that motion, Applicants argue that "[t]he Government's desire to litigate this matter in secret cannot be squared with the common law and First Amendment rights of access to judicial records, and it flies in the face of the principle that '[o]ur adversarial legal system generally does not tolerate ex parte determinations on the merits.'" *Id.* at 5 (quoting *Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. Unit B 1981)). At the end of their Motion, Applicants request that I unseal Dkt. 7 or, in the alternative, require the Government to file a redacted version on the public docket. The Government timely filed an Opposition to Motion to Unseal Sealed Response of the United States ("Dkt. 9"), explaining why it objects to unsealing Dkt. 7. *See* Dkt. 9. As was the case with its initial brief opposing the unsealing of court records, the Government filed Dkt. 9 wholly under seal.

Before I continue, let me make it perfectly clear that I am not, at this time, making any ruling on the Applicant's underlying request that I unseal court records relating to the searches conducted at Rep. Cuellar's home and campaign office.

3

District courts handling a request to unseal pre-indictment search warrants and the affidavits in support of those search warrants are required to "exercise their discretion by balancing the public's right to access judicial documents against interests favoring nondisclosure." *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017). I have yet to undertake that balancing analysis, but I will do so in due course. Today, I simply tackle the one issue that must be addressed before I determine whether the search warrant materials should be unsealed: Should the Government be entitled to file all of its briefing in this matter under seal so that the Applicants are left in the dark as to the Government's reasoning for opposing the unsealing of the warrant materials? Or, conversely, should I carefully review Dkts. 7 and 9 to determine what portions of those filings should be produced in redacted form for public viewing?

Make no mistake: the Government takes the position that no portion of Dkts. 7 or 9 should be unsealed. This is, in my view, quite concerning. Although I certainly understand and appreciate the Government's desire to restrict disclosure of those parts of Dkts. 7 and 9 containing sensitive information, the notion that the Government cannot say a single word in public about this matter is, as Applicants point out, "unserious." Dkt. 8 at 9.

Alarmed by the Government's efforts to file all of its briefing in this case under seal, I held a hearing on November 10, 2022. At that hearing, I noted that the Fifth Circuit has clearly and emphatically stated that "[t]he public's right of access to judicial proceedings is fundamental." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021). I further explained that there are limited circumstances in which it is appropriate to seal certain information from the public's prying eyes. *See id.* at 417. But withholding access to public filings is unquestionably the exception rather than the rule. To decide whether something should be sealed, the Fifth Circuit requires district courts to undertake a "document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* at 419 (quotations

4

omitted). After briefly discussing this legal framework, I informed the parties that I would, as the Fifth Circuit demands, carefully review Dkts. 7 and 9 to determine what portions, if any, should be made accessible to the public. I invited the Government to submit, under seal, its proposed redactions to Dkts. 7 and 9. The Government did so, *see* Dkts. 11-1 and 11-2, but the Government's proposed redactions are, in my mind, entirely inadequate.

## LEGAL STANDARD

"The principle of public access to judicial records furthers not only the interests of the outside public, but also the integrity of the judicial system itself." *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010). The public's right of access "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id.* (quotation omitted). Accordingly, the Fifth Circuit "heavily disfavor[s] sealing information placed in the judicial record." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519–20 (5th Cir. 2022). Indeed, the Fifth Circuit has instructed district courts to be "ungenerous with their discretion to seal judicial records." *Le*, 990 F.3d at 418. In *Le*, the Fifth Circuit recognized the public's "fundamental" right of access to judicial proceedings:

> The principle traces back to Roman law, where trials were *res publica*—public affairs. Public access was similarly fundamental to English common law. Seventeenth-century English jurist Sir Edward Coke explained that "all Causes ought to be heard, ordered, and determined before the Judges of the King's Courts openly in the King's Courts, *wither all persons may resort.*" A century or so later, English philosopher and judge Jeremy Bentham observed, "Publicity is the very soul of justice."
>
> In this tradition, American judicial proceedings are public.

