UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE APPLICATION OF | : | **1:22-mc-00756** |
| PENN LIVE, YORK DAILY | : | |
| RECORD, AND YORK DISPATCH | : | |
| TO UNSEAL COURT RECORDS | : | |
| | : | |
| | : | |

**ORDER**
February 7, 2023

## I. Introduction.

This case concerns whether a search warrant (and related documents) involving United States Representative Scott Perry should remain sealed. Several newspapers filed an application to unseal those court records. This order does not address the merits of the newpapers' motion to unseal. Rather, in this order, we address two motions to seal brought by the United States. The United States seeks to seal two briefs that it has filed in opposition to the newspapers' motion to unseal. For the reasons discussed below, we will grant in part and deny in part the United States' motions to seal its briefs. We will, however, stay this order and seal it for a limited time to allow the United States time to appeal to the district court.[1]

---

[1] In a case in the United States District Court for the Southern District of Texas—*In re Associated Press*, 5:22-mc-00111 (S.D. Tex.)—that also involved the United States requesting to file under seal its briefs in opposition to a motion to unseal search warrant materials involving a United States Representative, Magistrate Judge Edison recently issued a decision denying the United States' request to file its briefs entirely under seal. *See id.* at *doc. 13*. We find Judge

## II.  Background and Procedural History.

On September 29, 2022, PennLive, the York Daily Record, and the York Dispatch ("the newspapers") filed an application to unseal ("application to unseal") court records relating to a purported search warrant authorizing the seizure of Representative Perry's cell phone.  The United States has filed two separate motions to file its briefs under seal.

The United States' first motion to seal seeks to file under seal and *ex parte* the United States' opposition to the newspaper's application to unseal ("opposition").  The newspapers filed a brief in opposition to the United States' motion to seal its opposition.[2]  They contend that the court should deny the United States' motion to seal and order the United States to file its opposition on the docket or to, at least, file a redacted version of its opposition.

After the newspapers filed their brief in opposition to the United States' first motion to seal, the United States filed a second motion to seal.  In this second

Edison's reasoning persuasive, and we reach the same conclusion as he has that the United States' briefs should not be filed entirely under seal.

[2] In accordance with the local rules of court, the United States did not set forth in its motion to seal the nature of the document that it is seeking to file under seal. *See* M.D. Pa. L. Crim. R. 49(c)(1) ("The motion to file a document under seal shall contain no description or identification of the document for which the sealing order is sought or statement of reasons why the filing of the document under seal should be authorized.").  But the newspapers correctly surmised that the United States was seeking to file under seal its opposition to the newspapers' application to unseal.

motion to seal, the United States seeks to file under seal and *ex parte* its reply to the newspapers' brief in opposition to its first motion to seal ("reply").[3]  The newspapers then filed a brief in opposition to the second motion to seal.  Not knowing the exact nature of the document that the United States seeks to file under seal, the newspapers refer to it as a supplement, and they assert that the United States' request to file this document completely under seal is overbroad.  They contend that the court should deny the United States' motion to seal and order the United States to file its supplement, or a redacted version of its supplement, on the docket.

By an Order of November 18, 2022, we noted that both the United States' opposition and its reply are judicial records, and because the public has a presumptive right of access to judicial records, albeit not absolute, the court must balance the public's right of access against the interests that the United States contends warrant secrecy in this case.  We ordered the United States to file redacted versions of its opposition and its reply under seal and *ex parte*.  We stated that we will then review those redactions line-by-line to determine as to which, if any, of those redactions the United States has met its burden of showing that the interests in secrecy it puts forth outweigh the public's presumptive right to access.

---

[3]  Again, in accordance with the local rules of court, the United States did not set forth in its motion to seal the nature of the document that it is seeking to file under seal.

The United States complied with our order. *See doc. 20* (filed *ex parte* and under seal).   Asserting that removing "all non-public information" from its opposition and its reply would render those documents unintelligible and misleading, the United States continues to assert that it should be permitted to file both its opposition and its reply entirely under seal. *Id*. at 3.   Nevertheless, in the event the court finds that total sealing is unwarranted, which we do, the United States submitted proposed redactions to its opposition and its reply. *See doc. 20-1* (filed *ex parte* and under seal).   We have reviewed the United States' proposed redactions.  For the reasons set forth below, we conclude that the United States' proposed redactions are overbroad, and additional parts of the opposition and reply should be unsealed.  We conclude, however, that certain parts of the opposition and reply should be sealed.

## III.  Discussion.

For the reasons discussed below, we conclude (1) that both the common law right of access and the First Amendment right of access apply to the United States' opposition and reply; (2) that the entirety of the United States' opposition and reply should not remain under seal; (3) that in addition to the parts of the opposition and reply that the United States concedes (in the alternative, if we find complete sealing unwarranted) should not be sealed, there are other parts of the opposition

and reply that should not be sealed; and (4) that there are parts of the opposition and reply that should remain under seal.

### A. Both the common law and the First Amendment right of access apply to the United States' opposition and reply.

In opposing the United States' motions to seal, the newspapers rely on both the common law right of access to judicial records and the First Amendment right of access to judicial proceedings.  We conclude that both apply to the United States' opposition and reply.

#### 1. The common law right of access.

"It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001).  "The right of access 'promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court.'" *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).  And "[p]ublic observation facilitated by the right of access 'diminishes possibilities for injustice, incompetence, perjury, and fraud.'" *Id.* (quoting *Littlejohn*, 851 F.2d at 678).  "Moreover, 'the very openness of the process should provide the public with a

more complete understanding of the judicial system and a better perception of its fairness.'" *Id.* (quoting *Littlejohn*, 851 F.2d at 678).

The public has a "presumptive right" of access to judicial records. *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 192). That presumption of access is strong: "the common law right of access begins with a thumb on the scale in favor of openness . . . ." *Id.* at 676. Although the presumption of access is strong, it "is 'not absolute.'" *Id.* (quoting *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). It '"may be rebutted.'" *Id.* (quoting *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991)).

"The party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'" *Id.* (quoting *Bank of Am.*, 800 F.2d at 344). More specifically, "[t]he movant must show 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Id.* (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). The party seeking closure must specifically articulate the injury that it is seeking to prevent. *Id.* at 673. '"Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.'" *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 192).

"In addition, to mind the public's right of access, parties seeking to file material under seal should distinguish between portions of a document containing protectible information and portions of a document that do not." *Kivett v. Neolpharma, Inc.*, No. 2:20-00664-JDW, 2021 WL 1209844, at *1 (E.D. Pa. Mar. 31, 2021). "Where possible, they should propose redactions, rather than placing a whole document under seal." *Id.* "A party who seeks to seal an *entire* record faces an even heavier burden" than a party who seeks to seal only part of a record. *Miller*, 16 F.3d at 551 (italics in original).

In order to grant a motion to seal a judicial document, the court "must articulate 'the compelling, countervailing interests to be protected,' make 'specific findings on the record concerning the effects of disclosure,' and 'provide[ ] an opportunity for interested third parties to be heard.'" *In re Avandia Mktg.,* 924 F.3d at 672–73 (quoting *In re Cendant Corp.*, 260 F.3d at 194). "'[C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants.'" *Id.* (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993)). The court must review the content of each document at issue. *Id.*

Both the United States' opposition and its reply are judicial records that are subject to the common law right of access. The United States does not argue otherwise. Rather, it assumes that the common right of access applies to its

7

opposition. *See doc. 17-1* at 4–5.  And although it does not specifically address whether the common law right of access applies to its reply, we see no basis why the opposition and reply would be treated differently.

In any event, "[w]hether the common law right of access applies to a particular document or record turns on whether that item is considered to be a judicial record." *In re Avandia Mktg.*, 924 F.3d at 672 (internal quotation marks omitted) (quoting *In re Cendant Corp.*, 260 F.3d at 192).  And "[a] 'judicial record' is a document that 'has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.'" *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 192).  Here, both the United States' opposition and its reply have been filed with the court and are documents that the court will use to decide the issues in this case.  Thus, they are judicial records subject to the common law right of access. *See also In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292, 296 (D.C. Cir. 2022) ("The government's opposition memorandum [to a motion to unseal search warrant documents] is a classic example of a document intended to influence judicial decision-making and is therefore a judicial record.").

### 2. The First Amendment right of access.

The First Amendment may also be implicated when the government seeks to keep proceedings or documents under seal. The public and the press generally have a First Amendment right of access to both criminal and civil trials and proceedings. *See N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 428–29 (3d Cir. 2016) ("In *Richmond Newspapers, Inc. v. Virginia*, [448 U.S. 555 (1980)], the Supreme Court held that the First Amendment guarantees the public, and thus the press, a right of access to criminal proceedings."); *In re Avandia Mktg.,* 924 F.3d at 673 (observing that "the public and the press have a First Amendment right of access to civil trials"). "That right of access can include documents involved in the proceedings." *N. Jersey Media Grp.,* 836 F.3d at 429. "The First Amendment right of access requires a much higher showing than the common law right to access before a judicial proceeding can be sealed." *In re Cendant Corp.*, 260 F.3d at 198 n. 13.

"Courts determine whether the public has a qualified First Amendment right to documents by considering first whether the 'process ha[s] historically been open to the press and general public,' and second, 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *United States v. Wecht*, 484 F.3d 194, 208 n.19 (3d Cir. 2007) (quoting *Press– Enter. Co. v. Superior Court of Cal., County of Riverside,* 478 U.S. 1, 8 (1986)).

9

This is called the "experience and logic" test. *PG Pub. Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013).  If the experience and logic test is satisfied, "a qualified First Amendment right to public access attaches." *Press–Enter. Co.,* 478 U.S. at 9.

"But even when a right of access attaches, it is not absolute." *Id.*  If the First Amendment applies, "it gives rise to a strong presumption of access[.]" *N. Jersey Media Grp.,* 836 F.3d at 429.  And "any restraint on that right is then evaluated under strict scrutiny." *Aichele*, 705 F.3d at 104.  Sealing is warranted "only if it 'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" *United States v. Smith*, 776 F.2d 1104, 1112 (3d Cir. 1985) (quoting *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984)).  Before sealing a proceeding or records, the court "must make 'particularized findings . . . on the record in each case, (1) establishing the existence of a compelling governmental interest, and (2) demonstrating that absent limited restrictions upon the right of access, that other interest would be substantially impaired.'" *United States v. Thomas*, 905 F.3d 276, 282–83 (3d Cir. 2018) (quoting *United States v. Smith*, 123 F.3d 140, 147 (3d Cir. 1997)).

We assume for the sake of argument that both the United States' opposition and its reply are subject to the First Amendment right of access.  Experience suggests this result. *Cf.* M.D. Pa. L. R. 5.8 ("Unless otherwise prescribed by federal statutes, the Federal Rules of Criminal Procedure, the Federal Rules of

Civil Procedure or other provisions of these Rules, including LR 5.2(e), no document shall be filed under seal unless authorized by an order of court.  The filing of documents under seal shall be in accordance with LCrR 49."); *see also United States v. Index Newspapers LLC*, 766 F.3d 1072, 1096 (9th Cir. 2014) ("Motions to unseal judicial proceedings and orders ruling on those motions have historically been open to the public, at least during recent history.").  Logic also suggests this result. *Index Newspapers LLC*, 766 F.3d at 1096 ("Logic also dictates that the record of these types of proceedings should be open to the public because the very issue at hand is whether the public should be excluded or included in various types of judicial proceedings.  The public should be permitted to observe, monitor, and participate in this type of dialogue, or at least review it after the fact.").

The United States does not develop an argument that the First Amendment does not apply.  Rather, in a footnote, it states that "[f]or the same reasons the First Amendment right of access would not apply to the search warrant materials themselves, *see* Opp. 22–26, it should not apply to the opposition discussing them, either." *Doc. 17-1* at 5 n.1.  But search warrant materials and briefs regarding pending motions are different.  Moreover, raising an argument in passing in a footnote is not sufficient to preserve an argument. *See United States v. Yung*, 37 F.4th 70, 81 (3d Cir. 2022) (concluding that appellant forfeited an argument that

"he "tuck[ed] it into a single footnote, without supporting authority or analysis");

*John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.,* 119 F.3d 1070, 1076 n.6 (3d Cir.

1997) ("arguments raised in passing (such as, in a footnote), but not squarely

argued, are considered waived."); *Schmalz v. Sovereign Bancorp, Inc.*, 868 F.

Supp. 2d 438, 457 n.14 (E.D. Pa. 2012) ("An argument made only in a footnote is

not worthy of credence (other than to be rejected by footnote).").  Further, the

United States also states (in the same footnote) that "even if the Court were to find

that the First Amendment presumption applies here, it is overcome by compelling

governmental interests." *Doc. 17-1* at 5 n.1 (citing *Smith*, 776 F.2d at 1113–15).

And it then argues that the are compelling interests for keeping its opposition under

seal. *Id*. (passim).  Given the United States' failure to develop an argument that the

First Amendment does not apply to its opposition and its reply, coupled with its

argument that it nevertheless meets the First Amendment standard, we will assume

for the sake of argument that the First Amendment applies.

    "A fundamental and longstanding principle of judicial restraint requires that

courts avoid reaching constitutional questions in advance of the necessity of

deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445

(1988).  Based on that principle, courts often "decline[] to tackle the contours of

the First Amendment right of public access when the common law right has been

sufficient to permit access." *In re Avandia Mktg.,* 924 F.3d at 679 (citing cases).

Given this doctrine of constitutional avoidance, we will consider whether the

United States meets the First Amendment standard only as to those portions of its

opposition and its reply that we conclude should not be unsealed under the

common law standard.

### B.  Complete sealing is not warranted.

The United States contends that the entirety of its opposition and its reply

should be sealed.  It so argues because in addition to repeating information about

the underlying warrant materials, which the United States contends should be kept

under seal for various reasons, in its opposition and reply, it reveals that there was

a search warrant and that there is an ongoing investigation, facts which it has not

publicly disclosed.  We conclude that the United States has not met its burden of

overcoming the common law presumption of access such that the entirety of its

opposition and reply should be sealed.

The United States wants to keep secret the fact that this court issued a search

warrant for Representative Perry's phone.  But the fact that this court issued a

search warrant is already public knowledge.  Representative Perry filed a separate

action in the United States District Court for the District of Columbia in which he

publicly acknowledged such. *See Perry v. United States*, 1:22-mc-00079 (D.D.C.

Aug. 18, 2022).  He began that action by filing an "Emergency Motion for Return

of Seized Property pursuant to Fed. R. Crim. P. 41(g) and Request for Injunctive

Relief." *Id.* at *doc. 1* (all caps omitted).  In that motion, Representative Perry sets

forth that the undersigned issued the warrant on August 2, 2022, authorizing the

seizure of his cell phone and records and information associated with his phone

that is in the custody of AT&T. *Id.* at 1–2.  He also set forth that the warrant was

executed on August 9, 2022. *Id.* at 2.[4]  Moreover, the fact of the search has been

reported in the press already. *See, e.g.*, articles cited in *docs. 1, 2*.  Given that the

fact of the warrant and its execution is already public knowledge, we conclude that

---

[4]  In the District of Columbia action, Representative Perry also asserted that
the warrant issued by the undersigned authorized the phone to be transferred to the
District of Columbia or Northern Virginia for forensic analysis. *See doc. 1* at 2 in
*Perry v. United States*, 1:22-mc-00079.  And, he asserted, because the warrant the
undersigned issued authorized only the seizure of his phone and preservation of its
data, a second warrant would be required to search or review the data. *Id.* at 6.
Representative Perry sought an order requiring the United States "to return the data
that [it] obtained from his cell phone for which it has failed to establish by
probable cause a sufficient nexus to any criminal conduct under investigation, and
that [is] protected by the Speech and Debate Clause[,] the Attorney-Client
Privilege, and other applicable privileges and protections." *Id.* at 14.  He also
requested that that court "prohibit the government from obtaining records and
information associated with [his] cellular phone that is within the possession,
custody and control of AT&T," and if the United States has already obtained those
records, he asked that that court order the United States "not to review those
records until the parties can be heard." *Id.* at 14–15.  Given that the parties were
communicating about a process to prevent disclosure of privileged information,
Representative Perry later moved to hold his emergency motion in abeyance, and
the court granted that motion. *See docs. 3, 4* in *Perry v. United States*, 1:22-mc-
00079.  On October 26, 2022, Representative Perry filed a motion to dismiss that
action without prejudice, and the next day, the court dismissed the matter and
closed the case. *See doc. 5* and docket sheet in *Perry v. United States*, 1:22-mc-
00079.

the United States has not shown that disclosure in this context will injure its law enforcement interests such that the common law presumption of access has been overcome.

The United States also suggests that the entirety of its opposition and reply should be sealed because unsealing any part would reveal that there is an ongoing investigation. *See doc. 17-1*; *doc. 20*.  Although the United States acknowledges that Representative Perry disclosed the existence of the warrant and confirmed its execution and that the media reported on the same, it asserts that that is different from it officially confirming an ongoing investigation. *Doc. 17-1* at 9; *Doc. 20* at 4. And it asserts that official confirmation would comprise its investigation. *Doc. 20* at 4.  But the bare fact that the warrant was issued as a part of an ongoing investigation should not be a surprise to anyone; to the contrary, it would be surprising if such a warrant was not issued as a part of an ongoing investigation. And since criminal charges have not been brought against Representative Perry, the fact that there continues to be an investigation is also not surprising.  As discussed below, we conclude that there are compelling reasons to keep the details of the ongoing investigation under seal at this time.  But the United States has not shown that its interests will be harmed sufficiently to overcome the presumption of access merely by any confirmation that there is an ongoing investigation.  Thus,

the fact that the opposition and reply reveal that there is an ongoing investigation does not warrant sealing the entirety of the opposition and reply.

### C.  Additional parts of the opposition and reply should be unsealed.

Although the United States asserts that the entirety of its opposition and reply should remain under seal, in accordance with the court's order to submit propose redactions, it did so.  What is left after those proposed redactions is what the United States acknowledges should not be sealed.  We agree that those parts of the opposition and reply should not be sealed.  But applying the common law standard, we conclude that additional parts of the opposition and reply should not be sealed.

Here, the United States contends that there are compelling interests that overcome the presumption of access.  Generally, the United States cites two interests: (1) "preserving the secrecy and integrity of an ongoing investigation, the specifics of which have never been publicly confirmed" and (2) "protecting the privacy interests of unindicted individuals." *Doc. 9* ¶¶ 3–4; *see also doc. 17* ¶¶ 4, 5. Those are compelling interests that may warrant sealing parts of the United States' opposition and reply.  But having reviewed the United States' arguments, its opposition, and its reply, we conclude that those interests do not overcome the

common law presumption of access with respect to many of the United States'
proposed redactions.

As discussed above, it is public knowledge that the search warrant was
issued and executed.  Nor is it a secret that the warrant was issued in connection
with an ongoing investigation.  Nevertheless, the United States seeks to seal a large
swath of information—including the background of this dispute, the length of its
opposition, the length of its reply, some of its legal arguments, and some of the
cases that it relies on—all in an attempt to avoid confirming that there was a
warrant and an investigation that is ongoing.  Although the United States makes
general assertions that its investigation will be harmed if this information is
disclosed, such general assertions are insufficient.  The United States has not
shown that its investigation will be harmed sufficiently to overcome the
presumption of access merely by confirmation of the warrant or the fact that there
is an ongoing investigation.  Nor has the United States shown that the privacy
interests of unindicted individuals will be implicated merely by confirmation of the
warrant or the fact that there is an ongoing investigation (without details).  Thus,
we reject many of the United States' proposed redactions.

**D.  Parts of the opposition and reply should remain under seal.**

Although the United States' redactions are overbroad, applying the First

Amendment standard, we conclude that there are some parts of the opposition and

reply that should remain under seal.  Those parts are the parts that reveal the

nature, scope, and details of the investigation, including the names of others

involved.  As to those parts, the United States interests in preserving the secrecy

and integrity of its ongoing investigation and in protecting the privacy of

unindicted individuals are compelling interests. *See Smith*, 776 F.2d at 1105, 1114

(identifying privacy and reputational interests of unindicted individuals as

compelling interests and concluding that the risk of serious injury to those

individuals from disclosure of a part of a bill of particulars outweighs the public's

interest in access ); *In re Sealed Search Warrant*, No. 22-8332-BER, 2022 WL

3582450, at *3 (S.D. Fla. Aug. 22, 2022) ("Protecting the integrity and secrecy of

an ongoing criminal investigation is a well-recognized compelling governmental

interest."); *Lindell v. United States*, No. 22-CV-2290 (ECT/ECW), 2022 WL

16647786, at *7 (D. Minn. Nov. 3, 2022) (identifying avoiding undermining an

ongoing criminal investigation and protecting the privacy interests of uncharged

individuals as compelling interests).

And here, disclosure of the nature, scope, and details of the investigation at

this time could significantly impair the United States' ongoing investigation.  Such

disclosure could give those allegedly involved in the events underlying the investigation "a window into the Government's investigation that could compromise the investigation as a whole." *Lindell v. United States*, No. 22-CV-2290 (ECT/ECW), 2022 WL 16647786, at *7 (D. Minn. Nov. 3, 2022). Further, such disclosure would significantly intrude on the privacy interests of individuals (other than Representative Perry)[5] who are named in the warrant.

Further, we have carefully reviewed the opposition and reply line-by-line, and we have allowed only those redactions that would reveal specifics of the investigation or names of individuals (other than Representative Perry). Thus, we conclude that the redactions are narrowly tailored to avoid substantially impairing the United States' compelling interests while permitting as much information as possible to be disclosed to the press and public.

### E. We will stay and seal this order for a limited time.

In light of the above, attached to this order is a version of the United States' opposition and a version of its reply with redactions that we conclude meet the strict scrutiny standard for sealing under the First Amendment. Given the importance of this issue to this case, we will stay this order to account for the fact

---

[5] Given that Representative Perry has acknowledged the search warrant and its execution and there have been media reports about it, Representative Perry's privacy interests are less than the privacy interests of others mentioned in the warrant.

that the United States may appeal this order to the district court under M.D. Pa. L.

R. 72.2 (providing that a party may appeal a magistrate judge's order on a non-

dispositive matter within 14 days after the magistrate judge issues the order).  And

because "[s]ecrecy is a one-way street," *In re Copley Press, Inc.*, 518 F.3d 1022,

1025 (9th Cir. 2008), we will seal this order until either (1) the time for the United

States to appeal this order to the district court has passed and the United States has

not filed an appeal, or (2) if the United States does file an appeal, the district court

has resolved that appeal.

## IV. Order.

Based on the foregoing, **IT IS ORDERED** that the United States' motions

to seal (*docs. 8, 16* ) are **GRANTED IN PART AND DENIED IN PART.**  The

motions are denied to the extent that the United States asks the court to seal the

entirety of its opposition and its reply.  The motions are also denied to the extent

that additional parts of the opposition and reply shall be unsealed.  The motions are

granted to the extent that we will allow certain portions of the opposition and reply

to be redacted.  Those redactions are attached.  **IT IS FURTHER ORDERED** that

this order is **STAYED** until further order of the court.  Finally, **IT IS ORDERED**

that this order shall be filed under seal and shall remain under seal until further

order of the court.  Until further order of the court, this order shall not be available

to the public or to the petitioners.  The Clerk of Court shall serve a copy of this

order on the United States only.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge