UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE APPLICATION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNSEAL COURT RECORDS | ) ) No. 1:22-MC-756 ) ) (Magistrate Judge Schwab) ) ) (Ex Parte and Under Seal) ) ) ) |

## GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO SEAL

The government has moved to file under seal its opposition to the application of a group of media organizations (the Applicants) to unseal search warrant materials obtained in connection with a confidential active investigation ███████████████████████████████ ███████████████ Applicants oppose the motion. Because the opposition recites extensive, sensitive details about the government's ongoing criminal investigation, the same compelling law enforcement and privacy interests that require sealing the search warrant materials also necessitate sealing the response.

Disclosure of the opposition would also inflict a distinct, additional harm. All of the government's arguments are premised on the fact that the investigation associated with the warrant materials remains

1

ongoing—a fact that the Justice Department has never officially confirmed. If revealed, the existence of the investigation would appear to validate press reports regarding previously unconfirmed details about the investigation, which would reveal the direction, nature, and scope of the government's inquiry, and injure the reputational and privacy interests of unindicted subjects by providing apparent official confirmation of their involvement.

These harms could not be cured by redaction. The active, preindictment nature of the investigation is the critical distinction between this case and other cases in which warrant materials have been unsealed or released in redacted form; that fact permeates both the legal and factual arguments throughout the brief. Redactions sufficient to maintain the confidentiality of the ongoing investigation would be so extensive that they would render the resulting brief meaningless, and perhaps even misleading. Moreover, releasing a redacted version of the brief would risk the same serious harms that would result from official confirmation of the ongoing investigation by inviting sophisticated readers—including Applicants—to make assumptions based on the length of the brief and the extent of the redactions.

Finally, unlike the cases upon which Applicants rely, the materials at issue here are not associated with a prosecution brought by the government, or even a closed investigation that the government has acknowledged. They reveal an ongoing, confidential investigation that Applicants are attempting to force the Justice Department to specifically acknowledge for the first time through litigation. The Court should not countenance those efforts.

Maintaining the opposition under seal is necessary to support the compelling governmental interests in preserving the confidentiality of the government's ongoing investigation, and protecting the privacy interests of those individuals suspected to be its subjects. At least while this high-profile investigation remains pending, this Court should permit the government to file its brief under seal.

## PROCEDURAL BACKGROUND

On September 29, 2022, Applicants filed an application seeking to unseal records relating to a search warrant executed on U.S. Representative Scott Perry on August 9, 2022. ECF No. 1.

The government filed an opposition on October 20, 2022. *See* ECF No. 9 (Opp.). The opposition describes in detail the government's ongoing

investigation—which the Justice Department has not specifically

acknowledged— ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

It explains the compelling law-enforcement and privacy interests that

require the continued sealing of the search warrant materials. ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ Because the opposition necessarily confirms

the existence of the government's ongoing investigation, and recites

sensitive details about that investigation, the government moved to file

it ex parte and under seal. *See* ECF No. 8.

On October 24, 2022, Applicants filed an opposition to the

government's motion to seal. ECF No. 11 (App. Opp.).

<strong>ARGUMENT</strong>

**A. Compelling Governmental Interests Require Sealing of the Government's Opposition.**

Assuming arguendo that at least the common law presumption of

access applies to the opposition,[1] "the factors militating against access"

far outweigh that presumption. *See* Opp. 11 (quoting *In re Cendant*

*Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

As an initial matter, for the same reasons the warrant materials

must remain under seal, *see* Opp. 15–22,[2] compelling governmental

interests require the sealing of the government's brief in opposition. The

opposition recites extensive, nonpublic details about the government's

ongoing investigation, including the specific crimes under investigation,

the identities of subjects, details regarding events and communications

of interest, and other information obtained via grand jury subpoenas.

---

[1] For the same reasons the First Amendment right of access would not apply to the search warrant materials themselves, *see* Opp. 22–26, it should not apply to the opposition discussing them, either. But even if the Court were to find that the First Amendment presumption applies here, it is overcome by compelling governmental interests. *See, e.g.,* *United States v. Smith*, 776 F.2d 1104, 1113–15 (3d Cir. 1985) (*Smith I*).

[2] In addition to the cases cited in the opposition, two magistrate judges within the Third Circuit have denied applications to unseal search warrant materials associated with ongoing investigations, finding no First Amendment right of access, that compelling governmental interests outweighed the common law presumption of access, and that releasing redacted versions of the warrant materials was not a viable alternative. *See United States v. Sealed Search Warrants*, 1999 WL 1455215, at *3–8 (D.N.J. Sept. 2, 1999); *In re Search of 1993 Jeep Grand Cherokee*, 1996 WL 768293, at *2–18 (D. Del. Oct. 11, 1996).

Disclosure of this information would "work a clearly defined and serious injury" in two principal ways. Opp. 11, 13–18 (quoting *In re Cendant Corp.*, 260 F.3d at 194). First, it would threaten law enforcement interests by revealing the nature, scope, and direction of an ongoing investigation, and providing advance notice to individuals under suspicion. *See* Opp. 15–16. Second, it would threaten the privacy and reputational interests of unindicted individuals by unjustly implicating them in crimes without providing them a judicial forum in which to clear their names. *See* Opp. 16–18.

Release of the government's opposition would also cause separate, distinct harms: it would confirm, for the first time, the specifics of the government's investigation, and renew public interest in Rep. Perry's involvement. As explained, consistent with Justice Department policy, the government has not publicly acknowledged this sensitive investigation, █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████    *See* Opp. 7–8.   Public confirmation would appear to validate media speculation regarding all

aspects of the investigation, which could be misleading, cause damage to the government's investigative efforts, and unfairly harm the privacy and reputational interests of unindicted subjects. Moreover, it has been months since Rep. Perry originally publicized the fact of the search warrant. Disclosing this information now would undoubtedly draw additional media attention, doing additional damage to his reputation, and to those of other subjects discussed in the opposition.

Redaction is not a viable alternative. Not only is the background section replete with sensitive details about the investigation, *see* Opp. 2–10, but all of the government's arguments are also premised on the fact that the investigation is ongoing. As a result, virtually every paragraph of the government's explanation as to why compelling governmental interests outweigh the common law right of access references the ongoing investigation. *Id.* at 13–22. The active status of the investigation also permeates the government's First-Amendment arguments. Indeed, the principal thrust of the argument is that "three Circuits have held that there is no First Amendment right to access documents filed in search warrant proceedings *in an active criminal investigation.*" *Id.* at 22 (emphasis added). The cases discussed all focus

on the First Amendment's application to warrant materials in an ongoing investigation. *See id.* A reader would naturally infer from this legal argument that the investigation at issue here not only exists, but also remains ongoing. For these reasons, Applicants are incorrect that revealing "the *kinds* of interests" at stake or "the Government's position on pure questions of law" would not harm the compelling governmental interests at stake. *See* App. Opp. 7.

Release of a brief redacted to remove all references to the ongoing investigation would neither provide valuable information to the public, nor avoid the harms associated with disclosure. On the one hand, such heavy redactions would leave nothing meaningful left to disclose—they could, instead, have the perverse effect of making the brief misleading. *See United States v. Amodeo*, 71 F.3d 1044, 1052–53 (2d Cir. 1995) (district court abused its discretion by ordering release of document "rendered unintelligible as a result of redactions" and "thus more likely to mislead than to inform the public"). On the other hand, the length of the brief and the extent of the redactions would alone suggest the existence of an ongoing investigation; otherwise, there would have been no need for the government to fill 27 pages in response to the application.

Finally, neither Rep. Perry's disclosures, public reporting, ███

███████████████████████████████ undermine the government's

interest in refusing to officially confirm an ongoing, preindictment

investigation. *See* Opp. 18–19. By way of analogy, in the context of the

Freedom of Information Act, courts have acknowledged that "even if a

fact . . . is the subject of widespread media and public speculation, its

official acknowledgement by an authoritative source might well be new

information that could cause damage." *Ashfar v. Dep't of State*, 702 F.2d

1125, 1130 (D.C. Cir. 1983); *see also United States v. Zubaydah*, 142 S.

Ct. 959, 970 (2022) (opinion of Roberts, Breyer, and Kagan, JJ.) ("official

confirmation of sensitive information may pose risks that unofficial

disclosure does not"). Although Rep. Perry's statements may somewhat

diminish his own privacy interests in revealing the fact of the

investigation, *see CREW v. Dep't of Justice*, 746 F.3d 1082, 1091–92 (D.C.

Cir. 2014), he cannot unilaterally waive the government's law

enforcement interests or the privacy interests of other subjects. And

Rep. Perry, despite his general remarks, retains a privacy interest in

nondisclosure of the details of the investigation. *See id.*

## B. Courts Have Recognized that Filing Under Seal Is Appropriate in These Types of Circumstances.

Precedent and common sense support permitting the government to file under seal a submission that, in order to fully explicate the government's position, reveals the very information the government wishes to remain confidential. *Accord In re Copley Press, Inc.*, 518 F.3d 1022, 1027–28 (9th Cir. 2008) (nonpublic hearings on motion to seal properly closed where they "inevitably contain not only the facts the parties hope to keep secret, but their reasons for doing so, which are likely to be just as private as the facts"). Applicants point to no case requiring them to access the government's brief in this context.

Courts have recognized that, in similar circumstances, it may be necessary to file under seal court submissions discussing sealed materials. In a case directly on point involving warrant materials associated with an ongoing investigation, the Fifth Circuit acknowledged that filing under seal would be acceptable where a court—or by logical extension, the government—"would have difficulty explaining its reasoning without disclosing sensitive information." *See United States v. Sealed Search Warrants*, 868 F.3d 385, 397 n.5 (5th Cir. 2017). Other courts have also authorized the government to file under seal

10

submissions that reveal information contained in sealed search warrant materials in connection with an ongoing investigation. *See, e.g., In re EyeCare Physicians of Am.*, 100 F.3d 514, 515–16 (7th Cir. 1996) (government filed sealed affidavit in opposition to motion to unseal warrant materials in ongoing investigation); *United States v. Durand*, 2014 WL 2917034, at *1–2 (E.D.N.Y. June 26, 2014) (permitting government to file under seal letter related to sealed search warrants). Similarly, the Ninth Circuit has recognized, in the context of a plea agreement, that "good reasons" existed "to keep secret the documents filed in connection with motions to seal," including "the memoranda supporting that motion." *In re Copley Press*, 518 F.3d at 1029 & n.6.

Although the Third Circuit has not confronted this exact situation, it has recognized that filing under seal—including without redaction—is appropriate where compelling governmental interests require it. For example, in *Smith I*, the Third Circuit approved of maintaining under seal a list of unindicted coconspirators in a bill of particulars where release of the information would "unnecessarily jeopardize the privacy and reputational interests of the named individuals." 776 F.2d at 1114. And in *United States v. Thomas*, 905 F.3d 276 (3d Cir. 2018), the Third

11

Circuit affirmed sealing the entirety of a plea document based on compelling governmental interests including "the Government's law enforcement activities" that "hinged on their non-public nature." *Id.* at 283; *see also United States v. Raffoul*, 826 F.2d 218, 223 (3d Cir. 1987) (recognizing that even the First Amendment right of access "is limited by . . . the needs of the government . . . to preserve the confidentiality of sensitive information"). The *Thomas* court further found that "redacting only a portion of the document . . . would not sufficiently protect [the government's] interests in the confidentiality of sensitive information." 905 F.3d at 223.

The Third Circuit cases Applicants cite to argue that they have a right to be heard in this context are inapposite. *See* App. Opp. 1, 4–5. Both of those cases—*Raffoul* and *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89 (3d Cir. 1990)— concern the requirement for a hearing "where a closure motion is made *during a criminal trial in progress.*" *See Raffoul*, 826 F.2d at 226 (emphasis added); *see also In re Capital Cities*, 913 F.2d at 95 (finding error in denying hearing on motion to access "transcripts of sidebar and chambers conferences" during criminal trial). The requirement derives

12

from the important role public scrutiny plays in a criminal trial. *See Raffoul*, 826 F.3d at 224. The Third Circuit has not mandated these same procedures outside of this context. *See In re Search of 1993 Jeep Grand Cherokee*, 1996 WL 768293, at *18–20 (D. Del. Oct. 11, 1996) (finding press did not require opportunity to be heard "before sealing of search warrant materials" and distinguishing "post-indictment" cases ).

Applicants also rely heavily on a recent D.C. Circuit decision, *In re Los Angeles Times Communications LLC*, 28 F.4th 292 (D.C. Cir. 2022), in which the court remanded for the district court to reconsider its denial of a motion to unseal search warrant materials and the government's opposition. *Id.* at 298–99. That case involved completely different circumstances from those present here.[3] In *In re Los Angeles Times*, the investigation had been closed without charges, and the media had reported as much. *See* 28 F.4th at 296. Moreover, after the district court denied the unsealing motions but before the circuit court issued its

---

[3] Applicants' other out-of-Circuit authority is even more readily distinguishable. *See* App. Opp. 9–10 (citing *e.g., United States v. Cronic*, 466 U.S. 648, 656 (1984) (concerning ineffective assistance of counsel); *United States v. Abuhamra*, 389 F.3d 309, 321–32 (2d Cir. 2004) (concerning ex parte government submission used in denial of bail application); *Abourezk v. Regan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986) (civil matter concerning denial of visa applications)).

decision, the Securities and Exchange Commission filed an enforcement action that disclosed the existence of the Justice Department's investigation as well as some of the underlying facts. *Id.* Even there, the D.C. Circuit did not find that allowing the government to file its brief under seal was per se incorrect; it merely remanded for a reconsideration of certain factors in the balancing test. *Id.* at 298–99. Because this case involves an ongoing criminal investigation, and disclosure here would reveal the existence of the investigation and its current status—which the government has not publicly acknowledged—the balancing test here weighs even more heavily in favor of sealing than it did in the original *In re Los Angeles Times* opinion. *See In re L.A. Times Commc'ns LLC*, 2021 WL 2143551, at *3–5 (D.D.C. May 26, 2021) ("no disclosure of search warrant materials would be appropriate in a closed, non-public investigation that has not resulted in criminal charges, and where individual privacy and governmental interests may be implicated").

At bottom, Applicants are not seeking access to a proceeding the government itself has made public, by bringing criminal charges or otherwise. They are attempting to uncover preindictment, investigatory information that the government has not previously disclosed, and which

this Court originally, and properly, ordered to be sealed. Rather than attempting to "litigate this matter in secret," *contra* App. Opp. 1, the government requests that the Court follow the ordinary course: maintain the confidentiality of an investigation during its pendency, before any indictments are issued. Because public release of the government's opposition would alter the status quo and cause the very harm the government seeks to avoid, the Court should seal the opposition, along with this reply brief, and decline to order either redacted.

## CONCLUSION

The government's motion to seal should be granted.[4]

Dated: November 7, 2022

                                    Respectfully submitted,

                                    BRIAN M. BOYNTON
                                    Principal Deputy Assistant Attorney General
                                    Civil Division

---

[4] Should it be of use to the Court, counsel for the government stands ready to appear at an ex parte hearing to discuss these matters. Although ex parte communications between judges and litigants are generally "strongly disfavored," the Third Circuit has recognized that they are "tolerated" in situations involving some "overriding necessity," such as "the need to . . . keep sensitive information from the opposing party." *In re School Asbestos Litig.*, 977 F.2d 764, 789 (3d Cir. 1992) (quoting *United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir. 1987)).

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division
Federal Programs Branch

*/s/ Leslie Cooper Vigen*
Leslie Cooper Vigen
Trial Attorney (DC Bar No. 1019782)
Civil Division
Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Email: Leslie.Vigen@usdoj.gov
Tel: (202) 305-0727

*Counsel for the United States*

## CERTIFICATE OF WORD-COUNT COMPLIANCE

I hereby certify that the foregoing brief complies with the word-count limit described in Local Rule 7.8(b)(2).   The brief contains 2,921 words, as measured by Microsoft Word's word-count feature, not counting the case caption, title, signature block, or certificates.

Dated: November 7, 2022

/s/ Leslie Cooper Vigen
Leslie Cooper Vigen

## CERTIFICATE OF NON-SERVICE

I hereby certify that I have not served the foregoing brief on counsel for Applicants due to the confidential nature of the document and the information discussed therein. The government is simultaneously moving to file this document ex parte and under seal.

Dated: November 7, 2022

/s/ Leslie Cooper Vigen
Leslie Cooper Vigen