# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE APPLICATION OF
PENNLIVE, YORK DAILY
RECORD, AND YORK DISPATCH
TO UNSEAL COURT RECORDS

Misc. Action No. 1:22-mc-00756
Hon. Susan E. Schwab

## REPLY OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH IN SUPPORT OF MOTION TO UNSEAL COURT RECORDS

Katie Townsend*
[CA 254321]
ktownsend@rcfp.org
Paula Knudsen Burke
pknudsen@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Admitted pro hac vice

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ...........................................................................................1

ARGUMENT .......................................................................................................................3

    I.    The common law requires public access to the Warrant Materials, subject—at most—to any redactions justified by a compelling need. ...........3

        A.    The Government's generic reliance on the existence of an ongoing investigation fails. .................................................................4

        B.    The Government ignores the key facts specific to this case that affirmatively favor transparency and undercut any need for secrecy. .........................................................................................7

        C.    Any reliance on grand jury secrecy would be misplaced. ..................10

    II.    The First Amendment requires public access to the Warrant Materials, subject—at most—to any redactions narrowly tailored to a compelling interest. ...................................................................................11

CONCLUSION ...................................................................................................................15

## SUMMARY OF ARGUMENT

"[T]he process by which the government investigates and prosecutes its citizens is an important matter of public concern," and transparency is all the more urgent "in a highly publicized investigation of a well-known defendant accused of abusing his public office." *United States v. Wecht*, 484 F.3d 194, 210 (3d Cir. 2007). Even in an ordinary case, the common law and First Amendment entitle the public to see for itself "that judges are not merely serving as a rubber stamp for the police" when approving warrants. *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008). This exceptional case further implicates the public's right to evaluate the conduct of public officials and understand the unique separation-of-power concerns at stake when the Government investigates a sitting Member of Congress—"powerful public interest[s]" that "cannot be understated." *In re Search of the Forensic Copy of the Cell Phone of Representative Scott Perry*, No. 1:22-sc-02144, slip op. at 3 (D.D.C. Feb. 24, 2023), https://perma.cc/4AY7-F6SH.

The Government's principal justification for blanket sealing of the judicial records at issue (the "Warrant Materials")—that it had not acknowledged the seizure of Congressman Scott Perry's phone and the existence of the related investigation—was unserious when the Government first advanced it and has since been rejected by this Court. Its remaining arguments recite generic characterizations of the interests at stake in any ongoing investigation and rest on

1

the mistaken assumption that disclosure of pre-indictment warrant materials is "extraordinary." Gov't Opp. at 1 (ECF No. 29-1). But the Government fails to "provide[] any binding authority for the proposition that the common law right of access should yield to an interest in unencumbered investigations," *United States v. Gonzalez*, 927 F. Supp. 768, 778 (D. Del. 1996), and the disclosure of warrant materials "after a search has been executed" is, in fact, "routine," *In re N.Y. Times Co.*, 585 F. Supp. 2d at 88 n.8; *accord Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). The Government's "[b]road allegations of harm" cannot be squared with that reality; with the facts of this particular case; or with the Third Circuit's insistence that courts weigh the unsealing of judicial records "document-by-document"—not in lump sums. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166–67 (3d Cir. 1993) (citation omitted).

Because the common law and First Amendment guarantee presumptive access to the Materials, and because the Government's interests cannot plausibly prevail with respect to the entirety of those records, they should be unsealed, subject only—if necessary—to any tailored redactions this Court finds justified by

2

compelling interests after a "document-by-document review." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 677 (3d Cir. 2019).[1]

## ARGUMENT

I. **The common law requires public access to the Warrant Materials, subject—at most—to any redactions justified by a compelling need.**

The Government concedes that "[m]ost circuit courts to have considered the issue have found that the common law presumption of access applies to preindictment search warrants," Gov't Opp. at 14, and that there is no meaningful difference between the governing tests in those circuits and in this one, *see id.* It nevertheless insists that "compelling interests" will justify the sealing of warrant materials "*whenever* there is an ongoing investigation"—an attempt to impose a categorical rule that is wholly incompatible with Third Circuit law. Gov't Opp. at 26 (emphasis added). "[C]onclusory allegations which would require the sealing of search warrants in nearly every criminal investigation" do not suffice to rebut the common law presumption. *In re Up North Plastics, Inc.*, 940 F. Supp. 229, 234 (D. Minn. 1996). That much is true even in a mine-run case but especially

---

[1] The Government mentions the docket only in passing and only to assert that disclosure would "confirm[] the existence of the investigation." Gov't Opp. at 13–14. That point is moot, and the Government has forfeited any alternative justifications for sealing the docket by failing to advance any. Any such alternative justification would be meritless in any event. *See In re Forbes Media LLC*, No. 21-mc-52, 2022 WL 17369017, at *6 (W.D. Pa. Dec. 2, 2022) (unsealing docket for certain surveillance orders in ongoing investigation under common law).

obvious in this exceptional matter, where the public interest in transparency is at its apex and any secrecy interests have been undercut by information that is public.

    A.    The Government's generic reliance on the existence of an ongoing investigation cannot justify blanket sealing.

The Government relies pervasively on "[b]road allegations of harm," *Leucadia*, 998 F.2d at 166 (citation omitted), that could just as well be asserted in every case involving an ongoing investigation. Every warrant affidavit describes the "nature, scope and direction" of the investigation. Gov't Opp. at 21 (quoting *In re Gunn*, 855 F.2d at 574). Every warrant states the "target offenses," Gov't Opp. at 4—information the Government cannot seriously insist should remain secret to avoid obstruction because a copy of the warrant must be provided to the individual searched, *see* Fed. R. Crim. P. 41(f).[2] And it is typical—not extraordinary—for an affidavit to describe witnesses. *See* Gov't Opp. at 15–16. If those features were enough to justify blanket sealing of warrant materials, wholesale secrecy would be justified in every single case—making nonsense of the weight of appellate authority recognizing "that the common law presumption of access applies to preindictment search warrants." Gov't Opp. at 14; *contra, e.g.*, *United States v.*

---

[2] The Government explained as much in moving to unseal the Mar-a-Lago warrant. *See* Deepa Shivaram, *FBI Collected Multiple Sets of Classified Documents from Trump's Mar-a-Lago Home*, NPR (Aug. 12, 2022), https://perma.cc/M2LZ-UZT6 (noting that the Attorney General "said Trump's attorney was given a copy of the search warrant and the property receipt so the former president could also have released the documents on his own accord").

4

*Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) (requiring "[a] case-by-case approach to pre-indictment warrant materials"); *see also In re Search of Premises Known as: L.S. Starrett Co.*, No. 1:02-m-137, 2002 WL 31314622, at *5 (M.D.N.C. Oct. 15, 2002) (rejecting an account of individual privacy that, if accepted, "would likely lead to the routine sealing of all search warrants").

No surprise, then, that courts have required a more rigorous (and case-specific) showing from the Government to justify sealing: not just "a conclusory allegation of an ongoing investigation," but "a specific factual showing of how its investigation will be compromised." *In re Up North Plastics, Inc.*, 940 F. Supp. at 233; *see also In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 592 (D. Md. 2004) (interest in protecting witnesses not compelling absent evidence of risk of "adverse action" on "the facts of this case"); *In re Search Warrant for Second Floor Bedroom*, 489 F. Supp. 207, 212 (D.R.I. 1980) (requiring "specific reasons for fearing . . . tailored testimony *in this case*" (emphasis added)). And even if the Government had made a showing that specific here—it hasn't—at most its concerns would justify tailored redactions that preserve the public's ability to understand the basis for the "important judicial decision[]" to grant the warrant. *Sealed Search Warrants*, 868 F.3d at 395 (citation omitted); *see United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011) (collecting cases in which "redacting sensitive information rather than

5

refusing to unseal the materials entirely" was found adequate, including "to protect the government's ongoing investigation" or "to protect confidential informants").

Indeed, despite the Government's insistence that it cannot think of a case in which warrant materials were unsealed over its objection during an ongoing investigation, *see* Gov't Opp. at 1, disclosure is very far from unprecedented. The Mar-a-Lago case is the most salient example. There the Government insisted on "keeping the entire Affidavit under seal" until its argument was "reject[ed]" by the court—and the additional disclosures ordered prompted public deliberation on matters of obvious public concern that continues to this day. *In re Sealed Search Warrant*, No. 22-mj-8332, 2022 WL 3582450, at *6 (S.D. Fla. Aug. 22, 2022). But other examples—both mundane and high-profile—are readily available.[3] And just as probative are the many cases in which the Government has declined to object to unsealing during an ongoing investigation because it would have no meritorious basis for doing so. *See, e.g.*, *In re Search of 1993 Jeep Grand Cherokee*, 958 F. Supp. 205, 207 (D. Del. 1996) (noting Government's motion to unseal warrant materials during an ongoing investigation where the target "had already learned the identity of witnesses and the nature and scope of the

---

[3] *See In re Second Floor Bedroom*, 489 F. Supp. at 212; *In re Four Search Warrants*, 945 F. Supp. 1563, 1567–69 (N.D. Ga. 1996); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 585–86 (S.D.N.Y. 2009); *United States v. Cohen*, 366 F. Supp. 3d 612, 623 (S.D.N.Y. 2019).

investigation"). The point in either event is that access is the presumptive rule—even in ongoing investigations—not the grudging exception. The burden is on the Government to offer a justification for secrecy specific to the facts of this case, and it cannot do so with generalities that would "swallow the common law right of access to search warrant papers." *In re Search of Premises Known as: L.S. Starrett Co.*, 2002 WL 31314622, at *5. The Government failed to meet that burden here.

  B. The Government ignores the key facts specific to this case that <u>affirmatively favor transparency and undercut any need for secrecy.</u>

The Government fails to confront the considerations that affirmatively favor transparency in this case. For one, it gives little weight to the fact that "the particular documents at issue here are of significant interest to the public" because they concern "a highly publicized investigation of a well-known defendant accused of abusing his public office." *Wecht*, 484 F.3d at 210; *see also In re Search of the Forensic Copy of the Cell Phone of Representative Scott Perry*, slip op. at 3, https://perma.cc/4AY7-F6SH (noting the "powerful public interest" in related records).[4] The Government's effort to distinguish the Mar-a-Lago matter only

---

[4] As the Government notes, in *United States v. Smith*, the Third Circuit approved the redaction of "the names of some individuals who are public officials" from a bill of particulars notwithstanding the public's "substantial interest in the integrity or lack of integrity of those who serve them in public office." 776 F.2d 1104, 1114 (3d Cir. 1985) (*Smith I*). But the privacy and due process interests that drove that conclusion are not entitled to the same weight where an individual's "possible connection with the matter" in question has "already been made public,"

underscores the point. The Government can say only that that search was "unique," Gov't Opp. at 21, intimating that disclosure reflected "an unprecedented exception in our law for former presidents," *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022). The distinction is unprincipled; the public is just as entitled to confidence in its current representatives in Congress as in its former presidents, and a rule that gives the Government sole discretion to decide whether warrant materials from high-profile investigations will be made public poses a clear threat to public confidence that justice is carried out "fairly to all concerned." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (plurality opinion).

The Government's insistence on blanket sealing likewise cannot be reconciled with the information that was "already publicly available" when the Application was filed—to say nothing of the information that has become public since. *United States v. Criden*, 648 F.2d 814, 822 (3d Cir. 1981). The public already knows that the offenses under investigation "stem[] from efforts to overturn the 2020 presidential election," and that the Government's probable-cause showing turned on "evidence of Rep. Perry using his personal cell phone to communicate with individuals allegedly engaged in those efforts over critical time periods." *In re Search of the Forensic Copy of the Cell Phone of Representative*

---

and especially where the individual is "a public person and subject to public scrutiny." *United States v. Smith*, 787 F.2d 111, 116 (3d Cir. 1986) (*Smith II*).

8

*Scott Perry*, No. 1:22-sc-02144, slip op. at 2 (D.D.C. Dec. 28, 2022), https://perma.cc/3AMQ-TKGG. Other court records make clear that the Government has sought Congressman Perry's communications with Jeffrey Clark and John Eastman in particular, among others. *See In re Search of Information Associated with Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, slip op. at 1–2 (D.D.C. June 27, 2022), https://perma.cc/F9YP-L7RB. And Clark has already publicized the offenses the Government is investigating, which he knew from being provided a copy of the warrant to seize his own property. *See* Tierney Sneed & Katelyn Polantz, *Jeffrey Clark Told DC Bar that DOJ Search of His Home Linked to False Statements, Conspiracy, Obstruction Investigation*, CNN (Sept. 14, 2022), https://perma.cc/HE96-N343. The "extensive media reporting" detailed in Applicants' prior filings further erodes any justification for continued secrecy. *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022); *see* Motion to Unseal Court Records at 3–6 (ECF No. 1).

Finally, it bears underlining that to justify redaction—let alone wholesale sealing—it is not enough for the Government to show "that the search warrant affidavits include more detail than what has already been reported by the media" or reflected in other federal court filings. *Cohen*, 366 F. Supp. 3d at 626. Of course they do, which is why there is a public interest in knowing what they say. Instead, the Government can only rebut the presumption in favor of access by

demonstrating that cognizable interests would be "harmed" by disclosure of those new details out of proportion to the values served by transparency. *Id.* Given that any interest in continued secrecy has been "substantially diminished"—if not eliminated—by the information that is already public, the Government cannot hope to justify the extensive secrecy it seeks. *In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 95 (3d Cir. 1990) (citation omitted).

C.  Any reliance on grand jury secrecy would be misplaced.

In prior cases with similar facts, the Government has cited grand jury secrecy as a rationale for the nondisclosure of warrant materials. *See In re L.A. Times Commc'ns LLC*, No. 21-16, 2022 WL 3714289, at *4 (D.D.C. Aug. 29, 2022) (noting the Government's unsuccessful reliance on Rule 6(e) in attempting to conceal warrant materials from an investigation of Sen. Richard Burr). To the extent it does so here, such reliance would be misplaced. Rule 6(e) would justify, at most, only narrow redactions to the Warrant Materials—and likely not even that.

The Government's "[m]ere 'use' of grand jury information in the preparation of" a public legal filing does not, without more, "constitute prohibited disclosure," *United States v. John Doe, Inc. I*, 481 U.S. 102, 110 n.6 (1987), especially where any overlapping information appears without "refer[ence] to the existence of a grand jury," *id.* at 110 (citation omitted); *see also Smith II*, 787 F.2d at 115. Applying that principle to warrant materials in particular, courts have held

10

that unsealing does not "disclose a matter occurring before the grand jury" within the meaning of Rule 6(e) if information derived from—or presented in parallel to—the grand jury is not specifically identified as such. *See In re L.A. Times Commc'ns LLC,* 2022 WL 3714289, at *4 (material "'coincidentally before the grand jury' that does not 'elucidate' the grand jury's 'inner workings'" not protected when it appears in warrant affidavit (quoting *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987))); *In re Search of 14416 Coral Gables Way*, 946 F. Supp. 2d 414, 428 (D. Md. 2011) (same where affidavit incorporates information obtained by grand jury subpoena but "does not identify the information received from grand jury subpoena rather than other sources"); *In re N.Y. Times Co.*, No. 22-mc-100, 2023 WL 2185826, at *4 n.6 (D.D.C. Feb. 23, 2023) ("Search warrants . . . are not subject to Rule 6(e), even when the warrant is issued to obtain evidence as part of an ongoing grand jury investigation . . . .").

The same is true here. Unless the Government made very unusual choices in drafting the Warrant Materials, Rule 6(e) is inapplicable; even if it did apply to some portion of the Materials, it could not justify blanket sealing of every line.

**II. The First Amendment requires public access to the Warrant Materials, subject—at most—to any redactions narrowly tailored to a compelling interest.**

While this Court need not reach the issue, the First Amendment also guarantees presumptive public access to the Warrant Materials, and it imposes an even more daunting burden on the Government in justifying any degree of sealing.

The Government reaches a different result only by asking the wrong question, conflating the threshold question of whether the presumption attaches to warrant materials generally with the question of whether the presumption is overcome "upon a showing that a *given* criminal investigation requires secrecy." Gov't Opp. at 25 (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir. 1989) (emphasis added)).  But the Government's position is a truism: Even criminal trials, the heartland of the right of access, can be closed upon a sufficient showing in a particular case.  And the Supreme Court has squarely rejected just that kind of effort to blur the two stages of the inquiry.  *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 n.13 (1982); *see also In re Forbes Media LLC*, 2022 WL 17369017, at *5 (rejecting Government's effort to "conflate[]" the two stages of the common law inquiry with respect to certain surveillance orders in an ongoing investigation).  Because both experience and logic favor access to warrant materials, the First Amendment presumption attaches.

"[R]outine historical practice countenances in favor of a qualified First Amendment right of access to warrant materials" because "warrant applications and receipts are routinely filed with the clerk of court without seal." *In re N.Y.*

*Times Co.*, 585 F. Supp. 2d at 88. The fact that warrant materials are presumptively accessible under the common law only bolsters that conclusion, since the common law right "played a crucial role in the development of First Amendment jurisprudence" on access. *United States v. Antar*, 38 F.3d 1348, 1361 (3d Cir. 1994).[5] The Government's preferred authorities for the opposite proposition are unpersuasive because they misstate the experience of access.

"[T]he sealing of search warrant materials has traditionally been considered 'an extraordinary action' which was necessarily supported by a showing of 'real harm.'" *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 589 (quoting 3A Charles A. Wright et al., Federal Practice and Procedure § 672 (3d ed. 2004)); *see also In re Second Floor Bedroom*, 489 F. Supp. at 212 (describing the sealing of a search warrant affidavit post-execution as an "unusual step"). Only recently have courts become laxer in holding the Government to the appropriate standard, such that "sealing search warrant affidavits and materials has become a routine matter" in some jurisdictions. *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 589. As one former magistrate judge found in a study of

---

[5] The Government's observation that the Third Circuit has not addressed the question is beside the point, because the experience inquiry "does not look to the particular practice of any one jurisdiction." *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993) (per curiam). The weight of circuit authority across the country, as the Government acknowledges, *see* Gov't Opp. at 14, recognizes that the common law requires presumptive access to warrant materials.

13

his district, fewer than one in five warrants issued were sealed in 1995—but that percentage more than tripled over the ten years that followed. *See* Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Cts. L. Rev. 177, 209–10 (2009). But there is no adverse possession in constitutional law; the Government cannot curtail the public's rights by violating them with sufficient consistency. Experience supports presumptive public access to warrant materials.

Logic points in the same direction. "[T]he process by which the government investigates and prosecutes its citizens is an important matter of public concern," *Wecht*, 484 F.3d at 210, and the Government's position would ensure that a consequential phase of that process is categorically cut off from public view. But "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Sealed Search Warrants*, 868 F.3d at 395 (citation omitted) (alteration in original). This case starkly underlines the point. The Government's investigation of Congressman Perry has been the subject of intense public discussion for months, but the Government's continued insistence on secrecy has denied the public any chance to understand for itself why a court approved the dramatic step of seizing a sitting Member of Congress's property.

14

Where the First Amendment presumption of access attaches, it provides even greater protection than the common law.  *See In re Cendant Corp.*, 260 F.3d 183, 198 n.13 (3d Cir. 2001).  Because the Government has failed to justify the secrecy it seeks under the common law, the First Amendment also requires access.

## CONCLUSION

For the foregoing reasons, Applicants respectfully ask the Court to order the Warrant Materials and docket sheets unsealed, subject only—if necessary—to any tailored redactions this Court finds justified by compelling interests after "conducting a document-by-document review."  *In re Avandia*, 924 F.3d at 677.

Dated: May 15, 2023                                   Respectfully submitted,

                                               *s/ Katie Townsend*
                                                Katie Townsend*
                                                [CA 254321]
                                                ktownsend@rcfp.org
                                                Paula Knudsen Burke
                                                pknudsen@rcfp.org
                                                Grayson Clary*
                                                gclary@rcfp.org
                                                REPORTERS COMMITTEE FOR
                                                  FREEDOM OF THE PRESS
                                                1156 15th St. NW, Suite 1020
                                                Washington, DC 20005
                                                Phone: 202.795.9300
                                                Facsimile: 202.795.9310

                                               *\* Admitted pro hac vice*

                                               *Counsel for Applicants PennLive, York*
                                               *Daily Record, and York Dispatch*

## CERTIFICATE OF SERVICE

I, Katie Townsend, hereby certify that on the 15th day of May, 2023, a copy of the foregoing was filed electronically using this Court's CM/ECF system.

Dated: May 15, 2023                     Respectfully submitted,

*s/ Katie Townsend*
Katie Townsend
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*