UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE APPLICATION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNSEAL COURT RECORDS | Misc. Action No. 1:22-mc-00756<br>Hon. Susan E. Schwab |

**SUPPLEMENTAL BRIEF**

Pursuant to the Court's order (ECF No. 52), Applicants respectfully submit this brief to address the questions raised by the Court at the October 12 hearing.

**I.   *In re Associated Press* is distinguishable.**

As this Court noted at the October 12 hearing, Magistrate Judge Andrew Edison of the Southern District of Texas recently denied a motion to unseal warrant materials related to the search of Congressman Henry Cuellar's home and office.  *See In re Associated Press*, No. 5:22-mc-00111, 2023 WL 5671289, at *1 (S.D. Tex. Sept. 1, 2023), *aff'd without opinion*, No. 4:23-mc-1636 (S.D. Tex. Oct. 13, 2023).  But even assuming the correctness of that decision, the balance of interests is starkly different here and weighs heavily against wholesale sealing.

For one, the January 6 investigation is considerably more advanced, undercutting any suggestion that its nature and scope remain opaque to those under investigation.  *See In re Search of 1993 Jeep Grand Cherokee*, 958 F. Supp. 205, 207 (D. Del. 1996) (ongoing investigation no longer at risk where target "had

already learned . . . the nature and scope of the investigation"). In the same vein, far more information has become public. Insight into the basis for the Cuellar search was limited to a handful of news reports, *see In re Associated Press*, 2023 WL 5671289, at *2, but key facts underpinning *this* search have already received extensive attention—not just in the news media, but also in the opinions of other courts,[1] the report of a select committee of the U.S. House of Representatives,[2] a federal indictment of the former President,[3] and a Georgia state indictment too.[4]

Finally, while the public interest favors transparency in any "highly publicized investigation of a well-known defendant accused of abusing his public office," *United States v. Wecht*, 484 F.3d 194, 210 (3d Cir. 2007), the January 6 investigation is singular: An inquiry into an effort to disrupt the peaceful transfer of power that has already resulted in the indictment of the former President of the United States. There should be little doubt that "facilitating a full airing of the

---

[1]     *See, e.g.*, *In re Sealed Case*, 80 F.4th 355, 359–60 (D.C. Cir. 2023); *In re Search of the Forensic Copy of the Cell Phone of Representative Scott Perry*, No. 1:22-sc-02144, slip op. at 2 (D.D.C. Dec. 28, 2022), https://perma.cc/3AMQ-TKGG; *In re Search of Information Associated with Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, slip op. at 1–2 (D.D.C. June 27, 2022), https://perma.cc/F9YP-L7RB.
[2]     *See* U.S. House Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, 117th Cong., Final Report at 50, 105, 115, 283, 382–85, 387–89 (2022).
[3]     *See* Indictment, *United States v. Trump*, No. 1:23-cr-00257 (D.D.C. Aug. 1, 2023); Robby Brod, *Trump Indictment Spells Out Connections to Pennsylvania in Efforts to Overturn Election*, WITF (Aug. 2, 2023), https://perma.cc/JG8Y-XPVH.
[4]     *See* Robby Brod, *Pa.'s Connection to Georgia's Indictment of Trump*, WHYY (Aug. 16, 2023), https://perma.cc/3EM9-WL5U.

events leading to such political crises constitutes a substantial public interest," above and beyond those implicated in a garden-variety public corruption case. *Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021) (internal quotation omitted).

In each respect, this case more closely resembles the Mar-a-Lago matter—which Judge Edison expressly distinguished for the "unquestionably more intense" public interest that search drew. *In re Associated Press*, 2023 WL 5671289, at *7.

II. **The Government's asserted interests would justify—at most—tailored redactions that preserve the public's ability to understand the records.**

   A.  <u>Third-party privacy cannot justify blanket sealing here.</u>

Nothing in the Government's papers to date justifies sealing any portion—let alone all—of the warrant materials on the basis of third-party privacy interests. "[T]he mere mention of an individual's name or activities in a search warrant will not justify redaction of the name, identifying information, or allegations." *L.S. Starrett Co.*, No. 1:02-mc-137, 2002 WL 31314622, at *7 (M.D.N.C. Oct. 15, 2002). As another district court in this Circuit has held, the question is not whether the warrant materials discuss nonpublic information about a third-party—every warrant affidavit does—but whether that information was "relevant to the investigation" as opposed to included gratuitously, and whether the information is of an unusually "intimate nature." *In re Search of 1993 Jeep Grand Cherokee*, 958 F. Supp. at 211; *see also L.S. Starrett Co.*, 2002 WL 31314622, at *7 (sealing unjustified absent "a showing that the information in the search warrant has

3

marginal relevance and will be extremely and unnecessarily embarrassing"). That approach appropriately balances third-party privacy or reputational interests against the public's right to understand a court's basis for authorizing a search.

The Government's contrary reliance on *United States v. Smith*, 776 F.2d 1104, 1114 (3d Cir. 1985) ("*Smith I*"), which approved the redaction of the names of certain public officials from a bill of particulars, is misplaced. First, as the Third Circuit has since clarified, *Smith I* "does not govern" in cases where an individual's "possible connection with the matter" has "already been made public." *United States v. Smith*, 787 F.2d 111, 116 (3d Cir. 1986) ("*Smith II*"); *see also, e.g.*, *In re N.Y. Times Co.*, 585 F. Supp. 2d at 91. Second, the list in *Smith I* amounted to a naked accusation of criminal conduct "unaccompanied by any facts providing a context for evaluating the basis" for that judgment. 776 F.2d at 1114. That prospect of "unfounded character assassination" is inapposite where "a search warrant affidavit will, of necessity, contain detailed explanations of the suspected involvement of all persons named." *United States v. Kott*, 380 F. Supp. 2d 1122, 1125 (C.D. Cal. 2004) (expressly distinguishing *Smith I* on that ground).

B. The Government's investigation cannot justify blanket sealing here.

The Government has likewise failed to explain why its ongoing investigation justifies blanket sealing rather than tailored redaction. Much of the material still under seal cannot possibly implicate that interest—the easy examples being

4

information that is already public and boilerplate that appears in other warrant materials.  *See, e.g.*, Chris Young, *Less Redacted Search Warrant Materials Shed New Light on Investigation of Sen. Richard Burr*, Reporters Comm. for Freedom of the Press (Sept. 9, 2022), https://www.rcfp.org/sen-burr-search-warrant-unsealing/.

But even with respect to nonpublic information, the key point is that the core logic of the right of access requires some degree of access to the Government's probable-cause showing, "the information upon which the court relies" in authorizing a search.  *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009).  For the weight of authority that recognizes a presumption of access to warrant materials during ongoing investigations to make any sense, the Government cannot overcome the presumption by reciting facts that describe every ongoing criminal investigation.

C. The Government should be ordered to propose redactions on the public docket, giving the press and public an opportunity to respond.

To the extent the Court agrees that wholesale sealing is unjustified, Applicants would respectfully urge the Court to order the Government to "submit[], on the public docket, proposed redacted copies of the search warrant materials" and to "specify in detail why redacted portions" should remain secret  *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55, 61 (D.D.C. 2022) (internal quotation marks omitted); *see also* Minute Order, *In re L.A. Times Commc'ns LLC*, No. 1:21-mc-00016 (D.D.C. July 30, 2022) (ordering "specific explanation[s]" for

"*each* of the proposed redactions" (emphasis original)). Consistent with *In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89 (3d Cir. 1990), that approach will allow Applicants to "directly rebut" the Government's claims and ensure any secrecy is narrowly tailored, *id.* at 95.

## CONCLUSION

For the foregoing reasons, Applicants respectfully urge that the remaining judicial records still at issue be unsealed, subject—at most—to any tailored redactions for which the Government can prove a compelling justification.

Dated: November 13, 2023                Respectfully submitted,

*s/ Katie Townsend*
Katie Townsend*
[CA 254321]
ktownsend@rcfp.org
Paula Knudsen Burke
pknudsen@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

* Admitted pro hac vice

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*