UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE APPLICATION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNSEAL COURT RECORDS | Misc. Action No. 1:22-mc-00756<br>Hon. Susan E. Schwab |

**SUPPLEMENTAL REPLY BRIEF**

Pursuant to the Court's order of October 12, 2023 (ECF No. 52), Applicants hereby respectfully reply to the Government's Supplemental Brief (ECF No. 59).

The Government's case for blanket secrecy boils down to its claim that only "the fact of the investigation and the fact of the search warrant have been made public by courts or by the government," Gov't Supp. Br. at 1, that this Court should turn a blind eye to the mountain of other information already in the public domain, *see id.* at 8, and that the rights of the public—including members of the press—to access judicial records in this matter should extend only to information that the public already knows. The first premise is straightforwardly inaccurate on its own terms, the second has been uniformly rejected by other federal courts, *see In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022), and the third fundamentally misunderstands the scope of the press and public's rights of access.

The Government's burden is not merely to show "that the search warrant [materials] include more detail than what has already been reported by the

media"—of course they do; that is why there is a public interest in knowing what they say. *United States v. Cohen*, 366 F. Supp. 3d 612, 626 (S.D.N.Y. 2019). Instead, the Government must demonstrate that cognizable interests would be "harmed" by further disclosure—harms disproportionate to the weighty public interests that would be advanced by transparency. *Id.* Were it otherwise, the public's common law and First Amendment rights of access to warrant materials could not serve as a meaningful check on the executive branch and the judiciary.

I.  **The Government wildly understates the degree to which its interests have been undercut by the information already in the public domain.**

The Government's case for blanket secrecy rests on the assertion that public disclosures to date reveal "only the fact of the warrant at issue here, not the contents of the affidavit, the return, or the portions of the search warrant as issued." Gov't Supp. Br. at 7. That characterization of the public record blinks reality.

To start with the most obvious: The public already knows that the warrant at issue was obtained in connection with an investigation into "efforts to overturn the 2020 presidential election" but the Government nevertheless hopes to redact every reference to that fact here. *In re Search of the Forensic Copy of the Cell Phone of Representative Scott Perry* ("*In re Perry*"), No. 1:22-sc-02144, slip op. at 2 (D.D.C. Dec. 28, 2022), https://perma.cc/3AMQ-TKGG. The Government likewise insists the target offenses here must remain secret, but offenses under investigation in its probe are already identified in the indictment of former

2

President Trump, *see* Indictment at 1, *United States v. Trump*, No. 1:23-cr-00257 (D.D.C. Aug. 1, 2023) (listing 18 U.S.C. §§ 371, 1512(k), 1512(c)(2), and 241), and former Assistant Attorney General Jeffrey Clark's D.C. Bar disciplinary proceedings, *see* Report & Recommendation at 15, *In re Jeffrey B. Clark*, No. 22-bd-039 (D.C. Ct. App. Sept. 12, 2022) (listing 18 U.S.C. §§ 1001, 371, and 1512).

And there's more—much more.  For instance, it is public knowledge that the Government's probable-cause showing was based in part on "evidence of Rep. Perry using his personal cell phone to communicate with individuals allegedly engaged in [] efforts" to overthrow the election, *In re Perry*, No. 1:22-sc-02144, slip op. at 2, and that the Government has sought access to, in particular, Rep. Perry's communications with "attorneys from a presidential campaign" and "state legislators" in Pennsylvania, *id.* at 30–31, as well as John Eastman, Jeffrey Clark, and Ken Klukowski, *see In re Search of Information Associated with Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, slip op. at 1–3 (D.D.C. June 27, 2022), https://perma.cc/F9YP-L7RB.  And the substance of such contacts is detailed in the report of the U.S. House Select Committee to Investigate the January 6th Attack on the U.S. Capitol, which explains, among other things, that Rep. Perry connected former President Trump with Pennsylvania lawmakers and lobbied for Jeffrey Clark's installation as Attorney General.  *See*

U.S. House Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, 117th Cong., Final Report at 50, 105, 115, 283, 382–85, 387–89 (2022).

To underline the point further: While Applicants cannot currently see in context the Government's proposed redactions to the warrant's attachments, it appears from the Government's descriptions that the Government has gone so far as to redact information that appears *word-for-word* in other public records, either because Perry has already disclosed it, *see* Emergency Motion for Return of Seized Property at 2, *Perry v. United States*, No. 1:22-mc-00079 (D.D.C. Aug. 18, 2022) (ECF No. 1) (quoting verbatim from Attachment B-1 to the warrant), or because it consists of boilerplate that would appear in any warrant for forensic examination of a phone. And while the Government purports to rely on Judge Howell's opinion in *In re L.A. Times*, 628 F. Supp. 3d 55 (D.D.C. 2022), for the proposition that such redactions would be justified to conceal investigative techniques, this Court may read the warrant materials that were ultimately unsealed in that case for itself: There are virtually no redactions to the material the Government claims Judge Howell authorized redacting, including the Government's boilerplate descriptions of forensic techniques. *See Burr Warrant Materials*, Reporters Comm. for Freedom of the Press (last visited Nov. 21, 2023), https://perma.cc/JCC9-WB3A.

Simply put, the Government has never seriously reckoned with the facts of this particular case, including the extraordinary volume of information already

4

public.  This Court should reject the Government's invitation to ignore those facts.

## II.  Neither the common law nor the First Amendment right of access is limited to official disclosures or information that is otherwise public.

The Government's insistence that sunlight in this case go no further than information that is already public—and preferably no further than information it has authorized be made public—reflects a more fundamental misunderstanding of the public's common law and First Amendment rights   It is difficult to see how those rights could be, as they are, "fundamental to a democratic state" and essential to "ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally" if they authorized only the disclosure of what everyone already knows.  *United States v. Hubbard*, 650 F.2d 293, 314–15 & n.79 (D.C. Cir. 1980).  And to further limit the analysis solely to *official* disclosures would be antithetical to the conviction that neither "[a] free press" nor a free public can "be made to rely solely upon the sufferance of government to supply it with information." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 104 (1979).

As to the Government's contention that the Court should ignore "non-official sources," Gov't Suppl. Br. at 8,[1] the parties have already litigated that

---

[1]  It bears underlining that the Government has never attempted to explain why its theory of 'official' disclosures excludes disclosures made by Congress, a result that flouts common sense.  *Cf. In re L.A. Times Commc'ns LLC*, 28 F.4th at 297 (ordering reconsideration of denial of motion to unseal warrant materials in light of disclosures by SEC despite Justice Department's continued insistence on secrecy).

5

question in connection with the Government's effort to brief this case in secret, and this Court correctly rejected the notion that public access should turn on the Government's willingness to acknowledge what other sources already make clear, *see* Order at 13–17 (ECF No. 25). Other federal courts have consistently reached that same, intuitive result, including in the context of access to warrant materials in particular. *See In re L.A. Times Commc'ns LLC*, 28 F.4th at 298 (reversing denial of motion to unseal where district court had failed to consider "extensive media reporting"); *United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Az. 2011) (unsealing records over the Government's objection "where much of the information in the warrant materials has already been reported by the media"). Third Circuit precedent, too, makes clear that information is "no longer private" if it has been disclosed in "press reports." *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 98 (3d Cir. 1990).[2]

Common sense should likewise make clear that there is a diminished interest—if there remains any interest—in concealing even previously *non*public information when closely *related* information is already public. In *Smith II*, for

---

[2] The Government cites *United States v. Smith* ("*Smith I*"), 776 F.2d 1104, 1113–14 (3d Cir. 1985), for the opposite proposition, but the cited passage merely makes the unremarkable point that being accused of a crime by law enforcement can cause reputational harm. Applicants have already explained that *Smith I*'s concerns are inapposite where an individual's "possible connection with the matter" is already publicly known, *United States v. Smith* ("*Smith II*"), 787 F.2d 111, 116 (3d Cir. 1986), and inapplicable regardless in the warrant context.

instance, the Third Circuit concluded that a public official's "possible connection" with a criminal trial "substantially diminished" his privacy interest in the separate fact that he had received a target letter. 787 F.2d at 116. And other courts of appeals have similarly observed, for example, that public knowledge that parties have reached a settlement diminishes any interest in concealing the separate fact of its amount. *See Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 229 (5th Cir. 2020).

As should be clear enough from similar cases involving access to warrant materials in particular, federal courts can and should order the disclosure of previously unknown information that would shed valuable light on possible evidence of official misconduct, especially where information that is already public (whether officially disclosed or not) undermines the case for secrecy. *See* Jill Colvin & Nomaan Merchant, *Takeaways from the Unsealed Mar-a-Lago Affidavit*, AP (Aug. 27, 2022), https://perma.cc/X5R6-UV4K; Chris Young, *Less Redacted Search Warrant Materials Shed New Light on Investigation of Sen. Richard Burr*, Reporters Comm. for Freedom of the Press (Sept. 9, 2022), https://www.rcfp.org/sen-burr-search-warrant-unsealing/. That approach advances the public interest in "information relating to alleged governmental misconduct," *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034–35 (1991), and upholds the role the right of access plays in guaranteeing the fair administration of justice.

7

The Court should reach that same result here.  Applicants cannot know exactly what the Government hopes to keep secret in this case.  But given the wealth of information that is already public about its investigation and the urgent public interests that favor disclosure on these facts, further unsealing is warranted.

## CONCLUSION

For the foregoing reasons, Applicants respectfully urge that the remaining judicial records still at issue be unsealed, subject—at most—to any tailored redactions for which the Government can prove a compelling justification.

Dated: November 28, 2023

Respectfully submitted,

*s/ Katie Townsend*
Katie Townsend*
[CA 254321]
ktownsend@rcfp.org
Paula Knudsen Burke
pknudsen@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*\* Admitted pro hac vice*

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*

8