UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE APPLICATION OF          :   1:22-mc-00756
PENN LIVE, YORK DAILY         :
RECORD, AND YORK DISPATCH     :   (Magistrate Judge Schwab)
TO UNSEAL COURT RECORDS,      :
                              :
                              :

## REPORT AND RECOMMENDATION

### I. Introduction.

This case concerns whether a warrant (and related documents) involving a search of Representative Scott Perry and the seizure and search of his cell phone and related records should remain sealed. Several newspapers filed an application to unseal those records. During the proceedings in this case, we ordered that certain briefs be unsealed in part, and the United States submitted redacted versions of certain other documents. What remains in dispute is whether the remaining warrant materials should be unsealed. For the following reasons, although we conclude that the United States has shown compelling interests for not unsealing the warrant materials in their entirety, we recommend that the court grant the newspapers' application to unseal to the extent that the court order the United States to provide access to the warrant materials with targeted redactions to protect its interests.

## II. Background and Procedural History.

Congressman Scott Perry represents Pennsylvania's 10th Congressional District, which consists of Dauphin County and parts of Cumberland and York Counties. *See* https://perry.house.gov/about-scott/default.aspx (last visited Jan. 15, 2024). On August 2, 2022, the undersigned issued a warrant ("the warrant") for the search of Representative Perry's person and the search and seizure of Representative Perry's cell phone and associated records and information in the possession, custody, or control of AT&T. *See partially redacted docket sheet* in 1:22-mc-00602 (M.D. Pa.) (*Doc. 57-1* in the instant case). The warrant was later executed, and a return filed. *Id.* The warrant and related materials were sealed. *Id.*

As later revealed in a case in the United States District Court for the District of Columbia ("D.C. Perry case"), the United States made a forensic image of the contents of Representative Perry's phone, and then returned to it to him. *See In the Matter of the Search of the Forensic Copy of the Cell Phone of Representative Scott Perry*, 1:22-sc-2144, slip op. at 2 (D.D.C. Dec. 28, 2022).[1] The United States District Court for the District of Columbia issued a subsequent warrant to review

---

[1] Although that case is sealed, during the proceedings in the instant action, certain documents—including the opinion cited above—in that case have been unsealed, in whole or in part, and those documents are posted on the United States District Court for the District of Columbia's website. *See* https://www.dcd.uscourts.gov/unsealed-orders-opinions-documents/Stored%20Communications%20Act/2023 (last visited Jan. 15, 2024).

the contents of Representative Perry's phone. *Id.* (explaining that after the execution of the warrant, "[t]he government then sought a separate search warrant to review the contents of the forensic extraction, in accordance with a proposed search protocol designed to protect Rep. Perry's privilege under the [Speech or Debate] Clause, which warrant, along with the search protocol, . . . were ultimately approved by this Court").

## A. The application to unseal.

On September 29, 2022, PennLive, York Daily Record, and York Dispatch ("the newspapers") filed an application to unseal the records related to the warrant issued by the undersigned. *Doc. 1.* More specifically, the newspapers seek an order unsealing the executed warrant, the warrant application, the supporting affidavit, the warrant return, the docket sheet, and any other judicial records related to the warrant[2] ("the warrant materials"). *Id.* ¶ 2.

The newspapers are three newspapers in the Central Pennsylvania area, which publish in print and online. *Id.* ¶¶ 3–5. They allege that they—"[l]ike all

---

[2] The newspapers also seek any subsequent warrant issued. *Doc. 1* at 1. The undersigned has not issued any subsequent warrant concerning Representative Perry. As mentioned above, a subsequent warrant was issued by the United States District Court for the District of Columbia. Because the subsequent warrant was not issued by this court, we do not address further the newspapers' contention that this court should unseal any subsequent warrant.

members of the press and public"—"have a strong interest in understanding the disposition of matters by federal courts, especially where the federal government has applied for and obtained judicial authorization to take investigative steps that implicate 'important constitutional rights such as the Fourth Amendment protection against unreasonable searches and seizures.'" *Id*. ¶ 6 (quoting *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1194 (9th Cir. 2011) (in turn quoting *In re Application of New York Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008)). And, they continue, the public's interest in transparency "is at its apex where an investigation may also implicate the 'powerful public interest' in understanding potential misconduct by a sitting public official, as well as the heightened separation-of-power concerns raised by a search that may have 'resulted in the disclosure of legislative materials to agents of the Executive[.]" *Id*. ¶ 7 (quoting *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022), and *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 661 (D.C. Cir. 2007)).

On August 9, 2022, the Federal Bureau of Investigation ("FBI") executed the warrant while Representative Perry was on vacation with his family in New Jersey. *Id*. ¶ 9. Representative Perry informed the press. *Id*. And the press reported on the warrant and its execution. *See, e.g.*, *id*. ¶¶ 1, 9, 11, 12, 13, 14, 18,

19 (citing articles). The newspapers assert that the warrant was issued "in connection with an escalating federal investigation into efforts by several close allies of former President Donald J. Trump to overturn the 2020 election.'" *Id.* ¶ 11 (quoting Alan Feuer *et al.*, *Seizure of Congressman's Phone Is Latest Sign of Escalating Election Inquiry*, N.Y. Times (Aug. 10, 2022), https://perma.cc/YDT9-FFLS).

Representative Perry also filed an action in the United States District Court for the District of Columbia in which he publicly acknowledged the warrant and its execution. *See Perry v. United States*, 1:22-mc-00079 (D.D.C.).[3] The newspapers

---

[3] Representative Perry began that action by filing an "Emergency Motion for Return of Seized Property pursuant to Fed. R. Crim. P. 41(g) and Request for Injunctive and other Relief." *See doc. 1* in *Perry v. United States*, 1:22-mc-00079 (all caps omitted). In that motion, Representative Perry set forth that the undersigned issued the warrant on August 2, 2022, authorizing the seizure of his cell phone and records and information associated with his phone that is in the custody of AT&T. *Id.* at 1–2. He also set forth that the warrant was executed on August 9, 2022. *Id.* at 2. Further, he asserted that the warrant issued by the undersigned authorized his phone to be transferred to the District of Columbia or to Northern Virginia for forensic analysis. *Id.* at 2, 4. And, he asserted, because the warrant authorized only the seizure of his phone and preservation of its data, a second warrant would be required to search or review the data on his phone. *Id.* at 6. Representative Perry sought an order requiring the United States "to return the data that [it] obtained from his cell phone for which it has failed to establish by probable cause a sufficient nexus to any criminal conduct under investigation, and that [is] protected by the Speech and Debate Clause[,] the Attorney-Client Privilege, and other applicable privileges and protections." *Id.* at 14. He also requested that the court "prohibit the government from obtaining records and information associated with [his] cellular phone that is within the possession, custody and control of AT&T," and if the United States has already obtained those records, he asked that that court order the United States "not to review those

allege that Representative Perry's motion in that case confirmed that the seizure of his phone was related to the activities of the Justice Department's Office of the Inspector General. *Id*. ¶ 12. And, according to the newspapers, that office "is taking the lead on the election subversion investigation." *Id*. (quoting Nicholas Wu & Kyle Cheney, *Why Scott Perry Stands Out in the FBI's Investigations of Trump Allies*, Politico (Aug. 10, 2022), https://perma.cc/74TN-72JV).

The newspapers refer to the House of Representatives' Select Committee to Investigate the January 6th Attack on the United States Capitol.[4] They allege that

---

records until the parties can be heard." *Id*. at 14–15. Given that the parties were communicating about a process to prevent disclosure of privileged information, Representative Perry later moved to hold his emergency motion in abeyance, and the court granted that motion. *See docs. 3, 4* in *Perry v. United States*, 1:22-mc-00079. On October 26, 2022, Representative Perry filed a motion to dismiss that action without prejudice, and the next day, the court dismissed the matter and closed the case. *See doc. 5* and docket sheet in *Perry v. United States*, 1:22-mc-00079. Extensive proceedings subsequently took place in the separate D.C. Perry case concerning the application of the Speech or Debate Clause to the data retrieved from Representative Perry's phone. *See supra*. note 1.

[4] "The House of Representatives . . . established the Select Committee to Investigate the January 6th Attack on the United States Capitol, and charged it with investigating and reporting on the 'facts, circumstances, and causes relating to' the January 6th attack on the Capitol, and its 'interference with the peaceful transfer of power[.]'" *Trump v. Thompson*, 20 F.4th 10, 16 (D.C. Cir. 2021) (internal citation omitted). "The House Resolution also tasked the January 6th Committee with, among other things, making 'legislative recommendations' and proposing 'changes in law, policy, procedures, rules, or regulations' both to prevent future acts of such violence and to 'improve the security posture of the United States Capitol Complex[.]'" *Id.* (internal citation omitted). On December 22, 2022, the Select Committee to Investigate the January 6th Attack on the United States Capitol issued its final report ("January 6th Report"). *See*

"[e]xtensive information about Congressman Perry's involvement in the events under investigation has already been made public as a result of both media reporting and the work of congressional investigators." *Id*. ¶ 13.  For example, they assert that "'[a]ccording to evidence released by the House committee investigating the Jan. 6 attack on the U.S. Capitol, [Representative] Perry reportedly played a key role in an effort to install an attorney general who backed [former President] Trump's false claims of election fraud, and who would further plans to install [former President] Trump-supporting electors in states including Pennsylvania, won by President Joe Biden.'" *Id*. (quoting David Wenner, *Scott Perry Losing Support Over Jan. 6 Allegations, Poll by Democratic Opponent Says*, PennLive (Aug. 16, 2022), https://perma.cc/565P-JT6FG).  Further, they allege, "[t]he evidence made public by the House committee included witness testimony, White House visitor records, and text message exchanges documenting Perry's role in introducing that Attorney General candidate—then-Acting Assistant Attorney General Jeffrey Clark—to former President Trump." *Id*. ¶ 14 (citing Nicholas Wu & Kyle Cheney, *Why Scott Perry Stands Out in the FBI's Investigations of Trump Allies*, Politico (Aug. 10, 2022), https://perma.cc/74TN-72JV).  And they note that

---

https://www.govinfo.gov/collection/january-6th-committee-final-report?path=/gpo/January%206th%20Committee%20Final%20Report%20and%20Supporting%20Materials%20Collection/Final%20Report/%7B%22pageSize%22%3A%2250%22%2C%22offset%22%3A%220%22%7D (last visited Jan. 15, 2024).

"Clark's phone was likewise seized in connection with the inspector general's probe, which 'is investigating felony violations of false statements, conspiracy and obstruction.'" *Id*. (quoting Tierney Sneed & Katelyn Polantz, *Jeffrey Clark Told DC Bar that DOJ Search of his Home Linked to False Statements, Conspiracy, Obstruction Investigation*, CNN (Sept. 14, 2022), https://perma.cc/HE96-N343).

The newspapers allege that seizure of Representative "Perry's phone is a subject of enormous public interest[,]" and "[a]ny search of the property of a Member of Congress is a matter of paramount public concern because it raises unique separation-of-power concerns." *Id*. ¶ 15. The newspapers also allege that the search is of legitimate public concern given Representative Perry's assertions that the seizure was politically motivated and given its proximity to the then November 2022 contested, re-election campaign of Representative Perry. *Id*. ¶¶ 17-19.

The newspapers seek an order unsealing the warrant materials in their entirety or, in the alternative, unsealing the warrant materials with redactions. *Id*. ¶ 21. And they filed a brief in support of their application to unseal arguing that is the proper result under the common law as well as the First Amendment. *See doc. 2*.

**B. Proceedings Regarding the United States' Briefs.**

Appearing in opposition to the newspapers' motion to unseal, the United States filed a motion to file under seal and ex parte its opposition to the newspapers' application to unseal. *Doc. 8*. After the newspapers filed a brief in opposition to that motion to seal, *see doc. 11*, the United States filed a motion to file under seal and ex parte its reply brief in support of its first motion to seal, *see doc. 16*. The newspapers then filed a brief in opposition to that second motion to seal. *See 18*. We refer to the briefs subject to those motions to seal as the United States' opposition and its reply.

By an order dated November 18, 2022, we concluded that both the United States' opposition and its reply are judicial records, and because the public has a presumptive right of access to judicial records, but that right is not absolute, the court must balance the public's right of access against the interests that the United States contends warrant secrecy in this case. *Doc. 19* at 3. To that end, we ordered the United States to file redacted versions of its opposition and its reply under seal and ex parte. *Id*. We noted that we would then review those redactions line-by-line to determine as to which, if any, of those redactions the United States has met its burden of showing that the interests in secrecy it puts forth outweigh the public's presumptive right of access. *Id*.

The United States complied with our order. *See doc. 20* (filed ex parte and under seal). Asserting that removing "all non-public information" from its opposition and its reply would render those documents unintelligible and misleading, the United States continued to assert that it should be permitted to file both its opposition and its reply entirely under seal. *Id*. at 3. Nevertheless, in the event that the court were to find that total sealing is unwarranted, the United States submitted proposed redactions to its opposition and its reply. *See doc. 20-1* (filed ex parte and under seal).

After further proceedings, on February 7, 2023, we issued an order ("Feb. 7 Order") concluding that both the common law right of access and the First Amendment right of access apply to the United States' briefs and granting in part and denying in part the United States' motions to seal its opposition and its reply. *Doc. 25*. More specifically, we rejected the United States' attempt to keep under seal the fact that the undersigned issued the warrant at issue and the fact that there is an ongoing investigation. *Id*. at 13–17. Nevertheless, we concluded that the United States had a compelling interest in keeping under seal those parts of its opposition and its reply that reveal the nature, scope, and details of the investigation, including the names of others involved (other than Representative Perry). *Id*. at 18. We determined that disclosure of the nature, scope, and details of the investigation at that time could significantly impair the United States' ongoing

investigation. *Id*. More specifically, we concluded, disclosure could give those allegedly involved in the events underlying the investigation insight into the investigation and, thus, compromise the investigation. *Id*. at 19. We further concluded that such disclosure would significantly intrude on the privacy interests of individuals (other than Representative Perry) who are named in the warrant. *Id*.

In sum, concluding that much—but not all—of the United States' briefs should not be sealed, we redacted those parts of the briefs that should be sealed. *Id*. at 13–21. And we attached those redactions to the Feb. 7 Order. *Docs. 25-1, 25-2*. But, to provide the United States with the opportunity to appeal the order to the district court, we initially entered the Feb. 7 Order under seal and ex parte. *See doc. 25* at 19–21. We issued a Notice on the docket explaining this. *Doc. 26*.

The United States did not appeal the Feb. 7 Order, and we later unsealed the Feb. 7 Order. *See doc. 29*. Although the United States did not appeal the Feb. 7 Order, it requested that the court make three additional redactions to its opposition, and it filed a motion to seal as to those additional redactions. *See docs. 27, 28*. We then made public the United States' opposition with redactions (including, for the time being, the three additional redactions requested by the United States) and its reply with redactions. *Doc. 29*.

After further proceedings, the United States conceded that two of its three additional redactions were no longer necessary in light of documents that the

United States District Court for the District of Columbia had recently unsealed in the D.C. Perry case. *See doc. 30* at 1.[5] More specifically, given that in the documents released by the United States District Court for the District of Columbia, that court confirmed that it had issued a separate search warrant for the contents of Representative Perry's cell phone—a fact that the United States had not previously officially, publicly acknowledged—the United States withdrew two of its three proposed additional redactions. *See id.* In response, we unsealed the two redactions that the United States by then agreed should be unsealed. *Doc. 34* at 3. Concluding that the United States had not shown a compelling reason for the third additional redaction that it proposed, we rejected that redaction as well. *Id.* at 4. Thus, we denied the United States' motion to seal as to those redactions. *Id.* at 5.

Further, in light of the documents unsealed by the United States District Court for the District of Columbia, we also ordered the United States to review again all the remaining redactions in its opposition and its reply and to inform the

---

[5] The newspapers subsequently submitted the documents publicly released by that court in that case. *See doc. 33.* Those records confirm that a separate search warrant was issued by the United States District Court for the District of Columbia. Although those documents refer to the search issued by this court, the search and seizure of Representative Perry's phone, and the subsequent search warrant issued by the United States District Court for the District of Columbia, the focus of that case, as far as we can discern from the unsealed documents, and as noted above, *see supra*. note 3, is on the extent to which the Speech or Debate Clause protects Representative Perry's records and communications obtained from his phone as a result of the warrant issued by that court.

court of any additional parts of those documents that could be disclosed. *Id.* We noted that upon receipt of the United States' response, we would review the United States' opposition and its reply again and decide what else, if anything, should be unsealed in light of recent events. *Id.*

The United States then filed a notice in which it agreed that certain additional material in its opposition and its reply should be unsealed. *Doc. 35.* More specifically, the United States agreed that given the documents released by the United States District Court for the District of Columbia in the D.C. Perry case, "references to the fact of a warrant issued in the District of Columbia concerning access to a forensic copy of the cell phone of Representative Scott Perry may be un-redacted . . . ." *Id.* at 1. The United States attached to its notice copies of its opposition and its reply with additional parts no longer redacted. *See docs. 35-1, 35-2.* But asserting that "[t]he remainder of the redacted portions of [its] briefs contain information that is non-public and must remain under seal to protect the compelling governmental interests explained in detail in [its] previously submitted filings," the United States refused to agree to the unsealing of any additional parts of its briefs. *Doc. 35* at 2.

Despite the United States' steadfast refusal to agree to additional unsealing, by an Order dated April 17, 2023 ("April 17 Order"), we reviewed what remained redacted in the United States' opposition and its reply, and we concluded that

considering the documents released by the United States District Court for the District of Columbia in the D.C. Perry case, additional unsealing was necessary. *See doc. 37* at 5. More specifically, we concluded that given the information now in the public domain, the United States could no longer show a compelling reason for redacting the following information from its opposition and its reply:

- the fact that the underlying investigation involves the certification of the 2020 presidential election results;
- the fact that a grand jury was empaneled in the District of Columbia;
- the fact that the investigation involves former and current senior-level government officials; and
- the fact that this investigation overlaps a congressional investigation.

*Id*. at 5–6. But we concluded that the details of the underlying investigation, such as names or descriptions of individuals other than Representative Perry, should remain redacted. *Id*. at 6. We attached to the April 17 Order a version of the United States' opposition and a version of its reply with only those redactions that we concluded continue to meet the strict scrutiny standard for sealing under the First Amendment. *Id*.; *Doc. 37-1*, *Doc. 37-2*.

Again, to give the United States the opportunity to appeal the April 17 Order to the district court, we stayed that order and issued it under seal and ex parte. *Doc. 37* at 7. We issued a Notice on the docket explaining this. *Doc. 38*.

Although the United States did not appeal the April 17 Order, it filed yet another—its fourth—motion to seal seeking to seal a motion for partial

reconsideration of the April 17 Order. *Docs. 39, 40*. The United States filed this

motion to seal as well as its motion for partial reconsideration under seal and ex

parte. *Id*. Although filed ex parte, it appeared that the United States served at least

a redacted version of its motion for partial reconsideration on the newspapers

because the newspapers filed a brief in opposition to that motion. *See doc. 41*. So,

to clarify the docket, we ordered the United States to file on the docket the version

of its motion for partial reconsideration that it served on the newspapers. *Doc. 42*.

The United States filed on the docket the redacted version of its motion for partial

reconsideration that it had served on the newspapers. *Doc. 43*.

In its motion for partial reconsideration, the United States requested that the

court make several additional, minor redactions to its opposition that, according to

the United States, would reveal grand jury information protected from disclosure

by Fed. R. Crim. P. 6(e). *Id*. at 2. Other than that, the United States asserted that it

did not object to the April 17 Order or to the release of the April 17 Order. *Id*. at 1.

By an order dated May 9, 2023, we unsealed the April 17 Order and made it

available on the docket. *See doc. 44* at 4. We also unsealed and made available on

the docket a redacted version of the United States' reply. *Id*. But we concluded

that the United States had shown a compelling reason for the three additional

redactions that it proposed to its opposition, i.e., that the information at issue would

reveal the strategy and direction of the grand jury's investigation. *Id*. at 3. Thus,

we granted the United States' motion to seal its motion for partial reconsideration to the extent that we accepted the redacted version of the United States' motion for partial reconsideration that it filed on the docket. *Id*. And granting the United States' motion for partial reconsideration, we made the additional, minor redactions proposed by the United States. *Id*. Accordingly, we placed on the docket a redacted version of the United States' opposition. *See doc. 44-1*.

In sum, the final version of the United States opposition and its reply contained only limited redactions. *See doc. 44-1*; *doc. 37-2*.

## C. Further Proceedings.

Following the conclusion of the protracted proceedings regarding which parts of the United States' opposition and its reply should be redacted, we gave the newspapers an opportunity to file a reply brief in support of their motion to unseal the warrant materials. *See doc. 44* at 4–5. The newspapers then filed their reply brief. *See doc. 45*.

We scheduled a hearing and oral argument. *See doc. 46*. After a brief continuance at the request of the United States, that hearing and oral argument was held on October 12, 2023. *See doc. 55*.[6] Although scheduled as a hearing and an

---

[6] In the meantime, the United States informed the court that the United States Court of Appeals for the District of Columbia Circuit had unsealed its

oral argument, the parties presented only argument, not evidence. *Id.* Following

the oral argument and in accordance with the discussion during the oral argument,

we ordered the parties to file supplemental briefs. *See doc. 52*.

In the meantime, in accordance with the United States' agreement during the

oral argument that certain warrant materials could be released with some

redactions, the United States filed a motion to seal agreeing to the unsealing of

redacted versions of certain documents but seeking to file ex parte and under seal

an unredacted version of its Notice of Filing of Proposed Redactions explaining the

basis for its proposed redactions. *See doc. 53* (sealed). The United States agreed to

the unsealing of a redacted version of: (1) the docket sheet in the underlying

warrant case: 1:22-mc-00602; and (2) the warrant itself. *See doc. 54* (sealed). The

United States also agreed to the unsealing of the sealing order in 1:22-mc-00602

without any redactions. *Id.* Further, the United States agreed that a redacted

version of its Notice of Filing of Proposed Redactions may be filed on the public

docket. *Id.*

By an Order dated October 24, 2023, we granted the United States' motion

to seal to the extent that we unsealed a redacted version of the docket sheet in 1:22-

mc-00602, a redacted version of the United States' Notice of Filing of Proposed

---

decision in the appeal from the D.C. Perry case. *See doc. 49*. That appeal is now
reported as *In re Sealed Case*, 80 F.4th 355 (D.C. Cir. 2023).

Redactions, and an unredacted version of the sealing order in 1:22-mc-00602. *See doc. 57.* We attached those documents to the order. *See docs. 57-1, 57-2, 57-3.* As for the United States' proposed redactions to the actual warrant, which proposed redactions are substantial, we stated that we would consider which, if any, redactions to the warrant are appropriate after the parties' supplemental briefs were filed and at the same time as we consider which, if any, redactions to the warrant affidavit and the warrant return are appropriate. *Doc. 57* at 2.[7]

The parties later filed supplemental briefs, with the last such brief being filed on November 28, 2023. *See docs. 58–61.* Thereafter, the parties also filed additional notices of supplemental authority. *See docs. 62, 63.* The newspapers informed the court of an order by the Appeals Court in the D.C. Perry case granting in part and denying in part a motion to unseal judicial records. *Doc. 62.*[8]

---

[7] Given our recommendation in the instant report and recommendation that the court order the United States to provide access to the warrant materials with targeted redactions to protect its interests, by a separate order, we have made public the warrant as redacted by the United States to date. If the district court adopts the instant report and recommendation, the United States will be required to reconsider whether the redactions it has already provided to the warrant are still appropriate.

[8] The newspapers also cite an article reporting on that order. It appears from that article that due to an error by the Clerk of the Court of Appeals, certain documents were temporarily unsealed that, according to the Court of Appeals' order, should not have been. That error was corrected, and those documents were sealed again. Even though those documents were inadvertently temporarily unsealed, given that they were sealed again, we will not consider such documents or reports about them. Moreover, although the article reports that the documents

And the United States informed the court of an order of the United States District Court for the District of Columbia in a separate case ("Twitter case") that denied a motion to unseal a warrant affidavit in a case involving a warrant issued for a Twitter account involved in the same investigation regarding the 2020 election that is at issue in this case. *See In re Access*, No. MC 23-84 (JEB), 2023 WL 8254630, at *1 (D.D.C. Nov. 29, 2023).

The record is now closed, and after careful consideration of the parties' arguments, for the reasons discussed herein, we recommend that the court grant the newspapers' application to unseal to the extent that the court order the United States to provide access to the warrant materials with targeted redactions to protect its interests.

## III. Discussion.

The newspapers contend that under both the common law right of access to judicial records and the First Amendment right of access to judicial proceedings, the warrant materials should be unsealed in their entirety, or, in the alternative,

---

relate to the investigation regarding the 2020 election, that has already been reported on elsewhere. And although the article provides additional details, even were we to consider the article, it would not change our recommendation here.

unsealed with only limited redactions. We first address the common law, and then we turn to the First Amendment.[9]

Before we do so, however, we clarify what documents are—and are not— still in dispute. As set forth above, the docket sheet in the underlying warrant case has been unsealed with only minor redactions. *See doc. 57-1.* Two instances on the docket sheet that list Representative Perry's date of birth have been redacted. *Cf.* Fed. R. Civ. P. 52(a) (providing that only the year of an individual's date of birth should be included in a filing); M.D. Pa. L.R. 5.2(d) (same). And the name and contact information of the Assistant United States Attorney on that case have been redacted. *See In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1260 (S.D. Fla. 2022) (finding redactions "to protect the identity and personal safety of the prosecutor and investigator" were appropriate). The newspapers voiced no objection to those redactions either during the oral argument, when they were proposed, or afterwards. Thus, we conclude that the docket sheet is no longer at

---

[9] Because the issue in this case is whether documents should be unsealed, our discussion necessarily must be somewhat general. We understand that we must articulate our reasons for sealing "on the record with 'findings specific enough that a reviewing court can determine whether the [sealing] order was properly entered.'" *United States v. Raffoul*, 826 F.2d 218, 225 (3d Cir. 1987) (quoting *Press-Enter. Co. v. Superior Court,* 464 U.S. 501, 510 (1984)). Providing extensive detail on the record, however, "would impair 'the very secrecy which sealing was intended to preserve.'" *United States v. Thomas*, 905 F.3d 276, 283 (3d Cir. 2018) (quoting *United States v. Kooistra*, 796 F.2d 1390, 1391 (11th Cir. 1986)).

issue. Similarly, the court's August 2, 2022 Sealing Order has been unsealed in its entirety. *See doc. 57-2.* Thus, there is also not an issue as to that document. Given the above, the warrant materials at issue are the warrant application, the accompanying affidavit, the actual warrant issued, and the warrant return.

Also, before addressing whether continuing sealing is appropriate, we briefly summarize three cases that figure prominently in our discussion: (1) the D.C. Perry case; (2) the Twitter case; and (3) and the case involving the unsealing of warrant documents regarding the United States' search of former President Trump's home in Mar-a-Lago ("the Mar-a-Lago case").

**The D.C. Perry case.** As previously explained, the United States District Court for the District of Columbia issued a subsequent warrant to review the contents of Representative Perry's phone. And that court explained that as part of a criminal investigation into efforts to overturn the 2020 presidential election, "the government obtained and executed a probable cause warrant issued by a magistrate judge in the Middle District of Pennsylvania to seize Rep. Perry's personal cell phone and forensically extract an image of its contents in August 2022, after which extraction the cell phone was promptly returned to Rep. Perry[,] and "[t]he government then sought a separate search warrant to review the contents of the forensic extraction, in accordance with a proposed search protocol designed to

protect Rep. Perry's privilege under the [Speech or Debate] Clause, which warrant, along with the search protocol, . . . were ultimately approved by this Court." *D.C. Perry case*, 1:22-sc-2144, slip op. at 2 (D.D.C. Dec. 28, 2022).[10] There have been extensive proceedings in the District Court for the District of Columbia regarding what materials obtained as a result of that subsequent warrant are privileged by the Speech or Debate Clause.

There has also been an appeal in the D.C. Perry case. *See In re Sealed Case*, 80 F.4th 355 (D.C. Cir. 2023). In its opinion as to that appeal, the Court of Appeals further elaborated on the context of the dispute in that case:

> After the 2020 presidential election, Representative Perry used his personal cell phone to send and receive communications concerning allegations of fraud in that election. Some of these communications were with fellow Members of Congress or with congressional staff. Representative Perry also communicated with members of the Executive Branch and with individuals outside the federal government. He sent and received many of these communications before the House voted on whether to certify the electoral votes from the 2020 election. Other communications occurred with respect to a vote on proposed legislation to alter election procedures.

---

[10] As noted above, *see supra*. note 1, although that case is sealed, certain documents in that case have been unsealed, in whole or part, and those documents are posted on the United States District Court for the District of Columbia's website. *See* https://www.dcd.uscourts.gov/unsealed-orders-opinions-documents/Stored%20Communications%20Act/2023 (last visited Jan. 15, 2024).

*Id*. at 359–60 (internal citations omitted). The Court of Appeals held, among other things, that Representative Perry's communications with other members of Congress concerning "the passage of proposed legislation as well as the exercise of the constitutional duty to certify the electoral votes from the 2020 election[,]" were privileged under the Speech or Debate Clause. *Id*. at 373. It also held that "[a]s to Representative Perry's communications with individuals outside the federal government, communications with members of the Executive Branch, and communications with other Members of Congress regarding alleged election fraud during the period before Congress's vote certifying the 2020 election and before its vote on H.R. 1, the district court failed to apply the fact-specific privilege inquiry" required. *Id*. Thus, it vacated "the judgment in part and remand[ed] for the district court to apply the correct standard, consistent with this opinion." *Id*. The Court of Appeals also noted that "[t]he communications remain under seal, as do some of the district court proceedings." *Id*. at 360 n.1.

After the case was remanded to the district court, by a Memorandum Opinion and Order dated December 19, 2023, Chief Judge Boasberg granted in part and denied in part Representative Perry's motion for nondisclosure of the communications seized from his phone. *See D.C. Perry case*, 1:22-sc-2144, slip

op. at 11–12 (D.D.C. Dec. 19, 2023).[11]  Judge Boasberg determined which communications were protected by the Speech or Debate Clause and which were not. *Id*.

**The Twitter case.**  "As part of the Special Counsel's investigation into election interference, the Government sought and obtained a search warrant for Twitter's records associated with the @realDonaldTrump account." *In re Access,* 2023 WL 8254630, at *1.[12]  The United States also "requested a nondisclosure order pursuant to 18 U.S.C. § 2705(b), to prohibit Twitter from revealing the contents or existence of the warrant to another party." *Id*.  The United States District Court for the District of Columbia granted that request. *Id*.  It also sealed the search-warrant docket. *Id*.

Although Twitter challenged the nondisclosure order, the district court rejected that challenge. *Id*.  After the district court also held Twitter in contempt for failing to timely comply with the warrant, Twitter appealed, and the United

---

[11] *See supra*. notes 1, 10.

[12] Although Twitter, Inc. later became X Corp., the United States District Court for the District of Columbia continued to refer to the entity as Twitter. *See In re Access*, 2023 WL 8254630 at *1.  In connection with an appeal, so did the United States Court of Appeal for the District of Columbia. *See In re Sealed Case*, 77 F.4th 815, 821 n.1 (D.C. Cir. 2023).  For ease of reference, so will we.

States Court of Appeals for the District of Columbia affirmed the district court. *In re Sealed Case*, 77 F.4th at 836. Following the release of the United States Court of Appeals' decision and the indictment of former President Trump, "a Press Coalition and Twitter sought to unseal documents associated with the warrant." *In re Access*, 2023 WL 8254630, at *1. "[L]arge swaths of these proceedings have been unsealed with the Government's consent," including the docket sheet, and with redactions, the warrant application (excluding the affidavit), and the issued warrant. *Id.* at *2. But several documents, including the warrant's supporting affidavit, remained sealed. *Id.* By a decision dated November 29, 2023, based on the "undeniable need to protect an ongoing investigation[,]" Chief Judge Boasberg concluded that the warrant affidavit should remain sealed in its entirety. *Id.* at *1, *7, *9.

**The Mar-a-Lago case.** "In August 2022, the government obtained a search warrant to search the Mar-a-Lago residence of former President Donald J. Trump." *In re Warrant*, No. 22-12791, 2023 WL 4995735, at *1 (11th Cir. Aug. 4, 2023). "The search warrant and an affidavit demonstrating probable cause were filed under seal." *Id.* Soon after the search was executed, numerous parties moved to unseal the warrant documents. *Id.* The United States agreed to unseal—with only limited redactions to conceal the identities of FBI agents, the FBI case number, and

the identity of an assistant United States Attorney—the following warrant

materials: the warrant; a copy of the inventory; the criminal cover sheet, the

application for the warrant (but not the underlying affidavit in support of that

application), a motion to seal, and the court's sealing order. *See In re Sealed*

*Search Warrant*, 622 F. Supp. 3d 1257, 1260 (S.D. Fla. 2022). That left the

question whether the affidavit in support of the warrant should be unsealed in

whole or part. *Id*. In addressing that question, Magistrate Judge Reinhart of the

United States District Court for the Southern District of Florida found that the

United States had "met its burden of showing good cause/a compelling interest that

overrides any public interest in unsealing the full contents of the Affidavit." *Id*. at

1265. But he did not accept the United States' argument that the entire affidavit

should be kept under seal. *Id*. The United States argued that "the necessary

redactions 'would be so extensive as to render the document devoid of content that

would meaningfully enhance the public's understanding of these events beyond the

information already now in the public record.'" *Id*. (internal citations omitted).

Although Magistrate Judge Reinhart concluded that he "may ultimately reach that

conclusion after hearing further from the Government," he concluded that the

record that was then before him did not justify keeping the entire affidavit under

seal, and he ordered the United States to submit proposed redactions. *Id*. After the

United States submitted proposed redactions, he found "that the Government ha[d]

met its burden of showing a compelling reason/good cause to seal portions of the Affidavit because disclosure would reveal (1) the identities of witnesses, law enforcement agents, and uncharged parties, (2) the investigation's strategy, direction, scope, sources, and methods, and (3) grand jury information protected by Federal Rule of Criminal Procedure 6(e)." *In re Sealed Search Warrant*, No. 22-8332-BER, 2022 WL 3656888, at *1 (S.D. Fla. Aug. 25, 2022). And, Magistrate Judge Reinhart concluded, the United States "met its burden of showing that its proposed redactions are narrowly tailored to serve the Government's legitimate interest in the integrity of the ongoing investigation and are the least onerous alternative to sealing the entire Affidavit." *Id.* He ordered the United States to file the redacted affidavit on the docket. *Id.* The United States later agreed that additional parts of the affidavit could be unsealed. *See* 9:22-mj-08332 (S.D. Fla.) at *docs. 130, 154.* And the redacted affidavit is available to the public. *See id.* at *doc. 156-1.*[13]

_____

[13] The United States has noted that warrant materials relating to other warrants issued in connection with the same investigation at issue in the Mar-a-lago case have also been unsealed in part. *See doc. 59* at 10 n.5 (citing *Doc. 13* in *In re Sealed Search Warrants*, No. 22-mj-8489 (S.D. Fla. Aug. 28, 2023)). In addition to the partially unsealed warrant referenced by the United States, other similar partially unsealed warrants can be found at No. 22-mj-88533 (*doc. 15-1*); No. 22-mj-8534 (*doc. 14-1*); No. 22-mj-8547 (*doc. 13-1*); No. 22-mj-8548 (*doc. 13-1*); No. 22-mj-8549 (*doc.13-1*); and No. 22-mj-8550 (*doc. 14-1*).

## A. Common Law.

Having set the stage, we now turn to whether under the common law, the warrant materials should be unsealed, in whole or in part.

"It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). "The right of access 'promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court.'" *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)). And "[p]ublic observation facilitated by the right of access 'diminishes possibilities for injustice, incompetence, perjury, and fraud.'" *Id.* (quoting *Littlejohn*, 851 F.2d at 678). "Moreover, 'the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.'" *Id.* (quoting *Littlejohn*, 851 F.2d at 678).

The public has a "presumptive right" of access to judicial records. *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 192). That presumption of access is strong: "the common law right of access begins with a thumb on the scale in favor of openness . . . ." *Id.* at 676. Although the presumption of access is strong, it "is 'not absolute.'" *Id.* (quoting *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel*

*Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)).  It "'may be rebutted.'" *Id.* (quoting *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991)).

"The party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'" *Id.* (quoting *Bank of Am.*, 800 F.2d at 344).  More specifically, the party opposing access "must show 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Id.* (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).  The party opposing access must specifically articulate the injury that it is seeking to prevent. *Id.* at 673.  "'Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.'" *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 192).

"In addition, to mind the public's right of access, parties seeking to file material under seal should distinguish between portions of a document containing protectible information and portions of a document that do not." *Kivett v. Neolpharma, Inc.*, No. 2:20-00664-JDW, 2021 WL 1209844, at *1 (E.D. Pa. Mar. 31, 2021).  "Where possible, they should propose redactions, rather than placing a whole document under seal." *Id.*  "A party who seeks to seal an *entire* record faces

an even heavier burden" than a party who seeks to seal only part of a record. *Miller*, 16 F.3d at 551 (italics in original).

When sealing or refusing to unseal a judicial document, the court "must articulate 'the compelling, countervailing interests to be protected,' make 'specific findings on the record concerning the effects of disclosure,' and 'provide[ ] an opportunity for interested third parties to be heard.'" *In re Avandia Mktg.,* 924 F.3d at 672–73 (quoting *In re Cendant Corp.*, 260 F.3d at 194). "'[C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome[.]'" *Id*. (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993)). The court must review the content of each document at issue. *Id*.

### 1. The common law applies to the warrant materials.

The first issue is whether the warrant materials are subject to the common law right of access. They are.

Numerous courts have held that such materials are protected by the common law right of access. *See e.g.*, *In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 297 (citing cases). The United States does not argue otherwise. Rather, in its main brief, it notes that it is not settled in the Third Circuit that the common law applies to warrant materials; nevertheless, it assumes that the common law right of access

applies. *See doc. 44-1* at 18-20. And at the oral argument, the United States asserted that it was not contesting that the common law right applies. *Doc. 55* at 19.

Moreover, "[w]hether the common law right of access applies to a particular document or record turns on whether that item is considered to be a judicial record." *In re Avandia Mktg.*, 924 F.3d at 672 (internal quotation marks omitted) (quoting *In re Cendant Corp.*, 260 F.3d at 192). And "[a] 'judicial record' is a document that 'has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.'" *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 192). Here, the warrant application and underlying affidavit have been filed with the court, and the court used those documents when deciding whether to issue the warrant. And the actual warrant and the warrant return have been filed with the court, and they are part of the judicial proceedings. Thus, the warrant materials are judicial records subject to the common law right of access.

### 2. The United States has shown compelling reasons for not unsealing the warrant materials in their entirety.

Having concluded that the warrant materials are subject to the common law right of access, we turn to whether the United States has met its burden of showing that its interests in secrecy outweigh the common law's presumption of access. As

set forth above, the remaining warrant materials at issue are: the warrant application, the accompanying affidavit, the actual warrant issued, and the warrant return. Although the heart of the parties' dispute and the focus of their arguments appear to be on the warrant affidavit, our discussion applies to all the remaining warrant materials.

In assessing whether the warrant materials should be unsealed, in whole or part, we begin—as we must—with the public's interest in access to the warrant materials. "Consideration of the public's right of access must be the starting point, not just one of multiple factors." *In re Avandia Mktg.,* 924 F.3d at 677. "The scale is tipped at the outset in favor of access." *Id*. "And the right of access is not a mere formality—it 'promotes public confidence in the judicial system'; 'diminishes possibilities for injustice, incompetence, perjury, and fraud'; and 'provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness.'" *Id*. (quoting *Littlejohn*, 851 F.2d at 678.).

In any case where the common law applies, the presumption of access is strong. *Id*. at 676. But this is not just any case. It involves a sitting member of Congress whose phone was seized by the Untied States as part of a historic investigation regarding purported interference with a presidential election. As the United States District Court of the District of Columbia recognized in the Twitter case, the investigation regarding the election "is not just any criminal matter

32

implicating government practices; it is one of historic proportions with massive significance to the body politic." *In re Access*, 2023 WL 8254630, at *4. "Significant public interests thus hang in the balance." *Id*.; *see also United States v. Wecht*, 484 F.3d 194, 210 (3d Cir. 2007) (explaining that "the process by which the government investigates and prosecutes its citizens is an important matter of public concern" and that the documents at issue in that case were "of significant interest to the public" given that they were *Brady* material that "concern[ed] the conduct of an FBI official who played a prominent role in a highly publicized investigation of a well-known defendant accused of abusing his public office"). Accordingly, the public's interest weighs heavily in favor of unsealing.

Nevertheless, the presumption of access is "just that"—a presumption—and it "may be rebutted." *In re Avandia Mktg.,* 924 F.3d at 672. "[T]he strong common law presumption of access must be balanced against the factors militating against access." *Bank of Am.*, 800 F.2d at 344. "The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Id.* Thus, we must determine whether the United States has rebutted the common law presumption.

In its brief in opposition to the application to unseal, the United States asserts two interests that it contends "weigh heavily against unsealing preindictment warrant materials": (1) unsealing could impair its investigation; and

(2) unsealing could harm the privacy interests of unindicted individuals. *Doc. 44-1* at 20–23.  As to the first interest, the United States contends that "[b]ecause the government's investigation is ongoing, unsealing would risk irreparable harm by revealing the nature, scope, and direction of the investigation." *Id.* at 22.  And it notes that it has "not yet accessed or reviewed the information that was the subject of the warrant." *Id.*[14]  As to the second interest, the United States contends that unsealing "would risk serious harm to the reputation of unindicted individuals without providing them a judicial forum in which to attempt to clear their names." *Id*. at 23.  In summary, the United States argues that it "has a compelling interest in preserving the confidentiality of this ongoing investigation, including the specific details regarding its nature, scope, and direction, and the identities of uncharged individuals." *Id.* at 18.  It continues that because it "has neither publicly acknowledged the investigation, nor brought charges in connection with it," this case is distinguishable "from other instances in which courts have granted access to search warrant materials." *Id*.

---

[14] As mentioned above, on December 17, 2023, Judge Boasberg in the D.C. Perry case determined which communications were protected by the Speech or Debate Clause and which were not. *See D.C. Perry case*, 1:22-sc-2144, slip op. at 11–12 (D.D.C. Dec. 19, 2023).  Thus, it appears that the United States has, or soon will have, access to those communications that are not protected by the Speech or Debate Clause.

Much has changed, however, since the United States filed its brief in opposition in October 2022. There is now much more information that has been made public about the underlying investigation. In addition to further press coverage,[15] the additional information that has been made public about the underlying investigation includes opinions that were released in the D.C. Perry case that confirm that that the underlying investigation is a criminal investigation into efforts to overturn the 2020 presidential election. *See D.C. Perry case*, 1:22-sc-2144, slip op. at 2 (D.D.C. Dec. 28, 2022).[16] The additional information now public also includes the opinion of the Court of Appeals in the D.C. Perry case that further elaborated that "[a]fter the 2020 presidential election, Representative Perry

---

[15] Drawing a distinction between information available from non-official sources and documents that have the imprimatur of federal law enforcement officials, the United States contends that press reports regarding this search do not support unsealing. *See doc. 59* at 8. To the contrary, press reports may be relevant to a sealing decision. *See In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 98 (3d Cir. 1990) ("If press reports are offered and admitted into evidence showing that the witness's involvement in a grand jury investigation has already been published in full detail, the district court would presumably conclude on remand that the subject of the sealed documents is no longer private."). Moreover, in the instant case, in addition to press reports, as we set forth above, there is much other official information that has been made public about this search and the underlying investigation. Thus, however persuasive the United States' distinction between information available from non-official sources and official sources may be in the context of a different case, that distinction carries light weight here.

[16] *See supra*. note 1.

used his personal cell phone to send and receive communications concerning allegations of fraud in that election." *In re Sealed Case*, 80 F.4th at 359–60.

Also, after the United States filed its brief in opposition to the newspapers' application to unseal in this case, the December 22, 2022 January 6th Report by the Select Committee to Investigate the January 6th Attack on the United States Capitol was released. *See supra*. note 4. That report includes detailed information about the events of January 6, 2021, as well as the events between the November 2020 presidential election and January 6, 2021, including, as relevant here, information regarding Representative Perry. *See* January 6th Report.

Further, as set forth above, we already determined in connection with the United States' motions to seal regarding its briefs that the following facts are now in the public domain:

> • the fact that the underlying investigation involves the certification of the 2020 presidential election results;
>
> • the fact that a grand jury was empaneled in the District of Columbia;
>
> • the fact that the investigation involves former and current senior-level government officials; and
>
> • the fact that this investigation overlaps a congressional investigation.

*Doc. 37* at 5–6.

Moreover, as the United States confirmed during the oral argument in this case, there has now been an indictment involving the underlying investigation: the indictment in the District of Columbia of former President Trump. *See doc. 55* at

11 ("As I was saying, as Your Honor is also aware, the fact of the search warrant

has been made public by opinions released in the District of Columbia, and an

indictment has been issued in connection with this investigation."), at 47

(specifying that the indictment issued in connection with this investigation is the

one in "United States v. Trump in the District of Columbia").  The indictment in

that case contains detailed allegations regarding the United States' charges that

former President Trump conspired with others regarding the election. *See doc. 1* in

*United States v. Trump*, 1:23-cr-00257 (D.D.C.).[17]

The newspapers also point out that in a partially unsealed Memorandum and

Order in a separate case in the United States District Court for the District of

Columbia, the United States sought access to communications between an email

account associated with Representative Perry and the email accounts of others

associated with the election investigation. *See In re Search of Info. Associated with

Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, slip

op. at 1–3 (D.D.C. June 27, 2022).[18]

---

[17] In addition, former President Trump and others have been indicted in
Georgia on charges relating to the 2020 election. *See* indictment available at
https://www.fultonclerk.org/DocumentCenter/Index/142 (last visited Jan. 15,
2024).

[18] Although that case is sealed, the partially unsealed June 27, 2022
Memorandum and Order is posted on the United States District Court for the
District of Columbia's website. *See* https://www.dcd.uscourts.gov/unsealed-orders-
opinions-documents/Grand%20Jury/2022 (last visited Jan. 15, 2024).

Whether continued sealing of the warrant materials is merited must be based on current circumstances. *See Leucadia*, 998 F.2d at 167 (advising that "continued sealing must be based on *current evidence* to show how public dissemination of the pertinent materials *now* would cause . . . harm" (emphasis in original; internal citations and quotations omitted)); *In re Los Angeles Times Commc'ns LLC*, 28 F.4th at 298 (remanding, in light of recent public disclosures, a case that concerned whether to unseal warrant materials relating to a search involving then Senator Richard Burr in connection with an investigation regarding insider trading).

Recognizing that much has been made public about the underlying investigation in this case since it filed its brief in opposition to the newspapers' application to unseal, at the oral argument and in its supplemental briefs, the United States refocuses its arguments on the fact that the investigation is still ongoing. And the United States contends that its "interests in protecting an ongoing investigation and the privacy interests of potential witnesses and unindicted individuals require" that the warrant materials remain sealed. *Doc. 59* at 2. We address each of these interests in turn.

We begin with the United States' assertion that it has a compelling interest in maintaining the integrity of the ongoing investigation. "Protecting the integrity and secrecy of an ongoing criminal investigation is a well-recognized compelling governmental interest." *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1262; *see*

*also In re Sealed Case*, 77 F.4th at 830 (stating that the United States' interests in "preserving the integrity and maintaining the secrecy of its ongoing criminal investigation of the events surrounding January 6, 2021" "are 'particularly acute where, as here, the investigation is ongoing'" (quoting *Matter of Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020))). "In the context of an ongoing criminal investigation, the legitimate governmental concerns include whether: (1) witnesses will be unwilling to cooperate and provide truthful information if their identities might be publicly disclosed; (2) law enforcement's ability to use certain investigative techniques in the future may be compromised if these techniques become known to the public; (3) there will be an increased risk of obstruction of justice or subornation of perjury if subjects of investigation know the investigative sources and methods; and (4) if no charges are ultimately brought, subjects of the investigation will suffer reputational damage." *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1262. Although "[m]ost of the cases discussing these principles arise in the grand jury setting[,]" "[t]he same concerns also apply to a pre-indictment search warrant." *Id*. "At the pre-indictment stage, the Government's need to conceal the scope and direction of its investigation, as well as its investigative sources and methods, is at its zenith." *Id*.

Here, although there has been an indictment, the United States emphasizes that the investigation is ongoing.  It points to the August 1, 2023 statement of Special Counsel Jack Smith announcing the indictment of former President Trump.  *See* https://perma.cc/MJ5V-AVJ6.  The Special Counsel stated, in pertinent part: "Since the attack on our Capitol, the Department of Justice has remained committed to ensuring accountability for those criminally responsible for what happened that day. This case is brought consistent with that commitment, and our investigation of other individuals continues." *Id*.  The United States contends that even though there have been "[f]actual developments" since it filed its opposition to the newspapers' application to unseal, it still has a "compelling interest in preserving the integrity of an ongoing investigation[.]" *Doc. 59* at 2.  More specifically, the United States argues:

> The search warrant affidavit at issue here focuses on unindicted individuals.  It includes significant amounts of information about the investigation that remains nonpublic.  It also interweaves public and nonpublic information in a manner that would be difficult to disentangle.  Moreover, if disclosed in this context, otherwise public information in the affidavit would reveal something new: the significance of that information to the investigation.  Revealing information demonstrating why the government was seeking information from Rep. Perry's phone could also disclose the direction and scope of the

ongoing investigation, thereby alerting potential additional
subjects or targets.

*Id*. at 3–4.  The United States also argues that its "interest in protecting confidential

investigative techniques, sources, and methods—the disclosure of which could

harm both this and future investigations—remains compelling." *Id*. at 4.[19]

In cases where there is an ongoing investigation—both preindictment and

post indictment—courts have recognized the United States' interests in protecting

its ongoing in investigation and protecting its sources and methods.  For example,

Chief Judge Boasberg in the Twitter case agreed that the United States' interests in

this regard "are compelling interests that deserve significant weight" and that is so

"even after an indictment has been issued, as long as the investigation is ongoing."

*In re Access*, 2023 WL 8254630, at *6–7.  And Magistrate Judge Reinhart in the

Mar-a-lago case gave great weight to the fact that the warrant affidavit in that case

"discloses the sources and methods used by the Government in its ongoing

investigation." *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1263–64.

Similarly, in connection with determining whether the warrant materials relating to

a January 2022 search of Representative Henry Cuellar's home and campaign

---

[19] In their reply brief, the newspapers make a legal argument that reliance by
the United States on grand jury secrecy would be misplaced. *See doc. 45* at 12–13.
In its supplemental briefs, the United States has not responded to that argument.
Nor does it develop an argument that it has a compelling interest in avoiding
disclosure of materials that are subject to grand jury secrecy rules.  Thus, we do not
address that issue further.

office should remain under seal, Magistrate Judge Edison found the United States'

interests in protecting its investigation compelling. *In re Associated Press*, No.

5:22-MC-00111, 2023 WL 5671289, at *6 (S.D. Tex. Sept. 1, 2023); *see also In re*

*Search Warrants Issued Nov. 30, 2022*, No. 22-MJ-1897, 2023 WL 5593959, at *4

(E.D. Pa. Aug. 29, 2023) (concluding, in connection with a motion based on the

Fourth Amendment and the common law to unseal affidavits in support of search

warrants, that because there was an ongoing grand jury investigation that

"unsealing the affidavit would reveal the identities of several witnesses in addition

to sources or records and documents referenced in the affidavit"); *United States v.*

*Cohen*, 366 F. Supp. 3d 612, 623 (S.D.N.Y. 2019) (concluding that parts of the

warrant materials related to an ongoing investigation should be remain sealed);

*United States v. Pirk*, 282 F. Supp. 3d 585, 602 (W.D.N.Y. 2017) ("The

Government's stated need to maintain confidentiality due to the ongoing nature of

its investigation is a legitimate basis to justify maintaining the sealing of

significant portions of the search warrant affidavit.").

Next, we turn to the United States' assertion that "the privacy interests of

potential witnesses and unindicted individuals remain compelling." *Doc. 59* at 5

(footnote omitted). Courts have recognized that reputational and "privacy rights

may outweigh the public's interest in disclosure." *United States v. Smith*, 776 F.2d

1104, 1113 (3d Cir. 1985) ("Smith I") (addressing an appeal from an order denying

press access to a bill of particulars that listed unindicted co-conspirators and persons who could conceivable by considered unindicted co-conspirators and citing cases for the proposition that "whether appellant's right of access is grounded on the First Amendment right of access to judicial proceedings or on the common law right of access to judicial documents, privacy rights may outweigh the public's interest in disclosure"); *see also In re Access*, 2023 WL 8254630, at *5–6 (recognizing as supporting sealing the warrant affidavit in that case that "[t]wo distinct privacy interests are at stake here: those of 'the swearing government agent' and those of 'individuals and entities (in addition to former President Trump) that the government considers relevant to the investigation'" (internal citation omitted)); *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1263–64 (giving great weight to the "significant likelihood that unsealing the Affidavit would harm legitimate privacy interests by directly disclosing the identity of the affiant as well as providing evidence that could be used to identify witnesses"); *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) (recognizing that if unsealing of warrant materials would "damage an unindicted target's reputation while leaving no judicial forum to rehabilitate that reputation" "the district court has discretion to make redactions prior to unsealing or, where necessary, to leave the materials under seal"). But "[m]ere embarrassment is insufficient to overcome the strong presumption of public access inherent in the

common law right." *In re Avandia Mktg.,* 924 F.3d at 679. Further, "privacy interests are substantially diminished" where the individual's involvement has already been made public. *United States v. Smith*, 787 F.2d 111, 116 (3d Cir. 1986).

Here, the warrant affidavit is very detailed, and it names many individuals. Although the main parties may have already been identified in connection with other sources, such as the January 6th Report and the indictments in the District of Columbia and Georgia, the affidavit in this case mentions other more minor or peripheral players. And it includes addresses, phone numbers, and email addresses for many of them. Thus, there is a basis to keep under seal at least some information in the warrant affidavit for privacy reasons. *See Cohen*, 366 F. Supp. 3d at 625 (concluding that the names and descriptions of "peripheral characters" who may nonetheless be "stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing, combined with the inability of these third parties to clear their names at trial" warrant redaction). Further, as to peripheral characters, public notoriety from being named in the warrant affidavit may lead to harassment. *See generally In re Sealed Search Warrant*, 622 F. Supp. 3d at 1263 ("Given the public notoriety and controversy about this search, it is likely that even witnesses who are not expressly named in the Affidavit would be quickly and broadly identified over social media and other communication channels, which

could lead to them being harassed and intimidated.").  And there is a history of the those identified in connection with the investigation into the 2020 election being targeted. *See United States v. Trump*, No. 23-3190, 2023 WL 8813752, at * 1–3, 13–14 (D.C. Cir. Dec. 8, 2023) (affirming in part and vacating in part the district court's order restraining the parties and their counsel from making public statements that target parties, counsel, court personnel, and witnesses in the criminal case against former President Trump and explaining how some persons named in connection with the election investigation and the criminal case against former President Trump have been subject to threats and abuse).

The newspapers argue that the United States understates how much information about the investigation at issue has already been made public while overstating its claim that unsealing will harm its ongoing investigation and the privacy interests of those involved.  Those arguments are not without force.  But given the ongoing investigation and the broad nature of the warrant affidavit in this case, as to some parts of the warrant materials, the United States has shown that it has compelling interests in continued sealing at least parts of the warrant materials.

### 3. The United States has not shown that targeted redactions are insufficient to protect its interests.

Although the United States has shown compelling reasons for not unsealing the warrant materials in their entirety, "it is not enough for the Government to

plausibly assert that the documents in question contain sensitive information about an ongoing investigation; the Government must also show that specific sensitive information cannot be protected via redactions." *In re Forbes Media LLC*, No. 21-MC-52, 2022 WL 17369017, at *8 (W.D. Pa. Dec. 2, 2022). Thus, we turn to the question whether the United States has shown that the entirety of the warrant materials should be remain under seal or whether targeted redactions are sufficient to protect the United States' interests.

Although we must consider whether redactions are sufficient to protect the United States' interests in secrecy, the Third Circuit has recognized that in some circumstances redactions are not sufficient to protect the interest in secrecy. *Thomas*, 905 F.3d at 283 (concluding that redacting the plea document at issue in that case "would not sufficiently protect [the United States'] interests in confidentiality of sensitive information and individual's safety"). Here, the United States contends that redacting the warrant materials would not sufficiently protect its interests in safeguarding its ongoing investigation and protecting the privacy interests of those named in the affidavit.

The United States specifies that redactions are not appropriate because "to the extent that there is already public information included in the affidavit, it is interwoven with nonpublic information in a narrative that would permit sophisticated readers to discern the information underlying redactions." *Doc. 59* at

46

9.  And when pressed by the court at oral argument to explain why information that is already out in the public should not be unsealed, the United States responded that the amount of information that could be unredacted would be limited; the redactions may create confusion; and given the context, even if redacted, the warrant materials could reveal information relevant to the ongoing investigation:

> . . . the amount of information that could be unredacted would be quite limited, and it would be -- it could create confusion as to what the meaning of the probable cause statement is.
>
> It could also be misleading as to what information was under the redactions.  And it would be so extensive as to -- the information that would have to be redacted would be so extensive so as to render the resulting redacted document almost meaningless.
>
> And I should also point out that the fact that information may have been released publicly in one context doesn't mean that in a different context it can[not] have a different meaning and reveal information that goes to an aspect of the investigation that remains ongoing.
>
> So, in other words, the same information can have different implications for context, and that goes to why the affidavit must remain under seal in its entirety at this point.

*Id*. at 15-16.  The United States also pointed out that the none of the search warrant materials from the D.C. Perry case have been unsealed. *Id*. at 16.  And, it continued, when then "Chief Judge Howell issued her order unsealing . . . several of her judicial opinions in [the D.C. Perry case] . . . she specifically said that any specific details concerning the government's investigation, such as discussions of the D.D.C. warrant, have been redacted, mitigating concerns that disclosure of

these judicial records in redacted form would pose harm to the government's ongoing investigation." *Id*. When pressed further why things like definitions should not be unsealed, the United States responded that there is not much value[20] to releasing only that part of the affidavit and that those "would likely be part of explaining the government's investigative methods and techniques that it intended to utilize in connection with that search warrant affidavit, and it's our position that disclosing that type of information could be harmful to both this investigation and future governmental investigations." *Id*. at 17–18.

To be sure, courts have concluded that there are circumstances where redaction of a warrant affidavit is not sufficient to protect legitimate interests in keeping documents sealed. *See In re Search Warrants Issued Nov. 30, 2022*, 2023 WL 5593959, at *4 (concluding that redaction was not a solution given that it "would result in a long series of blank pages being produced because disclosure of information throughout the affidavit would allow anyone familiar with the activities described therein to identify witness identities and information sources, and would likely disrupt the grand jury proceedings" and "[t]he remaining

_____

[20] The United States' suggestion that what little could be unsealed would not benefit or interest the public is misguided. It is the public—here through the press—not the United States that should determine what is of benefit or interest to the public. *Cf. Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 104 (1979) ("A free press cannot be made to rely solely upon the sufferance of government to supply it with information.").

information, such as the agent's background qualifications and the workings of computers and digital storage retrieval, are irrelevant to Petitioners' request"); *In re Search Warrant*, No. 22-MJ-742 (TNL), 2022 WL 17104071, at *1–5 (D. Minn. Nov. 22, 2022) (concluding in connection with a motion to unseal warrant materials relating to the search of Michael J. Lindell and the seizure of his phone— which search, according to the court, "relate[s] to allegations involving the legitimacy and security of this Country's presidential election and political process"—that "there is no practical way to order redactions" given the detailed nature of the warrant affidavit and "references to the complex and interrelated nature of the allegations and the large number of individual and activities involved" (internal quotation marks and citation omitted)); *Pirk*, 282 F. Supp. 3d at 602 (recognizing that the search warrant affidavit set forth some "information that has already been disclosed as part of the proceedings in [the] case, including, for instance, background information about the [Kingsmen Motorcycle Club]" and that "disclosing that information would not compromise the ongoing investigation," but concluding nevertheless that "because the confidential witness information encompasses a large portion of the affidavit and is contained throughout the affidavit, redaction of that information from the affidavit would render the affidavit of little use").

We also note that in the Twitter case, Chief Judge Boasberg concluded that the warrant affidavit in that case should remain entirely under seal. In addressing whether the extent of previous public access favored unsealing, he observed that "the documents contain an unruly mix of secret and public facts":

> Some of the details in the sealed materials are not just nonpublic, but are arguably related to the operation of the grand jury, a type of information ordinarily protected by the most stringent of secrecy rules. Balancing out that fact, conversely, the documents also refer to a good deal of publicly available evidence. In the Government's words, "the affidavit interweaves into its narrative facts made public elsewhere—such as in the indictment, in unrelated court filings, . . . in congressional proceedings," and in "press reports." Gov't Resp. at 4, 14. Some of those widely known facts nonetheless remain sensitive, as unsealing them would allow the public to discern which facts the Government views as reliable and relevant and give readers insight into the "scope and direction" of its investigation. In re Sealed Search Warrant, 622 F. Supp. 3d 1257, 1262 (S.D. Fla. 2022). By contrast, the Court strains to understand how revealing facts already included in the public indictment—as opposed to facts made public elsewhere in, say, press reports—would divulge any new information about the focus of the Government's investigation. The facts at issue, then, run the gamut from highly sensitive to entirely public.

*In re Access*, 2023 WL 8254630, at *5. Although Chief Judge Boasberg doubted that revealing some of the facts already made public would divulge new information, he nevertheless concluded that redaction was not an appropriate alternative to sealing:

Conducting the Hubbard analysis [21] separately for the public and nonpublic facts within the sealed documents would entail hard work for little reward. The Government raises serious practical concerns with redacting all but entirely public and non-sensitive information, which is "inextricably intermingled" with more sensitive details. See Gov't Resp. at 14. Having reviewed the documents, the Court agrees that a piecemeal treatment of their contents would serve little purpose; the required redactions would leave them difficult to read and of little value to the public above and beyond what it already has access to. Cf. Miller I, 438 F.3d at 1140 (unsealing subpoena in part where investigation ongoing because "discrete portions of the eight pages can be redacted without doing violence to their meaning"). Where redactions are clearly practicable, moreover, the Court has already ordered unsealing. See Order to Release Documents.[22] To sum up, this factor does not move the needle in either direction because of the mix of secret, somewhat public, and fully public particulars weaved together in the documents.

In re Access, 2023 WL 8254630, at *5. Chief Judge Boasberg also concluded that

redactions would not be sufficient to protect the privacy interests of those named in

the affidavit because given the high-profile nature of the investigation into the

2020 election, it is "'likely that even witnesses who are not expressly named in the

Affidavit would be quickly and broadly identified over social media and other

communication channels, which could lead to them being harassed and

---

[21] The Hubbard analysis refers to a multi-factor test that the United States Court of Appeals for the District of Columbia Circuit set forth in United States v. Hubbard, 650 F.2d 293, 295 (D.C. Cir. 1980), and that is used in that Circuit to access whether documents should be sealed or unsealed.

[22] The unsealing referred to here was to documents other than the warrant affidavit.

intimidated." *Id*. at 6 (quoting *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1263). And he noted that "the media has already engaged in speculation about redacted identities of those discussed in the Indictment." *Id*.

In the cases cited above, the courts accepted the United States' argument that redactions would not be sufficient to protect its interests. In other circumstances, however, courts have concluded that redactions would be sufficient to protect the United States' interests and would be an appropriate alternative to wholesale sealing. For example, Chief Judge Hornak from the Western District of Pennsylvania so concluded in connection with motions to unseal documents related to a case involving the All Writs Act ("AWA"), including the United States' "Application seeking third-party assistance in the execution of an arrest warrant." *In re Forbes Media LLC*, 2022 WL 17369017, at * 1, * 9. In addressing the issue of redactions, he observed that "[r]equiring the opponent of access to show that partial redaction is inadequately protective of the articulated interest at issue is a natural extension of the balancing exercise that district courts must engage in when determining whether the common law presumption of access has been outweighed by some competing interest[,]" and "[t]here is a thumb on the scale in favor of access[.]" *Id*. at * 8 (citing *In re Avandia Mktg.*, 924 F.3d at 676). "[O]nly when it is not reasonably possible to serve the competing interest *while also* respecting the public's right of access—for example, here, by redacting identifying information

while releasing non-identifying information—that the presumption of public access is overcome and wholesale, continued sealing is lawful." *Id*. (italics in original).  In that case, Judge Hornak concluded that there had been "public disclosure of similar investigative activity[,]" and although the documents at issue contained "information that could be construed as posing a threat to the ongoing investigation if it were publicly available[,]" the documents also contained information that would not present such a threat. *Id*.  He also concluded that as to the United States' assertion regarding its interest in protecting its sources and methods, the United States failed to show that "the sources and methods at issue here are any different or more sensitive than the sources and methods at issue in AWA materials that have already been publicly released *with the Government's consent*." *Id*. at * 9 (italics in original).  Thus, he concluded that specific redactions, rather than continued wholesale sealing, was sufficient to protect the United States' interests. *Id*. at * 9–10.

Also, as set forth above, in the Mar-a-lago case, although the United States argued that "the necessary redactions 'would be so extensive as to render the document devoid of content that would meaningfully enhance the public's understanding of these events beyond the information already now in the public record[,]'" Magistrate Judge Reinhart concluded that  while he "may ultimately reach that conclusion after hearing further from the Government," the record that

was then before him did not justify keeping the entire affidavit under seal. *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1265 (internal citations omitted). And he ordered the United States to submit proposed redactions. *Id.* That process led to a redacted affidavit that is available to the public. *See* 9:22-mj-08332 (S.D. Fla.) at *doc. 156-1*.

These different outcomes reflect the basic fact that each case must be decided on its own facts. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978) (footnote omitted) (noting that the trial court should exercise its discretion regarding sealing "in light of the relevant facts and circumstances of the particular case"). And here, it is not clear that redactions are not a viable alternative to continued sealing.

At the outset, we note that the United States' arguments that redactions would be unworkable and would not be sufficient to protect its interests are general. The United States has not specifically shown why it could not make targeted redactions to the warrant materials. Further, given the vast amount of information that is already publicly available regarding the investigation at issue here as well as our own reading of the affidavit and other warrant materials, it is not readily apparent why redactions would not be appropriate. Moreover, although the United States asserts that it has released everything that can appropriately be released, that assertion is undercut by redactions that the United States made to

some of the warrant materials. For example, although the United States submitted a redacted version of the search warrant,[23] among the redactions that it made was redacting an entire paragraph of one of the attachments (attachment B-1) to the warrant that Representative Perry had previously quoted word-for-word in his first D.C. case. *See doc. 1* at 2 in *Perry v. United States*, 1:22-mc-00079.

Considering the above, the United States' assertion that redactions are not workable rings hollow. When considering whether redactions—rather than maintaining the warrant materials under seal—are appropriate, we are constrained to agree with the newspapers that the United States "has never seriously reckoned with the facts of this particular case, including the extraordinary volume of information already public" *Doc. 61* at 4–5. The United States should be made to do the hard work of going through the warrant materials in detail, and rather than merely presenting general arguments, should be held to its burden of showing that its interests outweigh the presumption of access.

Thus, like in the Mar-a-lago case, in this case, the United States should be ordered to propose redactions. To be clear, although the fact that much information has been made public during the course of the proceedings in this case figures heavily in our recommendation, we are not suggesting that only that which has already been made public should be disclosed. *See Cohen*, 366 F. Supp. 3d at

---

[23] *See supra*. note 7.

626 ("Further, the Government's objection that the search warrant affidavits include more detail than what has already been reported by the media is immaterial because the Government fails to articulate any privacy interest that may be harmed by disclosure.").  Rather, the United States' proposed redactions should include only those parts of the warrant materials that have not already been made public <u>and</u> as to which the United States can show it has an interest in secrecy that outweighs the presumption of access under the common law.

### B.  First Amendment.

In addition to the common law presumption of access, the First Amendment may also be implicated when the government seeks to keep proceedings or documents under seal.  The public and the press generally have a First Amendment right of access to both criminal and civil trials and proceedings. *See N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 428–29 (3d Cir. 2016) ("In *Richmond Newspapers, Inc. v. Virginia*, [448 U.S. 555 (1980)], the Supreme Court held that the First Amendment guarantees the public, and thus the press, a right of access to criminal proceedings."); *In re Avandia Mktg.,* 924 F.3d at 673 (observing that "the public and the press have a First Amendment right of access to civil trials").  "That right of access can include documents involved in the proceedings." *N. Jersey Media Grp.,* 836 F.3d at 429.  "The First Amendment right of access

requires a much higher showing than the common law right to access before a judicial proceeding can be sealed." *In re Cendant Corp.*, 260 F.3d at 198 n. 13.

"Courts determine whether the public has a qualified First Amendment right to documents by considering first whether the 'process ha[s] historically been open to the press and general public,' and second, 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Wecht*, 484 F.3d at 208 n.19 (quoting *Press–Enter. Co. v. Superior Court of Cal., County of Riverside,* 478 U.S. 1, 8 (1986)). This is called the "experience and logic" test. *PG Pub. Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013). If the experience and logic test is satisfied, "a qualified First Amendment right to public access attaches." *Press–Enter. Co.,* 478 U.S. at 9.

"But even when a right of access attaches, it is not absolute." *Id*. If the First Amendment applies, "it gives rise to a strong presumption of access[.]" *N. Jersey Media Grp.,* 836 F.3d at 429. And "any restraint on that right is then evaluated under strict scrutiny." *Aichele*, 705 F.3d at 104. Sealing is warranted "only if it 'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" *Smith I*, 776 F.2d at 1112 (quoting *Press-Enter. Co.*, 464 U.S. at 510). Before sealing a proceeding or records, the court "must make 'particularized findings . . . on the record in each case, (1) establishing the existence of a compelling governmental interest, and (2) demonstrating that absent

limited restrictions upon the right of access, that other interest would be substantially impaired.'" *Thomas*, 905 F.3d at 282–83 (3d Cir. 2018) (quoting *United States v. Smith*, 123 F.3d 140, 147 (3d Cir. 1997)).

Neither the Supreme Court nor the Third Circuit have decided whether the First Amendment applies to warrant materials. The Courts of Appeals that have addressed that issue are split, with three holding that it does not, *see In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) (holding that "there is no First Amendment right of access to documents filed in search warrant proceedings"); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989) (holding "that the press does not have a first amendment right of access to an affidavit for a search warrant"); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989) (holding that "[t]he public has no qualified First Amendment right of access to warrant materials during the pre-indictment stage of an ongoing criminal investigation"), and one holding that it does, *see In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988) (holding "that the qualified first amendment right of public access extends to the documents filed in support of search warrants").

"A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445

(1988). Based on that principle, courts often "decline[] to tackle the contours of the First Amendment right of public access when the common law right has been sufficient to permit access." *In re Avandia Mktg.,* 924 F.3d at 679 (citing cases). Here, because we are recommending based on the common law right of access that the United States propose redactions to the warrant materials, we need not determine at this time whether the First Amendment applies to the warrant materials at issue in this case. Whether the First Amendment applies may need to be resolved if any of the redactions that the United States proposes would be appropriate under the common law, but not under the First Amendment. But unless or until that is determined, given the doctrine of constitutional avoidance, we do not decide whether the First Amendment applies.

### C.  Summary.

In summary, we conclude that we need not determine at this time whether the First Amendment applies to the warrant materials, that the warrant materials are subject to the common law presumption of access, that the United States has shown compelling reasons for not unsealing the warrant materials in their entirety, but the United States has not shown that targeted redactions are insufficient to protect its compelling interests. Thus, we recommend that the United States be ordered to submit proposed redactions.

Anticipating that the court may order redactions, the parties differ on the process surrounding those redactions. The United States asserts it should be allowed "to file proposed redactions *ex parte* for the Court's consideration" as we have done in connection with the briefs in this case. *Doc. 60* at 7 n.1. The newspapers, on the other hand, contend that the court should order the United States to file its proposed redactions on the docket and explain why the portions redacted should remain secret. *Doc. 58* at 5. As the newspapers point out, that was the process initially used on remand in the case regarding the warrant materials relating to the search of then Senator Burr. *See In re Los Angeles Times Commc'ns LLC*, 628 F. Supp. 3d 55, 61 (D.D.C. 2022). Although additional proceedings were required in that case—and may be required in this case—the process of requiring the United States to file proposed redactions on the public docket appears most respectful of the common law presumption of access. Thus, we recommend that the court order the United States to publicly file its redactions along with as much of an explanation as it can provide on the record without harming it interests, discussed above, in protecting its ongoing investigation and the privacy rights of some of those involved. If the United States needs to provide the court with additional information to support its redactions that may reveal information that should be keep secret, we recommend that it be permitted to provide such information under seal and ex parte either in writing or at a hearing. If the court

adopts this report and recommendation, the undersigned stands ready to assist with any additional proceedings the court may wish to refer to her.

## IV. Recommendation.

Based on the foregoing, we recommend that the court grant the newspapers' application to unseal to the extent that the court order the United States to provide access to the warrant materials with targeted redactions to protect its interests.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of January, 2024.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge