## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE APPLICATION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNSEAL COURT RECORDS | ) ) ) ) ) ) |

No. 1:22-MC-756

(Judge Wilson)

## GOVERNMENT'S OBJECTIONS TO
## REPORT & RECOMMENDATION

Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 73.2, the United States of America respectfully lodges the following objections to Magistrate Judge Susan E. Schwab's Report and Recommendation of January 19, 2024. *See* ECF No. 65. Specifically, the government objects to the recommendations (1) that redactions are sufficient to protect the compelling interests that require the search warrant materials at issue to remain under seal; and (2) that the government be ordered to file on the public docket, in the first instance, proposed redacted versions of the search warrant materials that remain at issue.

For the reasons set forth in the accompanying brief in support, the Court should not adopt these recommendations, and should instead keep the search warrant materials that remain at issue entirely under seal.

At a minimum, the Court should order the government to file proposed redactions to those documents *ex parte* and under seal in order to consider—as an initial matter and prior to any additional disclosures—whether the redactions required to protect compelling governmental interests are so extensive as to render the resulting documents unintelligible or misleading, such that they should not be unsealed.

Dated: February 9, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division
Federal Programs Branch

*/s/ Leslie Cooper Vigen*
Leslie Cooper Vigen
Senior Trial Counsel
Civil Division
Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Email: Leslie.Vigen@usdoj.gov
Tel: (202) 305-0727

*Counsel for the United States*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | ) | No. 1:22-MC-756 |
| IN RE APPLICATION OF | ) | |
| PENNLIVE, YORK DAILY | ) | (Judge Wilson) |
| RECORD, AND YORK DISPATCH | ) | |
| TO UNSEAL COURT RECORDS | ) | |
| | ) | |

## BRIEF IN SUPPORT OF GOVERNMENT'S OBJECTIONS TO REPORT & RECOMMENDATION

This matter involves an attempt by three news organizations (the Applicants) to unseal a search warrant, issued upon a showing of probable cause, and associated materials, which are connected with an ongoing investigation into serious alleged crimes.   Judge Schwab properly ordered these materials sealed when the warrant was issued. The government has since agreed that certain materials could be made public in light of changed factual circumstances, but it objects to the recommendations as to additional unsealing.  Report & Recommendation (R&R), ECF No. 65.

Specifically, although Judge Schwab correctly determined that compelling governmental interests supported continued sealing of certain information in the search warrant materials, the report and recommendation erred in (1) recommending that the compelling interests

that necessitate secrecy could be adequately protected by redactions and defining the privacy interests that require sealing too narrowly; and (2) recommending that the government be ordered to file on the public docket redacted versions of the search warrant materials that remain at issue: the search warrant application, including the affidavit in support; the return; and a less-redacted version of the warrant as issued.[1]

As the government has argued, these materials must remain sealed to protect the integrity of an ongoing investigation and the privacy interests of witnesses and unindicted individuals. The specific information that must remain sealed to preserve these compelling interests is inextricably intertwined with public information such that redactions would be insufficient to protect that information. Moreover, the number of redactions required would render the resulting redacted documents devoid of content, and even misleading. Indeed, applying this logic, the Chief Judge of the U.S. District Court for the District of Columbia recently held that a search warrant affidavit associated with the same investigation, and involving the same considerations at issue

---

[1] A redacted version of the search warrant as issued is already public, with the government's consent. *See* ECF No. 64-1.

here, must remain entirely under seal.  *See In re Press Application for Access to Judicial Records in Case No. 23-SC-31* (*In re Press Application*), --- F. Supp. 3d ----, No. 23-mc-84, 2023 WL 8254630, at *5–7 (D.D.C. Nov. 29, 2023).  This Court should follow suit.

At a minimum, it would be premature for the Court to conclude that redactions are a viable option without first considering the government's proposed redactions, and any specific explanation for those redactions, *ex parte* and under seal.  Ordering the government to file proposed redactions *ex parte* and under seal would allow the Court to determine, in a concrete context and as an initial matter, whether the redactions required to protect the government's compelling interests are so extensive as to render the resulting documents effectively meaningless, misleading, or so unduly confusing, they should remain entirely under seal.  It would also be consistent with standard practice in other courts and Judge Schwab's practice to date in this matter.

Thus, for the reasons explained herein, the Court should order continued sealing of the search warrant application, including the affidavit in support, and the search warrant return in their entirety, and should not require redactions to be removed from the current public

version of the search warrant as issued. Should the Court deem it necessary for the government to file proposed redactions to these documents—which it should not—it first should order those redactions and any explanations to be filed *ex parte* and under seal.

## BACKGROUND

On August 2, 2022, the government applied for and received from Judge Schwab a Rule 41 warrant for the search of U.S. Representative Scott Perry. *See* ECF No. 64-1. The government filed a 76-page affidavit in support of the search warrant application, which contains sensitive information about the swearing government agent; personally identifying information, including telephone numbers and email addresses, of Rep. Perry and others; specific communications between Rep. Perry and others; and other nonpublic information relevant to the government's investigation. *See* Gov't Opp'n to App. (Opp'n) 3–5, ECF No. 9 (sealed version); ECF No. 44-1 (redacted public version). Moreover, although a search warrant is not a formal allegation of a crime, the affidavit's narrative, if unsealed, would essentially levy such allegations against a number of unindicted individuals. *See id.* at 5. The warrant was executed on August 9, 2022, and a return filed. *See* ECF No. 57-1.

Judge Schwab ordered the warrant application and associated materials to be sealed until further order of the court. *See* ECF No. 57-2.

The government subsequently obtained on August 18, 2022, in the District of Columbia, a second warrant authorizing a search of the contents of the forensic extraction of Rep. Perry's cell phone based on probable cause that it contained evidence of federal crimes. That warrant and related materials were likewise sealed—and remain so.

On September 29, 2022, Applicants filed an application in this District seeking an order "unsealing the executed warrant, the warrant application, any supporting affidavits, the return, the docket sheet, any subsequent warrants issued, and any other judicial records related to the warrant." App., ECF No. 1. At the time, the government had not acknowledged the existence of the warrant or of the underlying investigation, and no indictment had issued in connection with it. *See* Opp'n 3, 7–8. Accordingly, the government initially opposed any unsealing of the search warrant materials. *See generally id.*

Since the application was filed, the fact of the investigation and the fact of the search warrant have been made public by the government or federal courts, and an indictment as to one defendant has issued in

5

connection with the investigation.[2]   First, the Attorney General acknowledged "an ongoing investigation into . . . efforts to interfere with the lawful the transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021" when appointing a Special Counsel.  *See* Office of the Attorney General, Order No. 5559-2022 (Nov. 18, 2022), https://perma.cc/AE9P-3N4U.  At that point, however, the connection of the warrant at issue here to that investigation remained unacknowledged.

Next, on February 23, 2023, the D.C. Circuit Court of Appeals held an oral argument that was, in part, open to the public regarding Rep. Perry's challenge to the D.C. search warrant pursuant to the Speech or Debate Clause of the U.S. Constitution.  On February 24, 2023, then-Chief Judge Beryl Howell of the District of Columbia ordered unsealed redacted versions of four opinions and orders issued in district court concerning the same matter.  *See In re Search of the Forensic Copy of the Cell Phone of Rep. Scott Perry*, No. 22-sc-2144, ECF No. 45 (D.D.C. Feb. 24, 2023), *available at* https://perma.cc/QE94-4SKQ.  The redacted

---

[2] Certain events discussed in the affidavit have also been the subject of media reports or disclosed in connection with congressional investigations.  The relevance of those disclosures is addressed below.

versions of those opinions confirmed the fact of this search warrant and
its connection to the investigation.  The unsealed opinions did not reveal
other nonpublic information about the search warrant affidavit or return,
and the court kept under seal "specific details concerning the
government's investigation," including "discussions of the D.D.C.
Warrant." *Id.* at 4.  Additional opinions concerning the Speech or Debate
Clause issue were later made public by the D.C. Circuit and D.D.C.[3] *See,
e.g.*, ECF No. 49-1 (attaching redacted D.C. Circuit opinion).

Later, on August 1, 2023, an indictment was unsealed charging
former President Donald J. Trump with four felonies arising from his
alleged attempts to "overturn the legitimate results of the 2020
presidential election." *United States v. Trump*, 23-cr-257, ECF No. 1, ¶ 7
(D.D.C.) (filed Aug. 1, 2023).  In announcing the charges against Trump,

---

[3] The government only recently obtained access to numerous non-
privileged communications seized from Rep. Perry's phone.  *See*
Memorandum Order, *In re Search of the Forensic Copy of the Cell Phone
of Rep. Scott Perry, No. 22-sc-2144*, (D.D.C. Dec. 19, 2023), *available at*
https://perma.cc/67LS-H3W5.  Moreover, just today, the D.C. Circuit
ordered redacted versions of additional records associated with Rep.
Perry's D.C. Circuit appeal to be unsealed.  *See* Per Curiam Order, *In re
Sealed Case*, No. 23-3001 (D.C. Cir. Feb. 9, 2024).  The records ordered
to be unsealed today in the D.C. Circuit do not affect the government's
position on unsealing in this matter.

Special Counsel Jack Smith stated that the "investigation of other individuals continues." *Special Counsel Jack Smith Delivers Statement*, U.S. Dep't of Justice (Aug. 1, 2023), https://perma.cc/MJ5V-AVJ6.

In light of these changed circumstances, the government agreed that certain of the search warrant materials Applicants sought to unseal could be made public: the docket, the Court's sealing order, and portions of the search warrant as issued. *See* ECF No. 57. Those documents have since been filed on the public docket in redacted form with the government's consent. *See id.*; *see also* ECF No. 64-1. The government has consistently contended, however, that compelling governmental interests require the search warrant application (including the affidavit), the warrant return, and parts of the search warrant as issued to remain entirely under seal. *See, e.g.*, ECF Nos. 59, 60.

On January 19, 2024, Judge Schwab issued a report and recommendation in which she recommended that the application be granted in part, "to the extent that the court order the United States to provide access to the warrant materials with targeted redactions to protect its interests." R&R 1. In reaching this conclusion, Judge Schwab determined that the materials at issue were subject to the common law

right of access (which the government did not contest), *id.* at 31, and found that the government had "shown compelling reasons for not unsealing the warrant materials in their entirety," *id.* These compelling interests include "protecting [the government's] ongoing [] investigation," "protecting its sources and methods," and "privacy reasons"— particularly as to personally identifying information and information about "peripheral" individuals as to whom "public notoriety from being named in the warrant affidavit may lead to harassment." *Id.* at 41–42, 44–45.

Despite having identified these compelling reasons for continued sealing, Judge Schwab found that it was "not clear that redactions are not a viable alternative to ongoing sealing" in their entirety of the documents at issue. *Id.* at 54. This conclusion was based on the determination that the government's arguments were "general" and what Judge Schwab considered to be "the vast amount of information that is already publicly available regarding the investigation at issue." *Id.* Judge Schwab thus recommended that "the United States should be ordered to propose redactions." *Id.* at 55. Citing to a single case, the court further recommended that the government be required "to publicly

file its redactions along with as much information as it can provide on the public record" as an initial matter—despite recognizing that it had consistently applied different procedures in this matter. *Id.* at 60.

After being granted a brief extension, *see* ECF No. 67, the government now files timely objections to the report and recommendation.

## STANDARD OF REVIEW

Where a magistrate judge issues a report and recommendation as to a dispositive motion,[4] the district court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* L.R. 72.3. In doing so, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" to which either party has objected. L.R. 72.3. "[E]ven absent objections to the report and recommendation," a district court must engage in "reasoned

---

[4] Although the application at issue here is not listed in 28 U.S.C. § 636(b)(1)(B), *see* L.R. 72.3, Judge Schwab correctly issued the disposition as a report and recommendation subject to *de novo* review by this Court because, if adopted, that recommendation would be dispositive of Applicants' standalone application. *See* Fed. R. Civ. P. 72(b)(1); *see also* ECF No. 15 (setting forth Applicants' views that Judge Schwab's resolution of the application to unseal would be a dispositive ruling).

consideration" and "afford some level of review to dispositive legal issues raised by the report" before the report and recommendation can become a final order. *E.E.O.C v. City of Long Branch*, 866 F.3d 93, 100 (3rd Cir. 2017) (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3rd Cir. 1987)).

## ARGUMENT

### A. Redactions Are Insufficient to Protect Compelling Governmental Interests.

Although Judge Schwab was correct to determine that the government has compelling interests in the continued sealing of the search warrant affidavit and the other documents that remain at issue, the report and recommendation understated the scope of the interests at play, and the government objects to the recommendation that redactions would be sufficient to preserve the government's important interests with respect to these documents. Instead, this Court should find that compelling reasons require the search warrant application—including the affidavit—the return, and the redacted portions of the search warrant as issued, to remain entirely under seal.

Assuming *arguendo* the common law right of access applies to the materials at issue, compelling interests overcome that right: preserving the integrity of the government's ongoing investigation and protecting

11

the privacy interests of witnesses and unindicted individuals named in the search warrant materials.   As to the former, Judge Schwab appropriately acknowledged that "where there is an ongoing investigation—both preindictment and post-indictment—courts have recognized the United States' interests in protecting its ongoing [] investigation and protecting its sources and methods."   R&R 41–42 (citing cases); *see also, e.g., In re Search of 1993 Jeep Grand Cherokee*, 1996 WL 768293 (D. Del. 1996) ("the common law right of access should yield to the government's interest in unencumbered investigations").   The Chief Judge of the District of Columbia recently reaffirmed in connection with the investigation at issue here that "the need for secrecy remains 'heighten[ed]' even after an indictment has issued, as long as the investigation is ongoing."   *In re Press Application*, 2023 WL 8254630, at *7 (quoting *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1141 (D.C. Cir. 2006)).

Judge Schwab also recognized that "there was a basis to keep under seal at least some information in the warrant affidavit for privacy reasons," focusing on the need to protect "more minor or peripheral characters."   R&R 44.   Although this concern is well founded, it

12

represents an unduly narrow understanding of the individual privacy interests requiring ongoing sealing here. Specifically, the privacy interests of all potential witnesses and unindicted individuals—not only those tangential to the investigation—remain compelling.[5] The report and recommendation fails to grapple with the fact that disclosing search warrant materials that identify individuals who have not been charged with a crime "could damage an unindicted target's reputation while leaving no forum to rehabilitate that reputation," or that revealing the identities of potential witnesses or disclosing information they provided to the government could "endanger or discourage [them] from providing evidence or testimony," even if they had previously been associated with the ongoing investigation. *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017).

As the Third Circuit has recognized, there is particular risk that revealing unindicted persons' names in connection with a filing by a

---

[5] Notwithstanding the fact that Rep. Perry's privacy interests are somewhat diminished by public statements he has made about the search warrant, he too retains a privacy interest in the nondisclosure of the details of the investigation. *See* Gov't Reply 9, ECF No. 37-2. Rep. Perry has opposed release of judicial records concerning this investigation in a different court. *See* Mem. & Order 2, *In re Search of the Forensic Copy of the Cell Phone of Rep. Scott Perry*.

prosecutor—like a statement of probable cause—could "communicate to the general public that the named individuals are guilty" without providing "an opportunity to prove their innocence." *United States v. Smith* (*Smith I*), 776 F.2d 1104, 1113–15 (3d Cir. 1985). Disclosing sealed search warrant materials could also create "mistaken notions concerning who might and might not be cooperating with the government or who may be subjects," and threaten "the privacy of the innocent and the implicated." *In re Eye Care Physicians*, 100 F.3d 514, 519 (7th Cir. 1996). Along these lines, a court in the Eastern District of Pennsylvania recently denied an application to unseal search warrant materials based on the "primary concern . . . that unsealing the affidavit would reveal the identities of several witnesses." *In re Search Warrants Issued Nov. 30, 2022*, No. 22-mj-1897, 2023 WL 5593959, at *4 (E.D. Pa. Aug. 29, 2023).

Protecting the privacy interests of witnesses and unindicted individuals named in the search warrant materials is particularly important in this case where disclosure presents a specific risk of actual harm. Just two months ago, in connection with the criminal case associated with this investigation, the D.C. Circuit upheld portions of a speech-constraining protective order issued against the defendant

14

because "some aspects of Mr. Trump's public statements pose a significant and imminent threat to the fair and orderly adjudication of the ongoing criminal proceeding." *United States v. Trump*, 88 F.4th 990, 996 (D.C. Cir. 2023).  The D.C. Circuit explained:

> The record shows that Mr. Trump has repeatedly attacked those involved in this case through threatening public statements, as well as messaging daggered at likely witnesses and their testimony.  For example, the day after his initial appearance in court, Mr. Trump issued a warning: "IF YOU GO AFTER ME, I'M COMING AFTER YOU!"  The former President has gone after known and potential witnesses, and others closely involved in the 2020 election events around which the indictment and criminal trial center. . . .  The record also shows that former President Trump's words have real-world consequences. Many of those on the receiving end of his attacks pertaining to the 2020 election have been subject to a torrent of threats and intimidations from his supporters.

*Id.* at 1010–11 (internal citations omitted).  Similarly, in granting a motion to seal by the government, the district court in the criminal case gave "substantial[]" weight to the concern that members of the public "might use sensitive witness information in ways that intimidate witnesses or otherwise threaten the integrity of the proceedings," noting that "individuals whose identifying information and transcripts are redacted have already been harassed and threatened." *United States v. Trump*, No. 23-257, 2023 U.S. Dist. LEXIS 164696, at *6–7 (D.D.C.

Sept. 15, 2023). The government seeks to keep the search warrant materials sealed, in part, to guard against additional serious harms to prospective witnesses and unindicted coconspirators of the sort already recognized by the D.C. Circuit and D.C. district court. This Court should find that all of these concerns present compelling individual privacy interests that require protection from disclosure.

With a proper understanding of the scope of the compelling interests that require continued sealing, it is apparent that redactions are unavailable here. That is because the redactions required to preserve these interests would be so extensive that the resulting documents would be nonsensical or, even worse, misleading. *See United States v. Amodeo*, 71 F.3d 1044, 1052–53 (2d Cir. 1995) (district court abused its discretion by ordering release of document "rendered unintelligible as a result of redactions" and "thus more likely to mislead than to inform the public"). As an initial matter, the search warrant affidavit focuses on unindicted individuals and includes significant amounts of information about the investigation that remains nonpublic, requiring redaction to preserve the integrity of the ongoing investigation and individual privacy interests.

Information that is public elsewhere—particularly as a result of speculative media reports or congressional inquiries entirely separate from this criminal investigation—must also be redacted from the materials at issue in many instances, and for several reasons. The report and recommendation is incorrect insofar as it suggests otherwise. *Contra* R&R 35 n.1, 55–56.

First, information that may have been disclosed in public reporting or other contexts outside of a criminal investigation takes on a different meaning if officially revealed to be part of such an investigation. As *Smith I* recognizes, documents that have the imprimatur of "federal law enforcement official[s]" carry weight that non-official statements do not. *See* 776 F.2d at 1113–14. Other courts have similarly acknowledged in the context of the Freedom of Information Act that, "even if a fact . . . is the subject of widespread media and public speculation, its official acknowledgement by an authoritative source might well be new information that could cause damage." *Ashfar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983). In fact, intense media attention makes unsealing *even less* appropriate, given that comparing redacted information to public reporting may allow informed observers to easily

guess the contents of the sensitive, sealed information. *See In re WP Co.*, 201 F. Supp. 3d at 128 (concluding that "due to the degree of media attention already garnered," redaction of search warrant materials was "insufficient to protect . . . compelling privacy, reputational, and due process interests"). Thus, information that has been reported on or otherwise discussed by individuals outside the context of the criminal investigation may nonetheless require redaction in this context to preserve the government's compelling investigative and privacy interests.

What is more, disclosure of otherwise public information in the affidavit in this context would reveal something new: the significance of that information to the investigation. Making information public that demonstrates *why* the government was seeking information from Rep. Perry's phone is new information that requires protection because it could disclose the direction and scope of the ongoing investigation, thereby alerting potential additional subjects or targets. *See In re Press Application*, 2023 WL 8254630, at \*5–6.

Second, redactions of otherwise public information are necessary where public and nonpublic information are inextricably intertwined in

a manner that would be difficult to disentangle.  Courts have recognized that where public information is so interwoven with nonpublic information, revelation of only the information already made public revealed would still allow sophisticated readers (like Applicants here) to readily discern the information underlying the redactions.  *See United States v. Thomas*, 905 F.3d 276, 283 (3d Cir. 2018) ("redacting only a portion of the document . . . would not sufficiently protect [the government's] interests in confidentiality of sensitive information"); *see also In re Search Warrants Issued Nov. 30, 2022*, No. 22-mj-1897, 2023 WL 5593959, at *4 (finding that "redaction would result in a long series of blank pages being produced because disclosure of information throughout the affidavit would allow anyone familiar with the activities described therein to identify witness identities and information sources"). That is the case here, as the affidavit mixes public and nonpublic information in a way that would make it impossible to reveal information officially acknowledged by the government or courts and be left with a document that is both intelligible and appropriately protective of the government's compelling interests.

19

It therefore follows that the redactions required here would leave the materials at issue "difficult to read and of little value to the public above and beyond what it already has access to." *See In re Press Application*, 2023 WL 8254630, at *5. Encountering a similar situation involving a search warrant affidavit containing an "unruly mix of secret and public facts" concerning the same investigation at issue here, the Chief Judge in the District of Columbia determined that redactions were not a practical alternative to continued sealing. *Id.* Although the report and recommendation discusses that opinion, it does not meaningfully distinguish it or adequately explain why it reached the opposite conclusion. *See* R&R 50–52. This Court should follow the lead of the D.D.C. Chief Judge—the judge who superintended the underlying investigation—and order the search warrant application, the return, and the redacted portions of the warrant as issued to remain under seal.

## B. At a Minimum, the Court Should First Consider Any Proposed Redactions *Ex Parte* and Under Seal.

If the Court is nonetheless inclined to order the government to propose redactions, the government objects to the magistrate judge's recommendation that proposed redacted versions of the search warrant materials be filed in the first instance on the public docket. *See* R&R 60.

Instead, the Court should order the government to file proposed redactions *ex parte* and under seal and conduct an independent review of those proposed redactions and any additional nonpublic justifications for sealing to decide whether the required redactions are too extensive to support unsealing.  This review will be particularly helpful if the Court has any concerns that the government's explanations as to why redactions are unavailable seem too "general."  *See* R&R 54.  The government is necessarily constrained as to what it can say in a public filing by the need to avoid revealing the very information it is arguing must remain sealed; it will face no such obstacles in an *ex parte* setting.

Indeed, determining whether search warrant materials must remain under seal is left to "the sound discretion of the trial court"—not to the media, and not to the government.  *See In re Search Warrants Issued November 30, 2022*, 2023 WL 5593959, at *2 (quoting *In re Search of Fair Finance*, 692 F.3d 424, 431 (6th Cir. 2012)).  It is standard practice for courts to engage in *ex parte* exchanges with the government as to proposed redactions in cases involving requests to unseal related to ongoing criminal investigations—including in the principal cases upon

which the report and recommendation relies.[6]   *See, e.g.*, *In re Press Application*, 2023 WL 8254630, at \*5 (concluding, after ordering the government to file proposed redactions *ex parte* and holding an *ex parte* hearing, that "the required redactions would leave them difficult to read and of little value to the public"); *In re Forbes Media LLC*, No. 21-mc-52, 2022 WL 17369017, at \*11 (W.D. Pa. Dec. 2, 2022) (providing government with proposed redactions *ex parte* and affording the government an opportunity to file objections under seal); *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1265 (S.D. Fla. 2022) ("the Government shall file under seal a submission addressing possible redactions").   In fact, Judge Schwab has ordered the government to provide proposed redactions, and issued orders to the government regarding proposed redactions, on a sealed, *ex parte* basis in every previous instance in this matter.   *See, e.g.*, ECF Nos. 19, 25, 37.

---

[6] The one case to which the report and recommendation cites or the proposition that the government should file proposed redactions on the public docket at the outset is an outlier in this respect, and it involved a different scenario in which the district court ordered proposed redactions only after reversal by the court of appeals.   *See In re L.A. Times Commc'ns*, 628 F. Supp. 3d 55, 61–62 (D.D.C. 2022).

Nor is the recommendation that the government file its proposed redactions on the public docket justified to enable the media to respond to those redactions in advance of the Court. The media will not be privy to what underlies the redactions or to the government's specific rationales for the redactions; any objections to the redactions will therefore be expressed in only the most general terms and add little to no value to the Court's analysis.

## CONCLUSION

For the foregoing reasons, the Court should order the search warrant application, including the affidavit; the return; and the redacted portions of the search warrant as issued to remain entirely under seal at this time. In the alternative, at minimum, the Court should order the government to file proposed redactions to these documents *ex parte* and under seal for the Court to consider in the first instance whether redacted versions should be released. If the Court is inclined to order the government to file proposed redacted documents *ex parte* and under seal, the government respectfully requests at least 30 days from the issuance of any such order in which to file those proposed redactions.

23

Dated: February 9, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division
Federal Programs Branch

*/s/ Leslie Cooper Vigen*
Leslie Cooper Vigen
Senior Trial Counsel
Civil Division
Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Email: Leslie.Vigen@usdoj.gov
Tel: (202) 305-0727

*Counsel for the United States*