## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE APPLICATION OF PENNLIVE, YORK DAILY RECORD, AND YORK DISPATCH TO UNSEAL COURT RECORDS** | Misc. Action No. 1:22-mc-00756<br>Hon. Jennifer P. Wilson |

## RESPONSE TO GOVERNMENT'S OBJECTIONS

Katie Townsend*
[DC 1026115]
ktownsend@rcfp.org
Paula Knudsen Burke
pknudsen@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

* Admitted pro hac vice

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................... iii

INTRODUCTION ....................................................................................1

ARGUMENT ........................................................................................1

   I.    The common law guarantees a presumption of public access to search warrant materials, including when an investigation remains ongoing. ...................................................................................1

   II.   The Government's claimed need for blanket secrecy is belied by the exceptional volume of information already in the public domain. ...............4

   III.  The Government's generic reliance on considerations that would describe every ongoing investigation cannot justify blanket secrecy. ........13

   IV.  The Government's objection to justifying its proposed redactions in a public filing is meritless. ........................................................16

CONCLUSION ......................................................................................20

L.R. 7.8(b)(2) CERTIFICATE ............................................................21

# TABLE OF AUTHORITIES

## Cases

*Binh Hoa Le v. Exeter Fin. Corp.*,
   990 F.3d 410 (5th Cir. 2021) ............................................................................2

*Constand v. Cosby*,
   833 F.3d 405 (3d Cir. 2016) ..............................................................................6

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019) ......................................................................................4

*Dobson v. Milton Hershey Sch.*,
   434 F. Supp. 3d 224 (M.D. Pa. 2020) ...............................................................1

*In re Associated Press*,
   No. 5:22-mc-00111, slip op. (S.D. Tex. Nov. 28, 2022),
   https://perma.cc/LTC5-8VYD ...........................................................................9

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   924 F.3d 662 (3d Cir. 2019) .........................................................................2, 13

*In re Cap. Cities/ABC, Inc.'s Application for Access to
   Sealed Transcripts*,
   913 F.2d 89 (3d Cir. 1990) ..................................................................7, 17, 18

*In re Forbes Media LLC*,
   No. 21-mc-52, 2022 WL 17369017 (W.D. Pa. Dec. 2, 2022) ............................3

*In re Four Search Warrants*,
   945 F. Supp. 1563 (N.D. Ga. 1996) .................................................................16

*In re L.A. Times Commc'ns LLC*,
   28 F.4th 292 (D.C. Cir. 2022) ....................................................................9, 17, 18

*In re L.A. Times Commc'ns LLC*,
   628 F. Supp. 3d 55 (D.D.C. 2022) .......................................................11, 18, 19

*In re N.Y. Times Co.*,
   585 F. Supp. 2d 83 (D.D.C. 2008) .......................................................3, 10, 15

*In re Press Application for Access to Judicial Records*
  *in Case No. 23-sc-31*,
    No. 23-mc-84, 2023 WL 8254630 (D.D.C. Nov. 29, 2023) ..........................10, 12

*In re Sealed Search Warrant*,
    No. 22-mj-8332, 2022 WL 3582450 (S.D. Fla. Aug. 22, 2022) .........................16

*In re Search of 1993 Jeep Grand Cherokee*,
    958 F. Supp. 205 (D. Del. 1996) ....................................................................15, 16

*In re Search of Information Associated with Two Accounts Stored at*
  *Premises Controlled by Google LLC*,
    No. 22-GJ-28, slip op. (D.D.C. June 27, 2022),
    https://perma.cc/F9YP-L7RB ...................................................................................7

*In re Search of Premises Known as L.S. Starrett Co.*,
    No. 1:02-m-137, 2002 WL 31314622 (M.D.N.C. Oct. 15, 2002) ...........14, 15, 16

*In re Search of the Forensic Copy of the Cell Phone of Representative*
  *Scott Perry*,
    No. 1:22-sc-02144, slip op. (D.D.C. Dec. 28, 2022),
    https://perma.cc/R2B8-VRJH .......................................................................4, 5, 6

*In re Search of the Forensic Copy of the Cell Phone of Representative*
  *Scott Perry*,
    No. 1:22-sc-02144, slip op. (D.D.C. Feb. 24, 2023),
    https://perma.cc/4AY7-F6SH ..................................................................................3

*In re Search Warrant for Second Floor Bedroom*,
    489 F. Supp. 207 (D.R.I. 1980)...............................................................................16

*In re Up North Plastics, Inc.*,
    940 F. Supp. 229 (D. Minn. 1996)......................................................................4, 14

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ................................................................................13

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
    998 F.2d 157 (3d Cir. 1993).......................................................................................9

*MetLife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) ................................................................................10

*Miller v. Indiana Hosp.*,
  16 F.3d 549 (3d Cir. 1994)..................................................................................2, 17

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978)..................................................................................9

*Tequan Doe v. City of New York*,
  No. 1:22-cv-7910, 2022 WL 15153410 (S.D.N.Y. Oct. 26, 2022).....................17

*United States v. Abuhamra*,
  389 F.3d 309 (2d Cir. 2004).........................................................................18

*United States v. All Funds on Deposit at Wells Fargo Bank*,
  643 F. Supp. 2d 577 (S.D.N.Y. 2009).............................................................16

*United States v. Bus. of Custer Battlefield Museum & Store*,
  658 F.3d 1188 (9th Cir. 2011) ......................................................................15

*United States v. Cohen*,
  366 F. Supp. 3d 612 (S.D.N.Y. 2019).......................................................11, 16

*United States v. Kott*,
  380 F. Supp. 2d 1122 (C.D. Cal. 2004) ...........................................................8

*United States v. Loughner*,
  769 F. Supp. 2d 1188 (D. Ariz. 2011) .............................................................9

*United States v. Sealed Search Warrants*,
  868 F.3d 385 (5th Cir. 2017) .................................................................2, 14, 15

*United States v. Smith* (*Smith I*),
  776 F.2d 1104 (3d Cir. 1985)...........................................................................8

*United States v. Smith* (*Smith II*),
  787 F.2d 111 (3d Cir. 1986)......................................................................8, 10

*United States v. Wecht*,
  484 F.3d 194 (3d Cir. 2007)...........................................................................2

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ........................................................................9

**Other Authorities**

Chris Young, *Less-Redacted Search Warrant Records Shed New Light on
    Investigation into Sen. Richard Burr*,
    Reporters Comm. for Freedom of the Press (Sept. 9, 2022),
    https://www.rcfp.org/sen-burr-search-warrant-unsealing/ ............................10, 19

Gov't's Additional Supplement,
    *In re L.A. Times Commc'ns LLC*,
    No. 1:21-mc-00016 (D.D.C. Aug. 23, 2022) ......................................................19

H.R. Rep. No. 117-663 (2022) ................................................................................7

Indictment,
    *United States v. Trump*,
    No. 1:23-cr-00257 (D.D.C. Aug. 1, 2023) ...........................................................5

Jill Colvin & Nomaan Merchant, *Takeaways from the Unsealed Mar-a-Lago
    Search Affidavit*, AP (Aug. 27, 2022),
    https://perma.cc/X5R6-UV4K .............................................................................10

Rachel Weiner et al., *Details of Scott Perry's Role in Trump Efforts to Stay
    in Power Unsealed*, Wash. Post (Nov. 30, 2023),
    https://perma.cc/77TL-QQ23 ................................................................................6

Report & Recommendation,
    *In re Jeffrey B. Clark*,
    No. 22-bd-039 (D.C. Ct. App. Sept. 12, 2022) .....................................................5

## INTRODUCTION

On September 29, 2022, PennLive, the York Daily Record, and the York Dispatch ("Applicants") moved to unseal judicial records related to a warrant that had authorized the seizure of U.S. Representative Scott Perry's cell phone in August 2022 in connection with the Justice Department's investigation of the events of January 6, 2021.  *See* Application at 1 (ECF No. 1).  More than a year later, after multiple rounds of briefing, and after a staggering amount of information related to the search and the January 6 investigation had become public, Judge Schwab—who approved the warrant and has close familiarity with the records—issued a thorough, 62-page opinion that rejected the Government's extreme view that not a word of any of the records could be unsealed and concluded instead that the Government bears the burden of proposing specific redactions.  *See* Report & Recommendation at 1 (ECF No. 65).  Under any standard of review, Judge Schwab's conclusion was correct.[1]  This Court should overrule the Government's objections to her Report and Recommendation.

## ARGUMENT

## I.   The common law guarantees a presumption of public access to search warrant materials, including when an investigation remains ongoing.

---

[1]    District courts in this Circuit are divided on the question whether a magistrate judge's ruling on a motion to unseal should be reviewed *de novo* or for clear error, *see Dobson v. Milton Hershey Sch.*, 434 F. Supp. 3d 224, 231–32 (M.D. Pa. 2020), but Applicants agree with the Government that the resolution of such a motion is a dispositive order subject to *de novo* review.

As Judge Schwab found, and as the Government does not dispute, *see* Gov't's Objections at 8–9, 11 (ECF No. 68), the common law guarantees a presumption of public access to warrant materials, including when a related investigation remains ongoing, *see* Report & Recommendation at 30–31; *see also, e.g.*, *United States v. Sealed Search Warrants*, 868 F.3d 385, 395–96 (5th Cir. 2017) (same). Third Circuit precedent makes clear that presumption is a "strong" one, *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 677–78 (3d Cir. 2019), all the more so in cases involving a "matter of public concern," *United States v. Wecht*, 484 F.3d 194, 210 (3d Cir. 2007) (heightened interest in access to records documenting the conduct of the FBI "in a highly publicized investigation of a well-known defendant accused of abusing his public office").

In light of that strong presumption of access, "[t]he party seeking to seal *any* part of a judicial record bears the heavy burden of showing . . . that disclosure will work a clearly defined and serious injury," *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (emphasis added) (citation and internal quotation marks omitted), while "[a] party who seeks to seal an *entire* record faces an even heavier burden," *id.* No surprise, then, that redaction—not blanket sealing—is the usual approach to balancing competing interests, an analysis that proceeds "line-by-line" rather than in broad strokes. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (citation omitted). And as Judge Schwab observed, district courts

in this Circuit have applied this approach—carefully sifting what the public is entitled to know from what may remain secret—in cases involving investigative materials that relate to ongoing investigations in particular. *See* Report & Recommendation at 45–46 (citing *In re Forbes Media LLC*, No. 21-mc-52, 2022 WL 17369017, at *8 (W.D. Pa. Dec. 2, 2022)); *see also, e.g.*, *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 88 n.8 (D.D.C. 2008) (noting that the disclosure of warrant materials "after a search has been executed" is "routine").

The Government does not dispute any of those legal standards.  Instead, it insists that the facts here justify extraordinary secrecy.  But the reverse is true:  As Judge Schwab recognized, and as detailed below, this case is exceptional in both the volume of information already in the public domain and the "powerful public interest[s]" that favor transparency where the Government investigates a sitting Member of Congress.  *In re Search of the Forensic Copy of the Cell Phone of Representative Scott Perry* ("*In re Perry*"), No. 1:22-sc-02144, slip op. at 3 (D.D.C. Feb. 24, 2023), https://perma.cc/4AY7-F6SH.  The Government's case for blanket secrecy, by comparison, is generic:  It points to facts that could describe any and all warrant materials.  But "conclusory allegations which would require the sealing of search warrants in nearly every criminal investigation" do not rebut the presumption of access—not in an ordinary case, and not in this extraordinary one.  *In re Up North Plastics, Inc.*, 940 F. Supp. 229, 234 (D. Minn. 1996).

II.    **The Government's claimed need for blanket secrecy is belied by the exceptional volume of information already in the public domain.**

Perhaps the central feature of this case, as Judge Schwab observed, is "the extraordinary volume of information already public."  Report & Recommendation at 55 (citation omitted).  The Government insists on ignoring those disclosures, but courts "are not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (citation and internal quotation marks omitted).

For instance, the public already knows that the warrant at issue was obtained in connection with an investigation into "efforts to overturn the 2020 presidential election," but the Government maintains that all references to that fact—which is stated candidly in the Government's own objections—must be concealed.  *In re Perry*, No. 1:22-sc-02144, slip op. at 2 (D.D.C. Dec. 28, 2022), https://perma.cc/R2B8-VRJH.[2]  The Government similarly insists that any references to the target offenses here must remain sealed even though the offenses under investigation in its probe are already identified in the indictment of former President Trump, *see* Indictment at 1, *United States v. Trump*, No. 1:23-cr-00257 (D.D.C. Aug. 1, 2023) (listing 18 U.S.C. §§ 371, 1512(k), 1512(c)(2), and 241),

---

[2]    The full opinion in *In re Perry* linked here is publicly available, as discussed *infra* note 3.  A partially redacted version disclosing many of the same facts, as hosted on the website of the U.S. District Court for the District of Columbia, is available at https://perma.cc/3AMQ-TKGG.

and former Assistant Attorney General Jeffrey Clark's D.C. Bar disciplinary proceedings, *see* Report & Recommendation at 15, *In re Jeffrey B. Clark*, No. 22-bd-039 (D.C. Ct. App. Sept. 12, 2022) (listing 18 U.S.C. §§ 1001, 371, and 1512).

And there's much more.  It is likewise public knowledge that the Government's probable-cause showing was based in part on "evidence of Rep. Perry using his personal cell phone to communicate with individuals allegedly engaged in [] efforts" to challenge the election, *In re Perry*, No. 1:22-sc-02144, slip op. at 2 (D.D.C. Dec. 28, 2022), and that the information the Government sought to seize included:

> d) 1. Allegations and/or discussion, or other communications, relating to alleged election fraud in the 2020 United States presidential election;
>
> 2. Potential, ongoing, or desired election fraud investigations within or by the United States Department of Justice ("DOJ");
>
> 3. Efforts to install Jeffrey Clark as Acting Attorney General;
>
> 4. The letter drafted by Jeffrey Clark to be sent to elected officials in Georgia and other states suggesting that the DOJ was investigating serious allegations of election fraud that might impact the outcome of the election;
>
> 5. Communications with Jeffrey Clark, Ken Klukowski, James Wallace, former President Donald Trump, Mark Meadows, John Eastman, and other individuals affiliated with the White House, DOJ, or the Trump presidential campaign;
>
> 6. The effort to influence or disrupt the counting of Electoral College votes;

7. Challenging the January 6, 2021, counting of the Electoral College votes by the United States Congress;

8. Overturning, decertifying, delegitimizing, challenging, or questioning the results of the 2020 United States presidential election in any state; and

9. Any and all other evidence of the Target Offenses;

(e) Communications with Rudy Giuliani, Sidney Powell, Jenna Ellis, Cleta Mitchell, or any other attorney or individual connected with any lawsuit alleging election fraud in the 2020 United States presidential election or seeking to challenge the results of the 2020 United States presidential election;

(f) Communications with any individual regarding allegations of fraud in the 2020 United States presidential election; [and]

(g) Communications with any person involved in the effort to challenge the results, the certification, or the counting of Electoral College votes of the 2020 United States presidential election.

*Id.* at 2–3 n.2.[3]  Judicial records filed in other federal courts likewise underline that

the Government has sought Rep. Perry's communications with John Eastman,

---

[3]    The Government will doubtless object that specific material included in this block quotation was unsealed inadvertently, *see* Rachel Weiner et al., *Details of Scott Perry's Role in Trump Efforts to Stay in Power Unsealed*, Wash. Post (Nov. 30, 2023), https://perma.cc/77TL-QQ23, but that is irrelevant.  The Third Circuit has squarely held that federal courts are "without power to affect the dissemination" of inadvertently unsealed judicial records where "anyone with an internet connection can easily obtain images of the original documents online," *Constand v. Cosby*, 833 F.3d 405, 410–11 (3d Cir. 2016) (citation omitted); *see also id.* at 410 n.6.  In any event, the inadvertently unsealed material only gilds the lily.  Judge Schwab did not rely on it in her decision, *see* Report & Recommendation at 18 n.8, and this Court likewise need not consider it to overrule the Government's objections given the volume of *other* public disclosures.

Jeffrey Clark, and Ken Klukowski. *See In re Search of Information Associated with Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, slip op. at 1–3 (D.D.C. June 27, 2022), https://perma.cc/F9YP-L7RB. And the substance of those contacts is detailed in the final report of the U.S. House Select Committee to Investigate the January 6th Attack on the U.S. Capitol, which explains, *inter alia,* that Rep. Perry connected former President Trump with Pennsylvania lawmakers and lobbied for Jeffrey Clark's installation as attorney general. *See* H.R. Rep. No. 117-663, at 50, 105, 115, 283, 382–85, 387–89 (2022).

The Government urges this Court to ignore what the public already knows, offering two arguments to that effect. First, it contends that information made public as a result of "media reports or congressional inquiries" must remain secret if it has not been "officially revealed." Gov't's Objections at 17.[4] But as Judge Schwab noted, Third Circuit precedent forecloses that argument, holding that information "is no longer private" if revealed by "press reports." *In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 98 (3d Cir. 1990). And *United States v. Smith* (*Smith I*), 776 F.2d 1104 (3d Cir. 1985)—which the Government cites for the proposition that statements by "'federal law enforcement official[s]' carry weight that non-official statements do

---

[4]      The Government has never attempted to explain why it believes disclosures made by the executive and judicial branch are 'official' but disclosures made by the legislative branch are not.

not," Gov't's Objections at 17 (quoting *Smith I*, 776 F.2d at 1113–14)—provides no support for the Government's position.  *Smith I* drew no contrast between official and 'non-official' disclosures because the information there was "not currently in the public domain" in *any* form, officially or unofficially.  *Id.* at 1106 (citation omitted).  Instead, *Smith I* made the unremarkable observation that being linked to a criminal probe for the first time can cause reputational harm.  *See id.* at 1113.  But as the Third Circuit elaborated in *Smith II*, that concern is not at stake where—as here—an individual's "possible connection with the matter" has "already been made public."  *United States v. Smith* (*Smith II*), 787 F.2d 111, 116 (3d Cir. 1986).[5]

Indeed, to Applicants' knowledge, every court to consider the issue has rejected the Government's invitation to ignore public reporting and graft some version of the Freedom of Information Act's official-acknowledgement doctrine from the *Glomar* context onto the common law analysis.  *See In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022) (district court erred by relying

---

[5]     *Smith I* also is inapposite in the warrant context because the bill of particulars at issue there amounted to a naked accusation of criminal conduct "unaccompanied by any facts providing a context for evaluating the basis" for that judgment.  776 F.2d at 1113.  As other courts have explained, that appeal to "unfounded character assassination" is misplaced in the warrant setting, where "a search warrant affidavit will, of necessity, contain detailed explanations of the suspected involvement of all persons named."  *United States v. Kott*, 380 F. Supp. 2d 1122, 1125 (C.D. Cal. 2004) (expressly distinguishing *Smith I* on that ground).

on Government's non-acknowledgment and ignoring "extensive media reporting");

*United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011) (unsealing

records over Government's objection where "much of the information in the

warrant materials has already been reported by the media"); *In re Associated Press*,

No. 5:22-mc-00111, slip op. at 6–7 (S.D. Tex. Nov. 28, 2022),

https://perma.cc/LTC5-8VYD (rejecting Government's bid to avoid

acknowledging investigation).  And for good reason.  In the *Glomar* context,

FOIA's acknowledgement doctrine is a "waiver" rule, designed to test whether

disclosure would "cause harm cognizable under a FOIA exemption."  *Wolf v. CIA*,

473 F.3d 370, 378 (D.C. Cir. 2007).  It therefore typically operates like a light

switch:  The Government's right to invoke the exemption is either waived or not.

The common law, by contrast, calls for a "*balancing* of competing

interests," *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d

Cir. 1993) (emphasis added), one that weighs all "the relevant facts and

circumstances of the particular case," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S.

589, 599 (1978).  It thus contemplates cases where the Government may have

some residual interest in secrecy that is nevertheless insufficient to overcome the

interests favoring transparency.  And consistent with common sense, any such

secrecy interests are "substantially diminished" when related—but not necessarily

identical—information "has already been made public," whether by a source the Government believes is adequately official or otherwise.  *Smith II*, 787 F.2d at 116.

No surprise, then, that federal courts can and do order the disclosure of previously unknown information contained in warrant affidavits, especially where transparency would shed light on possible evidence of official misconduct.[6]  Were it otherwise—if the right of access were limited to printing copies of Justice Department press releases or echoing what everyone already knows—it is difficult to see how anyone could consider it "a fundamental element of the rule of law," *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017) (Garland, J.), or a means of "ensur[ing] that judges are not merely serving as a rubber stamp for the police," *In re N.Y. Times Co.*, 585 F. Supp. 2d at 90.

Second, in the alternative, the Government asserts that redactions "would leave the materials at issue 'difficult to read and of little value to the public[.]'" Gov't's Objections at 20 (quoting *In re Press Application for Access to Judicial Records in Case No. 23-sc-31*, No. 23-mc-84, 2023 WL 8254630, at *5 (D.D.C. Nov. 29, 2023)).  The claim is circular:  It is difficult to prejudge what the scope of

---

[6]    For examples especially similar to the facts of this case, see, for instance, Jill Colvin & Nomaan Merchant, *Takeaways from the Unsealed Mar-a-Lago Search Affidavit*, AP (Aug. 27, 2022), https://perma.cc/X5R6-UV4K; Chris Young, *Less-Redacted Search Warrant Records Shed New Light on Investigation into Sen. Richard Burr*, Reporters Comm. for Freedom of the Press (Sept. 9, 2022), https://www.rcfp.org/sen-burr-search-warrant-unsealing/.

redactions would be when the Government refuses to justify any particular redaction.  *Contra, e.g.*, *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55, 61–62 (D.D.C. 2022) (noting, in connection with application to unseal warrant materials related to a sitting Member of Congress, that the Government was ordered to "specify in detail" the justifications for its redactions, "line-by-line").

The Government's argument also seems to incorrectly presume that only information that is already public would ultimately be unsealed, but as Judge Schwab noted—and as explained above—the common law right is not limited to what everyone already knows.  The question is not whether "the search warrant affidavits include more detail than what has already been reported by the media"— of course they do, which is why there is a public interest in knowing what they say—but whether the Government has proved that sufficiently weighty countervailing interests would be "harmed" by disclosure out of proportion to the benefits delivered by transparency.  *United States v. Cohen*, 366 F. Supp. 3d 612, 626 (S.D.N.Y. 2019).  As Judge Schwab concluded, the Government may still carry that burden as to specific redactions, but not if it refuses to make the attempt.

Finally, the Government's reliance on Chief Judge Boasberg's decision in *In re Press Application* for the proposition that it need not even propose—let alone justify—any redactions is perplexing.  As the Government notes elsewhere in its objections, Chief Judge Boasberg *did* "order[] the government to file proposed

redactions." Gov't's Objections at 22. His conclusion that redactions would not be workable in that case was reached only after conducting that review, *see id.*—an opportunity Judge Schwab has never had because the Government stubbornly refuses to propose any redactions. Even setting that point aside, Judge Schwab acknowledged that there may be cases in which an "unruly mix of secret and public facts" makes redaction unworkable. Report & Recommendation at 50 (quoting *In re Press Application*, 2023 WL 8254630, at *5). But her Report went on to underline that "each case must be decided on its own facts," *id.* at 54, and that her decision was based on her "own reading of the affidavit and other warrant materials"—materials she reviewed in the first instance when she granted the warrant. *Id.* The suggestion that Judge Schwab should have said more to distinguish the documents at issue in *In re Press Application*—documents that Judge Schwab could not have reviewed because she cannot access them—is a shell game, and Chief Judge Boasberg's fact-bound review of the very different documents at issue there has nothing to say about records here that he has not read.

Finally, while Judge Schwab explained that the Report could not provide "extensive detail" without pretermitting the parties' remaining disputes about what should remain secret, Report & Recommendation at 20 n.9, the Report provides one especially stark piece of evidence that the Government's claimed need for secrecy is overbroad: The Government—without acknowledging as much—

insisted on maintaining under seal material "quoted word-for-word" in other public court records.  Report & Recommendation at 55; *accord Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006) (noting that "[a] review of the United States' proposed redactions supports the decision to unseal the records" where it sought to redact information that was "already publicly available").

That should suffice to demonstrate the obvious:  In a case characterized by a staggering volume of public disclosures, something rather than nothing can be unsealed.  Judge Schwab's careful order decides nothing more, and the Government's effort to avoid its burden to justify specific redactions is meritless.

## III.   The Government's generic reliance on considerations that would describe every ongoing investigation cannot justify blanket secrecy.

In a related flaw, the Government's proffered justifications for secrecy consist of "general arguments," Report & Recommendation at 55,[7] where the Third Circuit requires "a clearly defined and serious injury" and "[c]areful factfinding," *In re Avandia*, 924 F.3d at 672–73 (citations omitted).  In particular, the Government's case for blanket secrecy would apply to *all* warrant materials—even as the Government concedes there is a strong, common-law presumption of access to warrant materials.  *See* Gov't's Objections at 8–9.  Those positions cannot be

---

[7]    It bears underlining that Judge Schwab's conclusion that the Government's arguments were too general was reached with the benefit of access to the sealed portions of the Government's submissions; she was not limited to the arguments available to Applicants.

squared, and "conclusory allegations which would require the sealing of search warrants in nearly every criminal investigation" do not suffice to rebut the presumption of public access. *In re Up North Plastics, Inc.*, 940 F. Supp. at 234.

Every warrant affidavit, it should go without saying, describes "the direction and scope" of an investigation. Gov't's Objections at 18. Every affidavit discusses unindicted individuals, *id.* at 2, and explains "*why* the government was seeking [the] information" the warrant authorizes it to seize, *id.* at 18. And it is typical, not exceptional, for an affidavit to mention witnesses. *Id.* at 2. If those features were enough to justify wholesale sealing, complete secrecy would be justified in every case—making nonsense of the weight of authority recognizing "that the common law presumption of access applies to preindictment search warrants." Gov't's Opp'n at 14 (ECF No. 44-1); *contra, e.g.*, *Sealed Search Warrants*, 868 F.3d at 395 (requiring "[a] case-by-case approach to pre-indictment warrant materials"); *see also In re Search of Premises Known as L.S. Starrett Co.*, No. 1:02-m-137, 2002 WL 31314622, at *5 (M.D.N.C. Oct. 15, 2002) (rejecting claims that "would likely lead to the routine sealing of all search warrants").

No surprise, then, that courts have required a more particularized showing to justify sealing: not just "a conclusory allegation of an ongoing investigation," but "a specific factual showing of how its investigation will be compromised." *In re Up North Plastics, Inc.*, 940 F. Supp. at 233. To similar effect, "the mere mention

of an individual's name or activities in a search warrant will not justify redaction of the name, identifying information, or allegations." *L.S. Starrett Co.*, 2002 WL 31314622, at *7. Instead, as another district court in the Third Circuit has held, the question is not whether materials discuss nonpublic information about third parties—every affidavit does—but whether that information was "relevant to the investigation" as opposed to gratuitous, and whether the information is unusually "intimate." *In re Search of 1993 Jeep Grand Cherokee*, 958 F. Supp. 205, 211 (D. Del. 1996). But even if the Government had attempted a more specific showing on those points—it has not—at most its concerns would justify tailored redactions that preserve the public's ability to understand the basis for the "important judicial decision[]" to grant the warrant. *Sealed Search Warrants*, 868 F.3d at 395 (citation omitted); *see United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011) (collecting cases in which "redacting sensitive information rather than refusing to unseal the materials entirely" was adequate "to protect the government's ongoing investigation" or "confidential informants").

For just those reasons, the disclosure of warrant materials "after a search has been executed" is "routine," *In re N.Y. Times Co.*, 585 F. Supp. 2d at 88 n.8. The 2022 search of Mar-a-Lago is perhaps the most salient example. There, the Government insisted on "keeping the entire Affidavit under seal" until its argument was "reject[ed]" by the court—and the additional disclosures ordered prompted

public deliberation on matters of obvious public concern that continues to this day.
*In re Sealed Search Warrant*, No. 22-mj-8332, 2022 WL 3582450, at *6 (S.D. Fla.
Aug. 22, 2022).  But other examples—both mundane and high-profile—are readily
available.[8]  And just as probative are the many cases in which the Government has
declined to object to unsealing during an investigation because it would have no
valid basis for doing so.  *See, e.g.*, *In re Search of 1993 Jeep Grand Cherokee*, 958
F. Supp. at 207 (noting Government's motion to unseal warrant materials during an
ongoing investigation where the target "had already learned the identity of
witnesses and the nature and scope of the investigation").  The point in either event
is that access—even in ongoing investigations—is the presumptive rule, not the
grudging exception.  The burden is on the Government to offer a justification for
secrecy specific to this case, and it cannot do so with generalities that would
"swallow the common law right of access to search warrant papers."  *L.S. Starrett
Co.*, 2002 WL 31314622, at *5.  The Government has not met that burden here.

## IV.  The Government's objection to justifying its proposed redactions in a public filing is meritless.

Finally, the Government's insistence that Judge Schwab erred in ordering
the Government to propose and justify its redactions on the public docket is

---

[8]     *See In re Search Warrant for Second Floor Bedroom*, 489 F. Supp. 207, 212
(D.R.I. 1980); *In re Four Search Warrants*, 945 F. Supp. 1563, 1567–69 (N.D. Ga.
1996); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d
577, 585–86 (S.D.N.Y. 2009); *Cohen*, 366 F. Supp. 3d at 623.

likewise without foundation.  Both due process and the presumption of access to judicial records make clear that Applicants are entitled to "directly rebut" the Government's justifications for secrecy here.  *In re Cap. Cities*, 913 F.2d at 95.

To state the obvious, the Government's briefs attempting to justify its redactions will, themselves, be judicial records subject to a strong presumption of access.  *See In re L.A. Times Commc'ns LLC*, 28 F.4th at 296–97 (presumption of public access attaches to brief in opposition to unsealing warrant materials).  And as any number of courts have observed, "[a] motion to seal itself should not generally require sealing or redaction because litigants should be able to address the applicable standard without specific reference to confidential information." *Tequan Doe v. City of New York*, No. 1:22-cv-7910, 2022 WL 15153410, at *4 (S.D.N.Y. Oct. 26, 2022) (citation omitted) (collecting cases).  The Government therefore bears the burden of demonstrating that any portion—let alone every portion—of its justification for its proposed redactions should be kept secret.  *See Miller*, 16 F.3d at 551 ("even heavier burden" to seal entire records).  It has not attempted that showing here.  It should be evident, too, that no substantial harm can result from docketing the redactions themselves, which will make public only information that the Government concedes at this stage needn't be kept secret.

Due process points in the same direction.  Consistent with the general rule that "due process demands that the individual and the government each be afforded

the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other," *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004), the Third Circuit held in *In re Capital Cities* that a party who moves to unseal records is generally entitled to "directly rebut" the opposing party's justifications for secrecy, *In re Cap. Cities*, 913 F.2d at 95.  The Government has offered no basis for departing from that norm here.  And contrary to the Government's suggestion, the identical procedure followed in *In re Los Angeles Times Communications LLC*, 628 F. Supp. 3d 55, 61–62 (D.D.C. 2022)—which likewise involved access to warrant materials related to a sitting Member of Congress—was not a quirk of the posture of that case; it was a result of the D.C. Circuit's instruction that the district court "reconsider the L.A. Times' challenge that it was fundamentally disadvantaged by the court's decision to seal the government's opposition memorandum."  *In re L.A. Times Commc'ns LLC*, 28 F.4th at 298–99 (internal quotation marks and alterations omitted).  Judge Schwab's Report implements what fundamental fairness requires.

The course of remand proceedings in the *Los Angeles Times* matter highlights the wisdom of that approach.  Because the Government's proposed redactions in that matter were filed on the public docket, the *Times* was able to infer from their scope and context that the Government had redacted public information while claiming that an implausibly large share of the records consisted

of grand jury material.  The district court promptly ordered the Government to further defend its proposal in light of those issues; in response the Government narrowed its proposed redactions, but even that narrower proposal "continued to raise questions about compliance with the Circuit's mandate."  *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d at 62.  Pressed once more by the district court, the Government grudgingly proposed "the unsealing of the vast majority of the 49 pages of the Materials."  Gov't's Additional Supplement at 1–2, *In re L.A. Times Commc'ns LLC*, No. 1:21-mc-00016 (D.D.C. Aug. 23, 2022).  And even then, the district court rejected a number of the Government's remaining proposed redactions.  *See In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d at 58.

In short, in one of the matters most closely analogous to this one, only after multiple rounds of adversary briefing did the Government concede that most of the secrecy it originally sought was neither necessary nor lawful.  *See* Young, *supra* (hosting side by side the Government's initial redactions and the materials as ultimately unsealed).  And while the Government leans heavily on the observation that Judge Schwab previously permitted certain *ex parte* filings in this case, it shies away from the reason Judge Schwab changed course.  This proceeding has been marred by the same dynamic; Applicants were required to bring to the Court's attention that the Government had attempted to conceal material that appeared "word-for-word" in other judicial records.  Report & Recommendation at 55.

Against that backdrop, the Government's suggestion that briefing from Applicants would "add little to no value to the Court's analysis" is both self-serving and belied by the record in this case.  Gov't's Objections at 23.  While it would doubtless make things easier for the Government if it did not have to justify its decisions to the press or public, the law reflects a different balance of interests.

The Government's objections should be overruled.

## CONCLUSION

For the foregoing reasons, Applicants respectfully urge that the Government's objections to the Report & Recommendation be overruled.

Dated: February 23, 2024              Respectfully submitted,

*s/ Katie Townsend*
Katie Townsend*
[DC 1026115]
ktownsend@rcfp.org
Paula Knudsen Burke
pknudsen@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Admitted pro hac vice*

*Counsel for Applicants PennLive, York Daily Record, and York Dispatch*

20

**L.R. 7.8(b)(2) CERTIFICATE**

I hereby certify that this brief contains 4,947 words in the body of the brief,

excluding this certificate and the tables of contents and authorities required by L.R.

7.8(a), as calculated by the word-count feature of Microsoft Word.

Dated: February 23, 2024                    /s/ *Katie Townsend*
                                            Katie Townsend

                                            *Counsel for Applicants PennLive,*
                                            *York Daily Record, and York*
                                            *Dispatch*