*Id.* (citations omitted). In my role as a federal judge, I am tasked with protecting this common law right of access because "(1) the public has a right to monitor the exercise of judicial authority; (2) judges are the primary representatives of the

5

public interest in the judicial process; and (3) the judiciary's institutional legitimacy depends on public trust." *Id.* (cleaned up). As already noted, "judges, not litigants must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* at 419 (quotations omitted).

## DISCUSSION

At the heart of the Government's opposition to unsealing Dkts. 7 and 9 is its concern that unsealing these submissions will disclose that there is an ongoing criminal investigation. To be clear, the existence of an ongoing criminal investigation has been widely reported by multiple news outlets and acknowledged by Rep. Cuellar. And, most importantly, an FBI spokesperson has expressly acknowledged the existence of an ongoing investigation, although the FBI has not, to date, disclosed any additional information about the investigation. Among other things, the FBI has not identified the target of the criminal investigation, described the scope of the investigation, or commented on the status of the investigation. Nonetheless, the Government argues that disclosure of an ongoing investigation at this juncture "would do irreparable damage to both governmental and individual interests by alerting the investigation's subjects and the public that the investigation remains active, many months after the initial press coverage concerning [] the execution of the search warrants." Dkt. 9 at 1. I respectfully disagree.

The Government's concern would have some validity if I unsealed Dkts. 7 and 9 in their entirety, disclosing nonpublic details about the Government's ongoing investigation, including the Government's primary areas of inquiry and preliminary legal theories, the identities of certain subjects, and the use of various investigative techniques. But I am not willing to do that. Taking seriously my responsibility to conduct a line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure, I have carefully reviewed each and every word in Dkts. 7 and 9. In doing so, I have determined what

6

information contained in Dkts. 7 and 9 should remain sealed and what should be made public. Stated simply, I see no reason I should play a game of intellectual gymnastics to avoid acknowledging what Rep. Cuellar and the FBI readily admit: there is a criminal investigation. At the same time, I firmly believe that information contained in Dkts. 7 and 9 that discuss the investigation in greater detail should, for the time being, remain beyond the reach of the public.

I find the Government's request to completely shield the investigation's active status from the public disingenuous. It is hardly surprising that a government investigation that was active in January 2022 would remain active *less than one year later*. What is more, Rep. Cuellar's attorney commented in mid-April 2022 that the Department of Justice told him that Rep. Cuellar was not a target of the investigation. *See* Navarro, *supra*. The media's coverage of this statement makes it apparent that the investigation, at that time, was ongoing. *See* Paul Best & Andrew Murray, *Rep. Henry Cuellar Not a Target of DOJ Investigation That Saw His Home and Office Raided, Attorney Says*, FOX NEWS (Apr. 13, 2022, 1:13 PM), https://www.foxnews.com/us/rep-henry-cuellar-target-doj-investigation-home-office-raided-attorney ("'Congressman Cuellar has made clear that he did nothing wrong and he wanted to absolutely fully cooperate at all times with the Justice Department's investigation, which he has done from day one through today, and will continue to do so,' [Joshua] Berman, his attorney, said this week.").

In their Motion to Unseal Response, Applicants insist that:

> [T]he public cannot hope to understand this Court's ultimate decision without any sense of the interests the Government has cited in support of secrecy, and therefore without insight into "which parts of those materials persuaded the court and which failed to do so (and why)."

Dkt. 8 at 10 (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017)). Applicants further argue that "no countervailing interest the Government might claim could require sealing every sentence of its response." *Id.* I wholeheartedly agree. I am required to weigh the interests supporting the

7

"secrecy" of judicial records against the "presumption of openness that can be rebutted only by compelling countervailing interests favoring nondisclosure." *Le*, 990 F.3d at 421. After performing a line-by-line review of Dkts. 7 and 9, I have concluded that these judicial records do not need to be sealed in their entirety. It is simply not fair to Applicants, the public, or our judicial system to order a blanket sealing of Dkts. 7 and 9.

I believe that partial unsealing of Dkts. 7 and 9 is the best way to promote the public's interest in transparency while still protecting the Government's investigation. As discussed, I do not think that the law compels shielding the investigation's active status from the public. Additionally, Dkts. 7 and 9 contain facts already reported by various media organizations—including official statements issued by the FBI. They describe the Applicants' Application to Unseal Court Records, *see* Dkt. 1, which is available to the public. Both documents explain the law regarding the common law and First Amendment rights of access, which Applicants—without even knowing what law the Government cited—also addressed in the Motion to Unseal Response. These portions of Dkts. 7 and 9 do not need to be sealed.

There remain, however, sections of Dkts. 7 and 9 that should remain under seal because disclosure would impede the Government's ongoing criminal investigation. I will not disclose details pertaining to the investigation itself, including descriptions of the investigation; the names of targets, witnesses, and other interested parties; unreported information on the execution of the search warrants; descriptions of the contents of the search warrant affidavits; and the specific harms that the Government believes would occur upon disclosure. I agree with the Government that law enforcement, due process, and privacy interests require the sealing of these details.

All in all, I am confident that issuing redacted versions of Dkts. 7 and 9, while acknowledging the investigation's active status, will not reveal information threatening the investigation. This solution best balances the public's right of

8

access to judicial documents against the Government's interest in sealing the documents.

Attached as Exhibit 1 are my redactions to Dkt. 7 that I believe should be placed on the public docket. Attached as Exhibit 2 are my redactions to Dkt. 9 that I believe should be placed on the public docket. These documents should be placed in the public record.

The Government has requested that I issue my opinion under seal so the Government may raise any objections with the District Court before the information contained in Dkts. 7 and 9 is publicly disclosed and the proverbial horse is let out of the barn. Although I feel strongly that my proposed redactions to Dkts. 7 and 9 fully comply with the Fifth Circuit's command that district courts "zealously guard the public's right of access to judicial records," *Le*, 990 F.3d at 421, I will grant the Government's request. It behooves all of us to allow the Government to fully pursue its appellate remedies before issuing redacted versions of Dkts. 7 and 9. If the Government has not appealed this ruling to the District Court within 14 days, this Order and Opinion, as well as the redacted versions of Dkts. 7 and 9 (attached as Exhibits 1 and 2), must be publicly disclosed. If the Government does appeal this ruling, this Order and Opinion, as well as the redacted versions of Dkts. 7 and 9 (attached as Exhibits 1 and 2), will remain under seal until those objections are decided by the District Court.

One final note. Motions to Seal (or Unseal) are, under 28 U.S.C. § 636(b)(1)(A), nondispositive motions ordinarily decided by a magistrate judge. *See Grand v. Schwarz*, No. 15-CV-8779, 2018 WL 1604057, at *1 n.1 (S.D.N.Y. Mar. 28, 2018); *Thomas v. Bzoskie*, No. 16-cv-3805, 2017 WL 6033673, at *2 (D. Minn. Dec. 6, 2017); *Huffman v. Allred*, No. 11-CV-01459, 2011 WL 5864048, at *1 n.1 (D. Colo. Nov. 22, 2011). This means that a district court will reverse a magistrate judge's order on sealing only if it is clearly erroneous or contrary to law. *See* FED. R. CIV. P. 72(a). The clearly erroneous or contrary to law standard of review is a highly deferential standard and requires the district court to affirm the decision of

the magistrate judge unless "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

## CONCLUSION

For the reasons explained above, I conclude that Dkts. 7 and 9 should be redacted and placed on the public docket. I will give the Government the opportunity to appeal my decision before issuing the redacted documents attached to this Order.

SIGNED this 28th day of November 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE